## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Venoco, Inc., *et al.*, | Case No. 16-10655 (KG) |
| Debtors.[1] | (Joint Administration Requested) |

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
### (I) ESTABLISHING NOTICE AND OBJECTION PROCEDURES FOR TRANSFERS OF
### COMMON STOCK AND WORTHLESS STOCK DEDUCTIONS WITH
### RESPECT TO COMMON STOCK AND (II) GRANTING RELATED RELIEF

Venoco, Inc., ("Venoco"), and its affiliated debtors and debtors in possession (collectively, the "Debtors"), hereby move (the "Motion") for entry of an interim order, substantially in the form attached hereto as **Exhibit A** (the "Interim Order"), and a final order (a) establishing notice and objection procedures regarding certain transfers of beneficial interests in and/or claims of worthless deductions for U.S. federal income tax purposes ("Worthless Stock Deductions")[2] with respect to Beneficial Ownership[3] of Denver Parent

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Venoco, Inc. (5555); Denver Parent Corporation (1005); TexCal Energy (LP) LLC (0806); Whittier Pipeline Corporation (1560); TexCal Energy (GP) LLC (0808); Ellwood Pipeline, Inc. (5631); and TexCal Energy South Texas, L.P. (0812). The Debtors' main corporate and mailing address for purposes of these chapter 11 cases is: Venoco, Inc., 370 17th Street, Suite 3900, Denver, CO 80202-1370.

[2] "Worthless Stock Deduction" means any attempt by any entity as defined in Treasury Regulations §1.382-3(a)(1) or individual to claim a loss on its U.S. federal income tax return with respect to Beneficial Ownership of Equity Securities pursuant to section 165(g) of the Internal Revenue Code of 1986, 26 U.S.C. §§ 1–9834, as amended (the "IRC"), the applicable Treasury Regulations thereunder (the "Treasury Regulations") and rulings issued by the IRS. An "Entity" shall have the meaning ascribed to that term in Treasury Regulations §1.382-3(a).

[3] Beneficial Ownership" shall be determined for these purposes in accordance with the applicable rules of section 382 of the IRC, and the Treasury Regulations thereunder and shall include non-stock instruments treated as stock for U.S. federal income tax purposes under Revenue Ruling 82-150 or Treas. Reg. § 1.382-2T(f)(18)(iii), including ownership by reason of direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries and a partner in a partnership would be considered to own its proportionate share of any equity securities owned by such partnership), ownership by attribution and constructive ownership, which includes ownership by such holder's family members and related entities, and, in certain cases, ownership of equity securities that such holder has an Option (as defined below) to acquire. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, call, stock

Corporation ("DPC") common stock (the "Common Stock"), substantially in the form of attached to the Interim Order (the "Procedures"), and (b) directing that any purchase, sale, or other transfer of any Beneficial Ownership of Common Stock or claims of Worthless Stock Deductions with respect to any Common Stock or any interest therein, in each case in violation of the Procedures shall be null and void *ab initio*, and (c) granting certain related relief. In support of this Motion, the Debtors submit and incorporate by reference the *Declaration of Scott M. Pinsonnault, Chief Financial Officer of Venoco, Inc., in Support of Chapter 11 Petitions and First Day Pleadings,* (the "First Day Declaration") filed contemporaneously and fully incorporated herewith, and respectfully represent as follows:

## Jurisdiction

1.    The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.    Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.    The statutory bases for the relief requested herein are sections 105(a), 362, 363, and 507(a)(4)-(5) of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") and Rules 4001(d), 6003, 6004, 7062 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## Background

5.    The Debtors are independent exploration and production companies located in Denver, Colorado. The Debtors' operations are focused on the acquisition, exploration, development and exploitation of conventional and unconventional oil and natural gas resources.

---

subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

As of March 18, 2016 (the "Petition Date"), the Debtors own approximately 72,053 net acres in California and Texas, of which 48,856 net acres were developed as of that date. The Debtors' principal producing properties are located both onshore and offshore in Southern California and are heavily oil-weighted (approximately 95%).

6.      The Debtors, like many other E&P companies, have faced significant economic challenges as a result of the dramatic decline in global oil prices, the low price of natural gas, and general uncertainty in the energy markets. These macro-economic factors, coupled with the recent rupture of the third-party common carrier pipeline that forced the Debtors to halt all production activities at one of the Debtors' offshore platforms, Platform Holly, negatively impacted the Debtors' operations, production volumes and associated revenue at a critical time. Faced with a heavy debt burden, the Debtors commenced these chapter 11 cases to effectuate a financial restructuring.

7.      On the Petition Date, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or official committee of unsecured creditors has been appointed in the chapter 11 cases. By a motion filed on the Petition Date, the Debtors have requested that these chapter 11 cases be consolidated for procedural purposes only and administered jointly.

### The NOLs and other Tax Attributes

8.      Financially troubled corporations often have net operating losses for federal and applicable state income tax purposes ("NOLs"). Corporations typically have depreciable and amortizable tax basis, and may have tax credits, losses for tax purposes and certain other tax

attributes (collectively, including NOLs, the "Tax Attributes"). Subject to certain limitations, corporations may use their Tax Attributes to reduce future taxable income.

9.    For U.S. federal income tax purposes, the Debtors are members of an affiliated group of corporations (or disregarded entities wholly owned by members of such group) of which DPC is the common parent (the "DPC Group"). The DPC Group joins in the filing of consolidated U.S. federal income tax returns. In addition to significant tax basis in their assets, the Debtors estimate that the DPC Group has NOL carryforwards of approximately $570 million for U.S. federal income tax purposes as of December 31, 2015.  The ability of the Debtors to use their NOL balance and other Tax Attributes (or a portion thereof) to shelter future taxable income and hence reduce potential future cash tax liabilities (including during the pendency of these chapter 11 cases) is of potentially significant value to the Debtors.  The potential value of the NOLs and other Tax Attributes and the potential related reduction in cash tax liabilities will inure to the benefit of all of the Debtors' stakeholders and should be preserved.

A.    **An "Ownership Change" May Negatively Affect the Debtors' Ability to Utilize their NOLs and Other Tax Attributes.**

10.    Sections 382 and 383 of the IRC limit the ability of a corporation to utilize its Tax Attributes, including any NOL balance from pre-change periods in taxable years (or a portion thereof) following the occurrence of an ownership change. Generally, an "ownership change" occurs if the percentage (by value) of the stock of a corporation owned by one or more 5-percent shareholders has increased by more than 50 percentage points over the lowest percentage of stock owned by such shareholders at any time during the three-year testing period ending on the date of the ownership change. For example, an ownership change would occur in the following situation:

An individual ("<u>A</u>") owns 50.1 percent of the stock of corporation XYZ. A sells her 50.1 percent interest to another individual ("<u>B</u>"), who owns 5 percent of XYZ's stock. Under section 382, an ownership change has occurred because B's interest in XYZ has increased more than 50 percentage points (from 5 percent to 55.1 percent) during the testing period. The same result would follow even if B owned no XYZ stock prior to the transaction with A because B both becomes a 5-percent shareholder and increases his ownership by more than 50 percentage points during the testing period.

11.     If an ownership change occurs, section 382 of the IRC imposes an annual limitation on the utilization of "pre-change losses." Subject to certain adjustments and limitations, such annual limitation generally equals to the product of (i) the value of the corporation immediately prior to the ownership change, times (ii) the long-term tax exempt rate applicable for ownership changes occurring during a given calendar month (2.65 percent for ownership changes occurring in March 2016). Pre-change losses include the NOLs and any net unrealized built-in loss in the assets of such corporation (as defined in section 382(h)(3) of the IRC).

12.     Certain transfers of Beneficial Ownership of Common Stock before the effective date of the Debtors' emergence from chapter 11 protection may trigger an "ownership change" under Section 382 of the IRC, and impair the Debtors' ability to utilize their NOLs and other Tax Attributes.

13.     Likewise, pursuant to section 382(g)(4)(D) of the IRC, an ownership change will occur if a 50-Percent Shareholder[4] of DPC claims a Worthless Stock Deduction with respect to

---

[4] For purposes of this Motion, (i) a "<u>50-Percent Shareholder</u>" is any person or Entity that, at any time during the 3-year period ending on the last day of the taxable year of such person or Entity with respect to which the Worthless Stock Deduction was claimed, Beneficially Owned 50 percent or more of the Common Stock of DPC (determined in accordance with section 382(g)(4)(D) of the IRC and the applicable Treasury Regulations and shall include non-stock instruments treated as stock for U.S. federal income tax purposes under Revenue Ruling 82-150 or Treasury Regulations §1.382-2T(f)(18)(iii), as described in this Motion, the Order and all exhibits thereto); (ii) "<u>Beneficial Ownership</u>" shall be determined for these purposes in accordance with the applicable rules of section 382 of the IRC and the Treasury Regulations and shall include non-stock instruments treated as stock for U.S.

its Beneficial Ownership in Common Stock held as of the end of a taxable year of such shareholder ending prior to the effective date of a plan of reorganization of the Debtors. Accordingly, the Debtors' ability to use their NOLs and other Tax Attributes could similarly be adversely impacted if certain Beneficial Owners claim Worthless Stock Deductions with respect to their Common Stock prior to the Debtors' emergence from these chapter 11 cases. Therefore, to protect the Debtors' ability to potentially use their NOLs and other Tax Attributes, certain restrictions with respect to these potential "ownership changes" are warranted.

14.    Importantly, the determinations concerning the potential application of section 382 of the IRC are made by treating a person as also owning shares that are owned by certain other persons (including by attribution from certain entities and certain family members). In addition, under section 382 of the IRC and general principles of U.S. federal income tax law, certain options, warrants and stock subject to risk of forfeiture may, under certain circumstances, be treated as shares for these purposes. The definition of "Beneficial Ownership" used for purposes of this Motion, the accompanying Interim Order and all exhibits thereto, is intended to take such attribution and constructive ownership rules into account in a manner that protects the Debtors from undergoing an ownership change under section 382 of the IRC (including in instances where there is potential uncertainty under the applicable rules of section 382 of the IRC).

---

federal income tax purposes under Revenue Ruling 82-150 or Treasury Regulations §1.382-2T(f)(18)(iii), including direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries and a partner in a partnership would be considered to own its proportionate share of any equity securities owned by such partnership), ownership by attribution and constructive ownership, which includes ownership by such holder's family members and related entities, and, in certain cases, ownership of equity securities that such holder has an Option (as defined below) to acquire. An "Option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, call, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

15.     The Debtors' requested relief is narrowly tailored to preserve the estate's value. The Debtors seek limited relief that will enable them to closely monitor certain intended transfers of Common Stock and certain potential claims of Worthless Stock Deductions with respect to Common Stock, so as to be in a position to act expeditiously to prevent such transfers or claims, if necessary, with the purpose of preserving the ability of Debtors to use their NOLs and other Tax Attributes, as needed. In that regard, the proposed Interim Order will affect (i) those holders (taking into account for these purposes the applicable attribution and constructive ownership rules under section 382 of the IRC) holding at least 1,316,807 shares of Common Stock,[5] and (ii) parties who are interested in purchasing, acquiring or otherwise receiving Common Stock if as a result of such transactions such parties would hold an amount of the respective Common Stock in excess of the corresponding amount set forth above (taking into account for these purposes the applicable attribution and constructive ownership rules under section 382 of the IRC).

**B.      Proposed Procedures for Transfers of Common Stock or Claims of Worthless Stock Deductions with Respect to the Common Stock.[6]**

16.     The Procedures are the mechanism by which the Debtors propose that they will monitor, and if necessary, object to certain transfers of Beneficial Ownership of the Common Stock and claims of Worthless Stock Deductions by certain Beneficial Owners with respect to the Common Stock, to ensure preservation of the NOLs and other Tax Attributes. The Procedures, which are fully set forth in **Exhibit 1** to the Interim Order, are summarized below.[7]

---

[5] Calculated as 4.5% of 29,262,395 which is the number of outstanding shares of Common Stock as of March 15, 2016.

[6] Capitalized terms used in this section but not otherwise defined herein have the meanings ascribed to them in the Procedures.

[7] To the extent that this summary and the terms of the Procedures are inconsistent, the terms of the Procedures control.

*Procedures for Transfers of Beneficial Ownership of the Common Stock*

a.   The Debtors will serve notice of the Interim Order and the Procedures upon all parties in interest, including all registered holders of the Common Stock, no later than two business days after entry of the Interim Order.[8]

b.   Any person or Entity that has direct or indirect Beneficial Ownership (as determined under the applicable attribution and constructive ownership rules of section 382 of the IRC) of 4.5 percent or more of the Common Stock must file with the Court and serve upon the Notice Parties a Declaration of Status as a Substantial Shareholder, substantially in the form annexed to the Procedures as **Exhibit 1A** on or before the later of (i) 30 calendar days after the date of the Notice of Interim Order, and (ii) 10 calendar days after becoming a Substantial Shareholder.

c.   Prior to effectuating any transfer of Beneficial Ownership of the Common Stock that would (i) affect the size of a Substantial Shareholder's Beneficial Ownership, or (ii) would result in another person or Entity becoming or ceasing to be a Substantial Shareholder, the parties to such transaction must file with the Court and serve upon the Notice Parties, as applicable, a Declaration of Intent to Accumulate Common Stock, substantially in the form annexed to the Procedures as **Exhibit 1B**, or a Declaration of Intent to Transfer Common Stock, substantially in the form annexed to the Procedures as **Exhibit 1C**.

 i.    The Debtors shall have 30 calendar days after receipt of a Declaration of Proposed Transfer to file with the Court and serve upon such person or Entity an objection to the proposed transaction on the grounds that such claim might adversely affect the Debtors' ability to utilize their NOLs and other Tax Attributes.

 ii.   If the Debtors timely object, the proposed transaction will remain ineffective pending a final and non-appealable order of the Court, unless the Debtors withdraw such objection.

 iii.  If the Debtors do not object, the proposed transaction may proceed solely as described in the Declaration of Proposed Transfer.

---

[8] The notice provisions in the Procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the relevant counterparties with notice and an opportunity to object and attend a hearing. *See, e.g., In re Atamian*, 368 B.R. 375, 378 (Bankr. D. Del. 2007) ("Rule 9014 does not require a hearing, only an opportunity for a hearing." (citation omitted)), aff'd, No. 05-20040 (MFW), 2008 WL 853462 (D. Del. Mar. 31, 2008), 300 F. App'x 175 (3d Cir. 2008); *Flynn v. Eley (In re Colo. Mountain Cellars, Inc.)*, 226 B.R. 244, 246 (D. Colo. 1998) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014).

***Procedures for Claiming a Worthless Stock Deduction With Respect to Common Stock***

a.      Any person or Entity that currently is or becomes a 50-Percent Shareholder must file with the Court and serve upon counsel to the Debtors a Declaration of Status as a 50-Percent Shareholder, substantially in the form annexed to the Procedures as **Exhibit 1D**, on or before the later of (i) 30 calendar days after the date of the Notice of Order, and (ii) 10 calendar days after becoming a 50-Percent Shareholder.

b.      Prior to filing any federal or state income tax return, or any amendment to such a return, that claims any Worthless Stock Deduction with respect to Common Stock for a tax year ending on or before the effective date of a plan of reorganization of the Debtors that are Beneficially Owned by a 50-Percent Shareholder as of the end of such taxable year, such 50-Percent Shareholder must file with the Court and serve upon counsel to the Debtors a Declaration of Intent to Claim a Worthless Stock Deduction, substantially in the form annexed to the Procedures as **Exhibit 1E**.

i.      The Debtors will have 30 calendar days after receipt of a Declaration of Intent to Claim a Worthless Stock Deduction to file with the Court and serve on such 50-Percent Shareholder an objection to any Proposed Worthless Stock Deduction described in the Declaration of Intent to Claim a Worthless Stock Deduction on the grounds that such claim might adversely affect the Debtors' ability to utilize their NOLs and other Tax Attributes.

ii.     If the Debtors timely object, the filing of the tax return or amendment thereto with such claim will not be permitted unless approved by a final and non-appealable order of the Court, unless the Debtors withdraw such objection.

iii.    If the Debtors do not object within such 30-day period, the filing of the return or amendment with such claim will be permitted solely as described in the Declaration of Intent to Claim a Worthless Stock Deduction. Additional returns and amendments within the scope of this section must be the subject of additional notices as set forth herein, with an additional 30-day waiting period. To the extent that the Debtors receive an appropriate Declaration of Intent to Claim a Worthless Stock Deduction and determine in their business judgment not to object, they shall provide notice of that decision as soon as is reasonably practicable to: (a) the Debtors, c/o Venoco, Inc., 370 17th Street, Suite 3900, Denver, CO 80202-1370; (b) proposed counsel for the Debtors, Bracewell LLP, 1251 Avenue of the Americas, 49th Floor, New York, NY 10020, Attn: Robert G. Burns, Robin J. Miles, and Rebekah T. Scherr; and CityPlace I, 34th Floor, 185 Asylum Street, Hartford, Connecticut 06103, Attn: Mark E. Dendinger; (c) proposed co-counsel for the

Debtors, Morris, Nichols, Arsht & Tunnel LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899, Attn: Robert J. Dehney, Andrew R. Remming, and Erin R. Fay; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) the office of the United States Trustee for the District of Delaware, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Mark Kenney; (f) the Indenture Trustee for the First Lien Secured Notes and Second Lien Secured Notes, U.S. Bank National Association, 950 17th Street, 12th Floor Denver, CO 80202, Attn.: Global Corporate Trust Services, and counsel to the Indenture Trustee for the First Lien Secured Notes and Second Lien Secured Notes, Dorsey & Whitney LLP, 600 Anton Boulevard, Suite 2000 Costa Mesa, CA 92626-7655, Attn.: Dennis Wong; (i) the Indenture Trustee for the Venoco 8.875% Senior Notes, Wilmington Savings Fund Society, FSB, 500 Delaware Avenue Wilmington, DE 19801, Attn.: Patrick J. Healy; (j) the Indenture Trustee for the Senior PIK Toggle Notes, U.S. Bank National Association, 950 17th Street, 12th Floor Denver, CO 80202, Attn.: Global Corporate Trust Services; and (k) counsel to (i) the lenders under the Debtors' proposed postpetition secured debtor in possession financing and (ii) the Consenting First Lien Noteholders and Consenting Second Lien Noteholders under the RSA, Davis Polk & Wardell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Damian Schaible; (the "Notice Parties").

**Basis for Relief**

17.     Section 541 of the Bankruptcy Code provides that property of the estate comprises, among other things, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The NOLs and other Tax Attributes are property of the Debtors' estates. *See, e.g., Official Comm. of Unsecured Creditors v. PSS S.S. Co. (In re Prudential Lines Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) ("We hold that the right to a carryforward attributable to its . . . NOL was property of [the debtor's] bankruptcy estate."), cert. denied, 502 U.S. 821 (1991); *In re Delta Air Lines, Inc.*, No. 05-17923 (PCB) (Bankr. S.D.N.Y. Dec. 19, 2005) (finding that NOLs are property of the debtors' estates); *Nisselson v. Drew Indus., Inc. (In re White Metal Rolling & Stamping Corp.)*, 222 B.R. 417, 424 (Bankr. S.D.N.Y. 1998) (same); *Official Comm. of Unsecured Creditors v. Forman (In re Forman Enters., Inc.)*,

10

273 B.R. 408, 415 (Bankr. W.D. Pa. 2002) (same). Moreover, section 362(a)(3) of the Bankruptcy Code stays "any act [of a person or entity] to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Accordingly, any act of a holder of a debtor's equity securities that causes the termination or limits use of the NOLs and other Tax Attributes violates the automatic stay. *See, e.g., Prudential Lines*, 928 F.2d at 574 (holding that causing the termination of or adversely affecting the value of a debtor's NOL violates the automatic stay); *In re Phar-Mor, Inc.*, 152 B.R. 924, 927 (Bankr. N.D. Ohio 1993) ("[T]he sale of stock is prohibited by § 362(a)(3) [of the Bankruptcy Code] as an exercise of control over the NOL, which is property of the estate.").

18.    Implementation of the Procedures is necessary and appropriate to enforce the automatic stay and, critically, to preserve the potential value of the NOLs and other Tax Attributes for the benefit of the Debtors' estates. Under section 382 of the IRC, certain transfers of the Common Stock or Worthless Stock Deductions with respect to the Common Stock prior to the consummation of a chapter 11 plan, could substantially limit the use of the Debtors' NOLs and other Tax Attributes. Thus, granting the relief requested herein will preserve the Debtors' flexibility in operating their businesses during the pendency of these chapter 11 cases and also implementing an exit plan that makes full and efficient use of the Tax Attributes, thereby maximizing the value of their estates. Conversely, the limitation of the ability to utilize the Debtors' Tax Attributes could be materially detrimental to all parties in interest.

19.    The Procedures with respect to trading in equity, (i.e., trading in Common Stock or claims of Worthless Stock Deductions with respect to Common Stock), are designed to protect the Debtors from losing the benefit of all or any portion of their NOLs and other Tax Attributes in connection with transfers of Common Stock or Worthless Stock Deductions prior to the

effective date of a plan of reorganization that may (a) trigger an ownership change not within the scope of sections 382(l)(5) or 382(l)(6) of the IRC or (b) severely limit the Debtors' ability to use their NOLs and other Tax Attributes to shelter any taxable income or gain resulting from any sale of assets in the course of these chapter 11 cases. The Debtors require a mechanism to monitor and possibly object to ownership changes resulting from transfers of Common Stock in order to be able to craft a plan of reorganization that permits the Debtors to use their NOLs and other Tax Attributes to the fullest extent possible to reduce federal income taxes on their post-reorganization income or to shelter any taxable income or gain resulting from any sale of assets during the pendency of these chapter 11 cases, thereby maximizing value for all stakeholders.

20.    Moreover, it is in the best interests of the Debtors, their estates and their stakeholders to restrict transfers that could result in an ownership change prior to consummation of a plan of reorganization. Transfers are limited only for parties who are or might become 5% shareholders. Because transfers by or into the hands of 5% shareholders before the effective date of a plan could trigger an ownership change that would impose a severe limitation on the Debtors' use of their NOLs and possibly other Tax Attributes on an annual basis, such transfers also pose a threat to the value of their NOLs and other Tax Attributes even if the Debtors later satisfied the requirements of sections 382(l)(5) or 382(l)(6) of the IRC in connection with a second ownership change resulting from a plan. An ownership change must occur pursuant to consummation of a plan in order for the Debtors to qualify for the Section 382(l)(5) Safe Harbor and/or for the favorable valuation rules of section 382(l)(6) of the IRC.

21.    Bankruptcy Courts in this and other districts routinely grant relief similar to that sought by this Motion. *See, e.g.*, *In re Sabine Oil & Gas Corp.*, Case No. 15-11835 (Bankr. S.D.N.Y. Aug. 10, 2015) (approving notification and hearing procedures for transfers of and

declarations of worthlessness with respect to equity securities); *In Re BPZ Resources, Inc.*, Case No. 15-60016 (Bankr. S.D. Tex. Mar. 26, 2015) (same); *In re Autoseis, Inc.*, Case No. 14-20130 (Bankr. S.D. Tex. Mar. 27, 2014) (approving notice and procedures for transfers of, or claims of worthlessness with respect to, equity securities, and setting claims record date for later sell-down order); *In re ATP Oil and Gas Corp.*, Case No. 12-36187 (Bankr. S.D. Tex. Sept. 27, 2012) (approving notice and procedures for transfers of equity securities); *In re Crusader Energy Grp. Inc.*, No. 09-31797 (Bankr. N.D. Tex. Aug. 6, 2009) (approving notice and procedures for transfers of equity securities). The Debtors submit that the present circumstances warrant similar relief in these chapter 11 cases.

**C.     The Procedures with Respect to Transfers of Common Stock and Worthless Stock Deductions Are Narrowly Tailored**

22.     Additionally, the Procedures do not bar all transfers of Common Stock, Worthless Stock Deductions with respect to the Common Stock. Instead, the Debtors seek to establish procedures only to monitor those types of actions that could pose a serious risk under the ownership change rules of section 382 of the IRC, and to preserve the Debtors' ability to seek substantive relief if it appears that a proposed transaction could jeopardize the Debtors' utilization of the NOLs or other Tax Attributes. Because of the importance of the NOLs and other Tax Attributes to the Debtors' restructuring, and consequently all parties in interest, implementation of the Procedures outweighs subjecting certain holders of Common Stock to the Procedures.

**D.     Interim Relief Is Necessary to Avoid Irreparable Harm to the Debtors**

23.     Once a Tax Attribute including an NOL is limited under section 382 of the IRC, its use is limited forever. The relief sought herein on an interim basis pursuant to the Interim Order is necessary to avoid an irrevocable loss of the Debtors' NOLs and other Tax Attributes

and the irreparable harm that could be caused by unfettered transfers of Common Stock, which, unmonitored, could jeopardize the Debtors' ability to offset taxable income with their NOLs, thereby risking the Debtors' ability to increase liquidity.

24.     Accordingly, the Debtors submit that, absent the interim relief granted in the Interim Order, the Debtors and their estates could suffer immediate and irreparable harm. If the Court does not grant the relief sought in this Motion on an interim basis, holders of Common Stock could transfer such securities before the protective restrictions herein are implemented by the Court, risking the Debtors' ability to use their NOLs and other Tax Attributes to maximize value and benefit their estates.  Therefore, the Debtors request that the Procedures with respect to trading of Common Stock, claims of Worthless Stock Deductions with respect to Common Stock described herein be approved immediately and on an interim basis.

## **Consent to Jurisdiction**

25.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## **Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

26.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Notice**

27.     The Debtors have provided notice of this Motion to: (a) the Office of the United States Trustee for the District of Delaware; (b) the entities listed on the Consolidated List of

Creditors Holding the 30 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (c) the Indenture Trustee and counsel to the Indenture Trustee for the First Lien Secured Notes and Second Lien Secured Notes; (d) the Indenture Trustee for the Venoco 8.875% Senior Notes; (e) the Indenture Trustee for the Senior PIK Toggle Notes; (f) counsel to (i) the lenders under the Debtors' proposed postpetition secured debtor in possession financing and (ii) the Consenting First Lien Noteholders and Consenting Second Lien Noteholders under the RSA; (g) the Delaware Secretary of State; (h) the Delaware Secretary of Treasury; (i) the Office of the United States Attorney General for the State of Delaware; and (j) the Internal Revenue Service.   In light of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further notice is necessary.

### No Prior Request

No prior motion for the relief requested herein has been made to this or any other court.


*[Remainder of the page left intentionally blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order, substantially in the form attached hereto as Exhibit A, and a final order, granting: (i) the relief requested herein; and (ii) such other and further relief to the Debtors as the Court may deem proper.

Dated: March 18, 2016
Wilmington, Delaware

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
*/s/  Erin R. Fay*

Robert J. Dehney (No. 3578)
Andrew R. Remming (No. 5120)
Erin R. Fay (No. 5268)
1201 North Market Street, 16th Floor
P.O. Box 1347
Wilmington, Delaware 19899
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
rdehney@mnat.com
aremming@mnat.com
efay@mnat.com

-and-

**BRACEWELL LLP**
Robert G. Burns (*pro hac vice* pending)
Robin J. Miles (*pro hac vice* pending)
Rebekah T. Scherr (*pro hac vice* pending)
1251 Avenue of Americas, 49th Floor
New York, New York 10020-1104
Telephone: (212) 508-6100
Facsimile: (800) 404-3970
Robert.Burns@bracewelllaw.com
Robin.Miles@bracewelllaw.com
Rebekah.Scherr@bracewelllaw.com

-and-

Mark E. Dendinger (*pro hac vice* pending)
CityPlace I, 34th Floor
185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 947-9000
Facsimile: (800) 404-3970
Mark.Dendinger@bracewelllaw.com

*Proposed Counsel for Debtors and Debtors in Possession*