## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| Venoco, Inc., *et al.*, | Case No. 16-10655 (KG) |
| Debtors.[1] | (Jointly Administered) **Re: D.I. 11** |

### INTERIM ORDER (I) AUTHORIZING DEBTORS
### (A) TO OBTAIN POSTPETITION FINANCING PURSUANT TO
### 11 U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e)
### AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363,
### (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES
### PURSUANT TO 11 U.S.C. §§ 361, 362, 363, 364 AND 507(b) AND (III) SCHEDULING
### FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the motion (the "**Motion**") of Venoco, Inc. ("**Venoco**" or the "**Borrower**"), Denver

Parent Corporation ("**Holdings**") and the subsidiaries of Venoco that are debtors and debtors in

possession in the above-captioned cases (collectively with Venoco and Holdings,

the "**Debtors**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2),

364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et*

*seq.* (the "**Bankruptcy Code**"), and Rules 2002, 4001, 6004 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Bankruptcy Rules of the United

States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), seeking,

among other things:

A.    authorization for the Borrower to obtain postpetition financing (the "**DIP**

**Financing**"), and for all of the other Debtors except Ellwood Pipeline, Inc. (collectively, the

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Venoco, Inc. (5555); Denver Parent Corporation (1005); TexCal Energy (LP) LLC (0806); Whittier Pipeline Corporation (1560); TexCal Energy (GP) LLC (0808); Ellwood Pipeline, Inc. (5631); and TexCal Energy South Texas, L.P. (0812). The Debtors' main corporate and mailing address for purposes of these chapter 11 cases is: Venoco, Inc., 370 17th Street, Suite 3900, Denver, CO 80202-1370.

"**Guarantors**" and, together with the Borrower, the "**Loan Parties**") to guaranty the Borrower's obligations in connection with the DIP Financing, consisting of a senior secured superpriority non-amortizing delayed draw term loan facility (the "**DIP Facility**") in an aggregate principal amount of up to $35 million, in each case on the terms and conditions set forth in this Interim Order and the DIP Documents (each as defined below), from Wilmington Trust, National Association ("**Wilmington Trust**"), acting as administrative agent and collateral agent (in such capacities, the "**DIP Agent**"), and the DIP Lenders (as defined below);

      B.      authorization for the Loan Parties to execute and enter into the Superpriority Secured Debtor-in-Possession Credit Agreement, among the Borrower, the Guarantors, the DIP Agent and the lenders from time to time party thereto (the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), substantially in the form attached to the Motion as Exhibit B (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with the schedules and exhibits attached thereto and all agreements, documents, instruments and/or amendments executed and delivered in connection therewith, including, without limitation, the Security Agreement, among the Borrower, the Guarantors and the DIP Agent (the "**DIP Security Agreement**"), the "**DIP Documents**") and to perform all such other and further acts as may be required in connection with the DIP Documents;

      C.      the grant of adequate protection to (i) the First Lien Notes Trustee (as defined below) and the holders (the "**First Lien Noteholders**") of the 12.00% Senior Secured Notes due 2019 issued under or in connection with that certain Indenture (as amended, supplemented or otherwise modified from time to time, the "**First Lien Notes Indenture**"), dated as of April 2, 2015, by and among Venoco, the subsidiaries of Venoco party thereto as guarantors, and U.S.

Bank, National Association, as trustee and collateral agent (in such capacities, the "**First Lien Notes Trustee**" and together with the First Lien Noteholders, the "**First Lien Notes Secured Parties**") and that certain First Lien Security Agreement (the "**First Lien Security Agreement**"), dated as of April 2, 2015, among Venoco, the other grantors party thereto and the First Lien Notes Trustee (the First Lien Notes Indenture and the First Lien Security Agreement, collectively with all other security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Loan Parties in favor of the First Lien Notes Trustee, for its benefit and for the benefit of the First Lien Noteholders, the "**First Lien Notes Agreements**") and (ii) the Second Lien Notes Trustee (as defined below) and the holders (the "**Second Lien Noteholders**") of the 8.875% Senior Secured Notes due 2019 issued under or in connection with that certain Indenture (as amended, supplemented or otherwise modified from time to time, the "**Second Lien Notes Indenture**" and, together with the First Lien Notes Indenture, the "**Prepetition Notes Indentures**"), dated as of April 2, 2015, by and among Venoco, the subsidiaries of Venoco party thereto as guarantors, and U.S. Bank, National Association, as trustee and collateral agent (in such capacities, the "**Second Lien Notes Trustee**" and together with the Second Lien Noteholders, the "**Second Lien Notes Secured Parties**" and together with the First Lien Notes Secured Parties, the "**Prepetition Secured Parties**") and that certain Second Lien Security Agreement (the "**Second Lien Security Agreement**"), dated as of April 2, 2015, among Venoco, the other grantors party thereto and the Second Lien Notes Trustee (the Second Lien Notes Indenture and the Second Lien Security Agreement, collectively with all other security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Loan Parties in favor of the Second Lien Notes Trustee, for its benefit and for the benefit of the Second Lien Noteholders, the "**Second Lien**

Notes Agreements" and together with the First Lien Notes Agreements, the "**Existing**

**Agreements**"), whose respective liens and security interests in the Prepetition Collateral (as

defined below) are being primed by the DIP Liens; and

      D.      authorization for the Loan Parties to continue to use Cash Collateral (as defined

below) and all other Prepetition Collateral (as defined below) in which any of the (i) First Lien

Notes Secured Parties and (ii) Second Lien Notes Secured Parties have an interest on the terms

set forth herein and subject to the budget attached hereto as <u>Exhibit A</u> (as amended,

supplemented or otherwise modified from time to time pursuant to the DIP Credit Agreement

and this Interim Order, the "**Approved Budget**");

      E.      approval of certain stipulations in paragraph 4 of this Interim Order by the

Debtors with respect to the Existing Agreements and the liens and security interests arising

therefrom;

      F.      the grant of superpriority claims pursuant to section 364(c)(1) of the Bankruptcy

Code to the DIP Secured Parties payable from, and secured by liens pursuant to section 364(c)(2)

and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the

Bankruptcy Code on, all prepetition and postpetition property of the Loan Parties' estates (other

than the Excluded Assets (as defined in the DIP Documents)) and all proceeds thereof

(including, subject only to and effective upon entry of the Final Order (as defined below), any

Avoidance Proceeds (as defined below)), subject only to the Carve-Out (as defined below);

      G.      subject only to and effective upon entry of the Final Order, the waiver of the

Debtors' right to surcharge the Prepetition Collateral and the Collateral (as defined below)

pursuant to section 506(c) of the Bankruptcy Code and any right of the Debtors under the

"equities of the case" exception in section 552(b) of the Bankruptcy Code;

H.     modification of the automatic stay to the extent set forth herein and in the DIP Documents;

I.     pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") on the Motion to be held before this Court to consider entry of an order granting the Motion on an interim basis (this "**Interim Order**"); and

J.     that this Court schedule a final hearing (the "**Final Hearing**") to be held within 45 days of the entry of this Interim Order to consider entry of a final order (the "**Final Order**") approving the relief granted herein on a final basis and authorizing the Borrower to forthwith borrow from the DIP Lenders under the DIP Documents up to the full amount of the DIP Financing and the Guarantors to guaranty all obligations owing to the DIP Lenders under the DIP Documents;

and due and appropriate notice of the Motion and the Interim Hearing having been served by the Debtors on (i) the Office of the United States Trustee for the District of Delaware ("**U.S. Trustee**"), (ii) the holders of the 30 largest unsecured claims against the Debtors on a consolidated basis, (iii) Davis Polk & Wardwell LLP as counsel and Landis Rath & Cobb LLP as Delaware counsel to (a) the DIP Lenders and (b) the Consenting First Lien Noteholders and Consenting Second Lien Noteholders under the Restructuring Support Agreement,[2] (iv) the Indenture Trustee for the First Lien Secured Notes and Second Lien Secured Notes, U.S. Bank National Association, 950 17th Street, 12th Floor Denver, CO 80202, Attn.: Global Corporate Trust Services, and counsel to the Indenture Trustee for the First Lien Secured Notes and Second Lien Secured Notes, Dorsey & Whitney LLP, 600 Anton Boulevard, Suite 2000 Costa Mesa, CA 92626-7655, Attn.: Dennis Wong, (vi) the Indenture Trustee for the Venoco 8.875% Senior

---

[2] The prepetition restructuring support agreement entered into by the Debtors and the Prepetition Secured Parties dated as of March 18, 2016 (the "**Restructuring Support Agreement**").

Notes, Wilmington Savings Fund Society, FSB, 500 Delaware Avenue Wilmington, DE 19801,

Attn.: Patrick J. Healy, (vii) the Indenture Trustee for the Senior PIK Toggle Notes, U.S. Bank

National Association, 950 17th Street, 12th Floor Denver, CO 80202, Attn.: Global Corporate

Trust Services, (viii) the Delaware Secretary of State, (ix) the Delaware Secretary of Treasury;

(x) the Office of the United States Attorney General for the State of Delaware; (xi) the Internal

Revenue Service; (xii) the Securities and Exchange Commission, (xiii) all parties known by the

Debtors to hold or assert a lien on any asset of any Debtor, (xiv) all relevant state taxing

authorities, and (xv) all of the Debtors' landlords, and owners and/or operators of premises at

which any of the Debtors inventory and/or equipment is located, and appearing that no other or

further notice need be provided; and the Court having reviewed the Motion; and the Interim

Hearing having been held by this Court on March 21, 2016; and the relief requested in the

Motion being in the best interests of the Debtors, their creditors and their estates and all other

parties in interest in the Cases (as defined below); and the Court having determined that the relief

requested in the Motion is necessary to avoid immediate and irreparable harm; and the Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and upon the record made by the Debtors in the Motion, the

*Declaration of Timothy R. Coleman in Support of Debtors' Motion for Entry of Interim and*

*Final Orders Authorizing the Debtors (A) to Obtain Postpetition Financing Pursuant to 11*

*U.S.C. §§ 105, 361, 362, 363(b), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) to*

*Utilize Cash Collateral Pursuant to 11 U.S.C. § 363, (II) Granting Adequate Protection to*

*Prepetition Secured Parties Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507(b) and (III)*

*Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)* (Docket No. 11), the

*Declaration of Scott M. Pinsonnault, Chief Financial Officer and Chief Restructuring Officer of*

*Venoco, Inc., in Support of Chapter 11 Petitions and First Day Pleadings* (Docket No. 2), and at the Interim Hearing and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Disposition.*  The relief requested in the Motion is granted on an interim basis in accordance with the terms of this Interim Order.  Any objections to the Motion with respect to the entry of this Interim Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits.  This Interim Order shall become effective immediately upon its entry.

2.    *Jurisdiction.*  This Court has core jurisdiction over the Cases (as defined below), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    *Notice.*  Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and no other or further notice of the Motion or the entry of this Interim Order shall be required, except as set forth in paragraph 36 below. The interim relief granted herein is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing.

4.    *Debtors' Stipulations.*  Without prejudice to any other party in interest, (but subject to the limitations thereon contained in paragraphs 19 through 21 below) the Debtors admit, stipulate and agree that:

(a)    (i) as of the date (the "**Petition Date**") of the filing of the Debtors' chapter 11 cases (the "**Cases**"), the Borrower and the Guarantors were justly and lawfully indebted and liable to (A) the First Lien Notes Secured Parties without defense, counterclaim or offset of any

kind, in the aggregate principal amount of approximately $175,000,000 in respect of notes issued to the First Lien Noteholders pursuant to, and in accordance with the terms of, the First Lien Notes Agreements, plus accrued and unpaid interest thereon and prepayment premium and make-whole amounts, and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the First Lien Notes), charges, indemnities and other obligations incurred in connection therewith as provided in the First Lien Notes Agreements (collectively, the "**First Lien Notes Debt**"), which First Lien Notes Debt has been guaranteed on a joint and several basis by all of the other Guarantors except Holdings, and (B) the Second Lien Notes Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $150,350,000 in respect of notes issued to the Second Lien Notes Secured Parties pursuant to, and in accordance with the terms of, the Second Lien Notes Agreements, plus accrued and unpaid interest thereon and prepayment premium and make-whole amounts, and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees, in each case, that are chargeable or reimbursable under the Second Lien Notes), charges, indemnities and other obligations incurred in connection therewith as provided in the Second Lien Notes Agreements (collectively, the "**Second Lien Notes Debt**" and collectively with the First Lien Notes Debt, the "**Prepetition Secured Debt**"), which Second Lien Notes Debt has been guaranteed on a joint and several basis by all of the other Guarantors except Holdings; (ii) the Prepetition Secured Debt constitutes the legal, valid and binding obligations of the Borrower and the Guarantors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code); and (iii) no portion of the Prepetition Secured Debt or any payments made to the Prepetition Secured Parties or applied to or paid on account of the obligations owing under

the Existing Agreements prior to the Petition Date is subject to any contest, attack, rejection, recovery, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

    (b) the liens and security interests granted to the First Lien Notes Secured Parties (the "**Prepetition First Priority Liens**") pursuant to and in connection with the First Lien Notes Agreements are: (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the First Lien Notes Collateral[3] and (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law;

    (c) the liens and security interests granted to the Second Lien Notes Secured Parties (the "**Prepetition Second Priority Liens**" and together with the Prepetition First Priority Liens, the "**Prepetition Liens**") pursuant to and in connection with the Second Lien Notes Agreements are: (i) valid, binding, perfected, enforceable, second-priority liens and security interests in the Second Lien Notes Collateral[4] (the "**Second Lien Notes Collateral**" and together with the First Lien Notes Collateral, the "**Prepetition Collateral**") and (ii) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or Claim under the Bankruptcy Code or applicable non-bankruptcy law;

---

[3] "**First Lien Notes Collateral**" means any and all of the Collateral (as such term is defined in the First Lien Security Agreement) now owned or at any time hereafter acquired by any of the Loan Parties to the extent a security interest in such Collateral has been or may hereafter be granted to the First Lien Notes Secured Parties in connection with the First Lien Notes Agreements (including any adequate protection liens granted hereunder).

[4] "**Second Lien Notes Collateral**" means any and all of the Collateral (as such term is defined in the Second Lien Security Agreement) now owned or at any time hereafter acquired by any of the Loan Parties to the extent a security interest in such Collateral has been or may hereafter be granted to the Second Lien Notes Secured Parties in connection with the Second Lien Notes Agreements (including any adequate protection liens granted hereunder).

(d)    no claims or causes of action exist against, or with respect to, the Prepetition Secured Parties under any agreements by and among the Debtors and any such party that is in existence as of the Petition Date; and

(e)    effective as of the date of entry of this Interim Order, the Debtors hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Existing Agreements, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Interim Order, whether such Released Claims are matured or unmatured or known or unknown;

(f)    all cash, securities or other property of the Loan Parties (and the proceeds therefrom) as of the Petition Date, including, without limitation, all cash, securities or other property (and the proceeds therefrom) and other amounts on deposit or maintained by the Loan Parties in any account or accounts with any depository institution (collectively, the "**Depository**

Institutions") were subject to rights of set-off and valid, perfected, enforceable, first and second priority liens under the Existing Agreements and applicable law, for the benefit of the Prepetition Secured Parties. All proceeds of the Prepetition Collateral (including cash on deposit at the Depository Institutions as of the Petition Date, securities or other property, whether subject to control agreements or otherwise, in each case that constitutes Prepetition Collateral) are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

  5.  *Findings Regarding the DIP Financing and Cash Collateral.*

    (a)  Good and sufficient cause has been shown for the entry of this Interim Order.

    (b)  The Loan Parties have an immediate need to obtain the DIP Financing and continue to use the Prepetition Collateral (including Cash Collateral) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs. The access of the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Loan Parties and to a successful reorganization of the Loan Parties.

    (c)  The Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an

administrative expense.  The Loan Parties are also unable to obtain secured credit allowable

under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Loan

Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens

and the DIP Superpriority Claims (as defined below) and incurring the Adequate Protection

Obligations, in each case, under the terms and conditions set forth in this Interim Order and in

the DIP Documents.

(d)     Based on the record presented in the Court by the Debtors, the Debtors

have prepared or delivered to the DIP Agent, the DIP Lenders and the Prepetition Secured

Parties the Approved Budget.  The Approved Budget has been thoroughly reviewed by the

Debtors and their management and sets forth, among other things, the projected cash receipts and

disbursements for the periods covered thereby.  The Debtors believe in good faith that the

Approved Budget is achievable.  The DIP Agent, the DIP Lenders and the Prepetition Secured

Parties are hereby relying upon the Debtors' compliance with the Approved Budget in

determining to consent to the use of Cash Collateral as set forth herein and to enter into the DIP

Financing provided for herein.

(e)     Based on the Motion, the declarations filed in support of the Motion, and

the record presented to the Court at the Interim Hearing, the terms of the DIP Financing and the

terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash

Collateral) pursuant to this Interim Order and the DIP Documents are fair and reasonable, reflect

the Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and

constitute reasonably equivalent value and fair consideration.

(f)     The DIP Financing and the use of the Prepetition Collateral (including

Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties,

the DIP Agent and the DIP Lenders, including certain DIP Lenders that have agreed to serve as backstop DIP Lenders (collectively, the "**Backstoppers**")[5] and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (the "**DIP Loans**") and (ii) any "**Obligations**" (as defined in the DIP Credit Agreement) (all of the foregoing in clauses (i) through (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders and their respective affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof), and shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that this Interim Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

---

[5] For the avoidance of doubt, unless expressly specified otherwise, the term "DIP Lenders" shall include the Backstoppers.

(g)     The Prepetition Secured Parties are entitled to the adequate protection provided in this Interim Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in this Interim Order or the other DIP Loan Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Interim Order and in the context of the DIP Financing authorized by this Interim Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of that certain Collateral Agency and Intercreditor Agreement dated as of April 2, 2015 among the First Lien Notes Trustee, the Second Lien Notes Trustee, Venoco and the Guarantors (as amended, supplemented or otherwise modified prior to the date hereof, the "**Intercreditor Agreement**"), to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)     The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and the Local Bankruptcy Rules. Absent granting the relief set forth in this Interim Order, the Loan Parties' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Interim Order and the

DIP Documents are therefore in the best interests of the Loan Parties' estates and consistent with the Loan Parties' exercise of their fiduciary duties.

      6.    *Authorization of the DIP Financing and the DIP Documents.*

      (a)    The Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents. Upon entry of the Final Order, the Borrower will be authorized to borrow money pursuant to the DIP Credit Agreement, and the Guarantors will be authorized to guaranty the Borrower's obligations with respect to such borrowings, up to an aggregate principal or face amount of $35,000,000, in accordance with the terms of the Final Order and the DIP Documents, which shall be used for all purposes permitted under the DIP Documents (and subject to the Approved Budget), including, without limitation, to provide working capital for the Debtors, to pay interest, fees and expenses in accordance with this Interim Order, the Final Order and the DIP Documents and to make all adequate protection payments authorized hereunder.

      (b)    Subject to paragraph 6(a), in furtherance of the foregoing and without further approval of this Court, each Loan Party is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Loan Parties' performance of their obligations under the DIP Financing, including, without limitation:

      (i)    the execution and delivery of, and performance under, each of the DIP Documents;

      (ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each

case, in such form as the Loan Parties, the DIP Agent and the Required Lenders (as defined in

the DIP Credit Agreement) may agree, it being understood that no further approval of the Court

shall be required for authorizations, amendments, waivers, consents or other modifications to and

under the DIP Documents (and any fees paid in connection therewith) that do not (a) shorten the

maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate

of interest payable thereunder, (b) increase existing fees or add new fees thereunder (excluding,

for the avoidance of doubt, any amendment, consent or waiver fee), or (c) shorten the case

milestones set forth in Section 7.17 of the DIP Credit Agreement (such authorizations,

amendments, waivers, consents or other modifications not requiring further approval of the

Court, "**Immaterial Amendments**"); /^ on an interim basis /

(iii)  the non-refundable payment to the DIP Agent or the DIP Lenders,

as the case may be, of all fees (including the Backstop Fee, as defined in the DIP Credit

Agreement) (which fees shall be, and shall be deemed to have been, approved upon entry of this

Interim Order and upon payment thereof, shall not be subject to any contest, attack, rejection,

recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization,

avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy

Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may

become due) in respect of the indemnification obligations, in each case referred to in the DIP

Credit Agreement (and in any separate letter agreements between any or all Loan Parties, on the

one hand, and the DIP Agent and/or DIP Lenders, on the other, in connection with the DIP

Financing) and the costs and expenses as may be due from time to time, including, without

limitation, fees and expenses of the professionals retained by any of the DIP Agent or DIP

Lenders, in each case, as provided for in the DIP Documents, without the need to file retention motions or fee applications or to provide notice to any party; and

    (iv) the performance of all other acts required under or in connection with the DIP Documents.

    (c) Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the DIP Documents and this Interim Order.  No obligation, payment, transfer or grant of security under the DIP Documents or this Interim Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment, claim or counterclaim.

    7. *DIP Superpriority Claims.*

    (a) Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 503(b), 506(c) (subject to entry of the Final Order), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority**

Claims") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered

administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP

Superpriority Claims shall be payable from and have recourse to all pre- and postpetition

property of the Loan Parties and all proceeds thereof (excluding Avoidance Actions (as defined

below) but including, effective upon entry of the Final Order, Avoidance Proceeds), subject only

to the liens on such property and the Carve-Out.  The DIP Superpriority Claims shall be entitled

to the full protection of section 364(e) of the Bankruptcy Code in the event that this Interim

Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

      (b)    For purposes hereof, the **"Carve-Out"** is an amount equal to the sum of

(i) all fees required to be paid to the clerk of the Court and to the U.S. Trustee under section

1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to

the notice set forth in (iii) below); (ii) fees and expenses incurred by a trustee under section

726(b) of the Bankruptcy Code in an amount not to exceed $50,000 (without regard to the notice

set forth in (iii) below); and (iii) to the extent ultimately allowed by the Court, claims for unpaid

fees, costs and expenses (the **"Professional Fees"**) incurred by persons or firms retained by the

Debtors or the Creditors' Committee (as defined in the DIP Credit Agreement), if one is

appointed, whose retention is approved by the Court pursuant to sections 327 and 1103 of the

Bankruptcy Code (collectively, the **"Professional Persons"**), subject to the terms of this Interim

Order, the Final Order and any other interim or other compensation order entered by the Court

that are incurred (A) at any time before delivery by the DIP Agent of a Carve-Out Trigger Notice

(as defined below), whether allowed by the Court prior to or after delivery of a Carve-Out

Trigger Notice, subject to any limits imposed by this Interim Order, the Final Order or otherwise

on Professional Fees permitted to be incurred in connection with any permitted investigations of

claims and defenses against any Prepetition Secured Parties; and (B) after the occurrence and during the continuance of an Event of Default (or any event resulting in the termination of the Debtors' right to use Cash Collateral) and delivery of written notice (the "**Carve-Out Trigger Notice**") thereof (which may be by email) to the Debtors, the Debtors' counsel, the U.S. Trustee, and lead counsel for the Creditors' Committee (if one is appointed) in an aggregate amount not to exceed $1,000,000 (the amount set forth in this clause (iii)(B) being the "**Post-EoD Carve-Out Amount**"); *provided* that any success or transaction fees that may become due and payable to Professional Persons shall not be included in or payable from the Post-EoD Carve-Out Amount, *provided, further*, that nothing herein shall be construed to impair the ability of any party to object to the fees, expenses, reimbursement or compensation described in clauses (i), (ii), (iii)(A) or (iii)(B) above, on any grounds.

      (c)     Notwithstanding the foregoing, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (a) except to the extent such fees or expenses are incurred by the Creditors' Committee in accordance with paragraph 20 and the Committee Investigation Budget (as defined below), the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Lenders, the DIP Agent, or the holders of any indebtedness described in paragraph 4 above (whether in such capacity or otherwise), or (ii) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Loan Documents or the indebtedness described in paragraph 4 above (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to sections 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable nonbankruptcy law or

otherwise; (b) attempts to modify any of the rights granted to the DIP Lenders or the DIP Agent;

(c) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's

assertion, enforcement or realization upon any Collateral (as defined below) in accordance with

the DIP Loan Documents and the Final Order other than to seek a determination that an event of

default has not occurred or is not continuing or (d) paying any amount on account of any claims

arising before the commencement of the Cases unless such payments are approved by an order of

the Court.

        (d)      Notwithstanding anything to the contrary herein or in the DIP Documents,

the Carve-Out shall be senior to all liens and claims granted under this Interim Order and the DIP

Documents, any Adequate Protection Liens, the Adequate Protection Obligations (as defined

below), and any and all other liens or claims securing the DIP Facility.

        8.      *DIP Liens*. As security for the DIP Obligations, effective and perfected upon the

date of this Interim Order and without the necessity of the execution, recordation of filings by the

Loan Parties of mortgages, security agreements, control agreements, pledge agreements,

financing statements or other similar documents, or the possession or control by the DIP Agent

of, or over, any Collateral, the following security interests and liens are hereby granted to the

DIP Agent for its own benefit and the benefit of the DIP Lenders (all property identified in

clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"), subject only to

the payment of the Carve-Out (all such liens and security interests granted to the DIP Agent, for

its benefit and for the benefit of the DIP Lenders, pursuant to this Interim Order and the DIP

Documents, the "**DIP Liens**"):

        (a)      <u>First Lien On Unencumbered Property</u>. Pursuant to section 364(c)(2) of

the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority

senior security interest in and lien upon all tangible and intangible pre- and postpetition property

of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of

the Petition Date, is not subject to a valid, perfected and non-avoidable lien (collectively,

"**Unencumbered Property**"), including, without limitation, any and all unencumbered cash of

the Loan Parties (whether maintained with the DIP Agent or otherwise) and any investment of

such cash, inventory, accounts receivable, other rights to payment whether arising before or after

the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general

intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real

properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license

agreements and other intellectual property, capital stock of subsidiaries, wherever located, and

the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of

the Bankruptcy Code or otherwise, of all the foregoing, in each case other than: (i) the Excluded

Assets (as defined in the DIP Documents), but including any proceeds of Excluded Assets that

do not otherwise constitute Excluded Assets; and (ii) the Loan Parties' claims and causes of

action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other

avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but, subject

only to and effective upon entry of the Final Order, including any proceeds or property

recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment,

settlement or otherwise ("**Avoidance Proceeds**");

      (b)    <u>Liens Priming Certain Prepetition Secured Parties' Liens</u>.  Pursuant to

section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-

perfected security interest in and lien upon all pre- and postpetition property of the Borrower and

the Guarantors (including, without limitation, cash collateral, inventory, accounts receivable,

other rights to payment whether arising before or after the Petition Date, contracts, properties,

plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities,

chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights,

trademarks, trade names, rights under license agreements and other intellectual property, capital

stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the

foregoing), whether now existing or hereafter acquired, that is subject to the existing liens

presently securing the Prepetition Secured Debt (including in respect of issued but undrawn

letters of credit). Such security interests and liens shall be senior in all respects to the interests in

such property of the Prepetition Secured Parties arising from current and future liens of the

Prepetition Secured Parties (including, without limitation, adequate protection liens granted

hereunder), but shall not be senior to any valid, perfected and unavoidable interests of other

parties arising out of liens, if any, on such property permitted under the Existing Agreements

existing immediately prior to the Petition Date, or to any such valid, perfected and unavoidable

interests in such property arising out of such liens to which the liens of the Prepetition Secured

Parties become subject subsequent to the Petition Date as permitted by section 546(b) of the

Bankruptcy Code;

      (c)     <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interest in

and lien upon all pre- and postpetition property of the Borrower and the Guarantors (other than

the property described in clauses (a) or (b) of this paragraph 8, as to which the liens and security

interests in favor of the DIP Agent will be as described in such clauses), whether now existing or

hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence

immediately prior to the Petition Date that are permitted under the Existing Agreements, or to

any such valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent are junior to such valid, perfected and unavoidable liens; and

        (d)    <u>Liens Senior to Certain Other Liens</u>.  The DIP Liens and the Adequate Protection Liens (as defined below) shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this Interim Order (including paragraphs 8(c) and 14(a)), any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (C) any intercompany or affiliate liens or security interests of the Loan Parties; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

      9.     *Protection of DIP Lenders' Rights.*

        (a)    So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Prepetition Secured Parties with respect to any Prepetition Collateral shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Existing Agreements or this Interim Order, or otherwise seek to exercise or enforce any rights or remedies against such Collateral, including in connection with the Adequate Protection Liens; (ii) be deemed to have consented to any transfer,

disposition or sale of, or release of liens on, such Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the Commitments (as defined in the DIP Credit Agreement)), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents, (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to this Interim Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date, and (iv) deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of such Collateral.

(b)    To the extent the Prepetition Secured Parties have possession of any Prepetition Collateral or Collateral or have control with respect to any Prepetition Collateral or Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or exercise such control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders and shall comply with the instructions of the DIP Agent with respect to the exercise of such control and the DIP Agent agrees, and shall be deemed, without incurring any liability or duty to any party, to maintain possession or control of any Prepetition Collateral in its possession or control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the Prepetition Secured Parties with respect to bank accounts.

(c)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to enforce all of their rights under the DIP Documents (including any cash dominion as provided for in the DIP Documents) and (i) immediately upon the occurrence of an Event of Default, declare (A) the termination, reduction or restriction of any further Commitment (as defined in the DIP Credit Agreement) to the extent any such Commitment remains (subject to the obligation to fund the Post-EoD Carve-Out Amount), (B) all Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the Loan Parties, and (C) the termination of the DIP Documents as to any future liability or obligation of the DIP Agent and the DIP Lenders (but, for the avoidance of doubt, without affecting any of the DIP Liens or the Obligations) and (ii) unless the Court orders otherwise during the Remedies Notice Period (as defined below) upon a Remedies Hearing, upon the occurrence of an Event of Default and the giving of five days' prior written notice (which shall run concurrently with any notice required to be provided under the DIP Documents) (the "**Remedies Notice Period**") via email to the Debtors and counsel to the Debtors (and, upon receipt, the Debtors shall promptly provide a copy of such notice to counsel to the Creditors' Committee (if one is appointed), counsel to the First Lien Notes Trustee and the Second Lien Notes Trustee, and the U.S. Trustee) to (A) withdraw consent to the Loan Parties' continued use of Cash Collateral and (B) exercise all other rights and remedies provided for in the DIP Documents and under applicable law.  In any hearing regarding any exercise of rights or remedies under the DIP Documents (a "**Remedies Hearing**"), the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Prepetition Secured Parties hereby waive their right to and

shall not be entitled to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the DIP Agent or the DIP Lenders set forth in this Interim Order or the DIP Documents.  In no event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.  Further, subject only to and effective upon entry of the Final Order, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(d)     No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Interim Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

10.     *Limitation on Charging Expenses Against Collateral.*  Subject only to and effective upon entry of the Final Order, except to the extent of the Carve-Out, no costs or expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent or the Prepetition Secured Parties, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Agent, the DIP

Lenders or the Prepetition Secured Parties, and nothing contained in this Interim Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders or the Prepetition Secured Parties to any charge, lien, assessment or claim against the Collateral under section 506(c) of the Bankruptcy Code or otherwise.

11.    *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to the provisions of this Interim Order or the DIP Documents shall be received free and clear of any claim, charge, assessment or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code (subject to the entry of the Final Order approving the waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code), whether asserted or assessed by, through or on behalf of the Debtors.

12.    *Use of Cash Collateral.*

(a)    <u>Authorization of Use</u>. The Loan Parties are hereby authorized, subject to the terms and conditions of this Interim Order and only in accordance with the DIP Documents and the Approved Budget, to use all Cash Collateral and the Prepetition Secured Parties are directed promptly to turn over to the Loan Parties all Cash Collateral received or held by them; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Interim Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

(b)    <u>Termination Event</u>. Notwithstanding anything contained herein, the authority for use of Cash Collateral shall terminate (the "**Cash Collateral Termination Date**"), unless otherwise consented to by the DIP Lenders and the Prepetition Secured Parties, upon the

earlier to occur of (i) December 31, 2016, (ii) five days after the provision of notice of an Event

of Default (as defined in paragraph 18(b)) or any Event of Default (as defined in the DIP Credit

Agreement) occurs and is continuing, (iii) the date that any Debtor or any other party in interest

with proper standing granted by order of the Court (or another court of competent jurisdiction)

asserts, in a pleading filed with the Court (or another court of competent jurisdiction), a claim or

challenge against any of the Prepetition Secured Parties contrary to the Debtors'

acknowledgements, stipulations and releases contained herein; and (iv) the date that any Debtor

shall file a motion seeking any modification or extension of this Interim Order without the prior

written consent of the DIP Lenders and the Prepetition Secured Parties.

13.    *Adequate Protection of First Lien Notes Secured Parties.*  The First Lien Notes

Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the

Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including

Cash Collateral, for and equal in amount to the aggregate diminution in the value of the First

Lien Notes Secured Parties' interests in the Prepetition Collateral, including, without limitation,

any such diminution resulting from the depreciation, sale, lease or use by the Loan Parties (or

other decline in value) of the Prepetition Collateral, the priming of the First Lien Notes Secured

Parties' security interests and liens in the First Lien Notes Collateral by the DIP Agent and the

DIP Lenders pursuant to the DIP Documents and this Interim Order, and the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Prepetition First Priority**

**Adequate Protection Claim**").  As adequate protection of the Prepetition First Priority

Adequate Protection Claim, the First Lien Notes Secured Parties are hereby granted the

following (collectively, the "**Prepetition First Priority Adequate Protection Obligations**"):

(a)    <u>First Lien Notes Secured Parties Adequate Protection Liens</u>.  The First

Lien Notes Trustee (for itself and for the benefit of the First Lien Noteholders) is hereby granted

(effective and perfected upon the date of this Interim Order and without the necessity of the

execution of any mortgages, security agreements, pledge agreements, financing statements or

other agreements), in the amount of the Prepetition First Priority Adequate Protection Claim, a

valid, perfected replacement security interest in and lien upon all of the Collateral (including,

without limitation, subject to entry of the Final Order, Avoidance Proceeds), subject and

subordinate only to (i) the DIP Liens and any liens to which the DIP Liens are junior and (ii) the

Carve-Out (the "**Prepetition First Priority Adequate Protection Liens**") (it being understood

that, subject to and effective upon entry of the Final Order, the Prepetition First Priority

Adequate Protection Liens shall attach to Avoidance Proceeds);

(b)    <u>First Lien Notes Secured Parties Section 507(b) Claim</u>.  The First Lien

Notes Secured Parties are hereby granted, subject to the Carve-Out, a superpriority claim as

provided for in section 507(b) of the Bankruptcy Code, immediately junior to the claims under

section 364(c)(1) of the Bankruptcy Code held by the DIP Agent and the DIP Lenders

(the "**Prepetition First Priority 507(b) Claim**"), which Prepetition First Priority 507(b) Claims

shall have recourse to and be payable from all of the Collateral including, without limitation,

subject to entry of the Final Order, the Avoidance Proceeds; *provided, however*, that the First

Lien Notes Secured Parties shall not receive or retain any payments, property or other amounts in

respect of the Prepetition First Priority 507(b) Claim unless and until the DIP Obligations (other

than contingent indemnification obligations as to which no claim has been asserted) and any

claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have

indefeasibly been paid in cash in full and all Commitments (as defined in the DIP Credit Agreement) have been terminated;

      (c)    <u>First Lien Notes Secured Parties Fees and Expenses</u>.

      (i)    The First Lien Notes Trustee shall receive from the Loan Parties current cash payments of the reasonable and documented prepetition and postpetition fees and disbursements of one counsel and one local counsel for the First Lien Notes Trustee promptly upon receipt of invoices therefor, which payments shall be made in the manner provided for in paragraph 13(d) below; and

      (ii)    The Consenting First Lien Noteholders shall receive from the Loan Parties current cash payments of the reasonable and documented prepetition and postpetition fees and disbursements of their counsel, financial and other advisors promptly upon receipt of invoices therefor, which payments shall be made in the manner provided for in paragraph 13(d) below, including without limitation the fees and disbursements of (x) Davis Polk & Wardwell LLP as counsel, Landis Rath & Cobb LLP as Delaware counsel and FTI Consulting as financial advisor to the Consenting First Lien Noteholders and (y) if any Consenting First Lien Noteholder ceases to engage Davis Polk & Wardwell LLP and/or Landis Rath & Cobb LLP as counsel and Delaware counsel, respectively, one separate counsel and/or Delaware counsel for such Consenting First Lien Noteholder;

      (d)    <u>Payment of Fees and Expenses</u>.  The payment of the fees, expenses and disbursements set forth in paragraphs 13(c) and 14(c) of this Interim Order (to the extent incurred after the Petition Date) shall be made within ten (10) days (which time period may be extended by the applicable professional) after the receipt by the Debtors, the Creditors' Committee (if one is appointed) and the U.S. Trustee (the "**Review Period**") of invoices therefor

(the "**Invoiced Fees**") and without the necessity of filing formal fee applications. The invoices

for such Invoiced Fees shall include the number of hours billed by professional (except for

financial advisors compensated on other than an hourly basis) and a summary description of

services provided and the expenses incurred; *provided, however*, that any such invoice: (i) may

be redacted to protect privileged, confidential or proprietary information and (ii) shall not be

required to contain individual time detail. The Debtors, the Creditors' Committee (if one is

appointed) and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed**

**Invoiced Fees**") within the Review Period by filing with the Court a motion or other pleading,

on at least ten (10) days' prior written notice to the First Lien Notes Trustee and the First Lien

Noteholders of any hearing on such motion or other pleading, setting forth the specific

objections; *provided* that payment of the undisputed portion of the Invoiced Fees shall not be

delayed based on any objections thereto;

      (e)    Access to Records. In addition to, and without limiting, whatever rights to

access the First Lien Notes Secured Parties have under the respective First Lien Notes

Agreements, upon reasonable notice, at reasonable times during normal business hours, the

Debtors shall permit representatives, agents, and employees of the First Lien Notes Secured

Parties (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors'

books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the

Debtors' officers and financial advisors;

      (f)    Monthly Cash Payments to First Lien Notes Secured Parties. In

connection with the First Lien Notes Agreement, the First Lien Noteholders shall receive from

the Debtors (i) immediate cash payment in an amount equal to all accrued and unpaid interest at

the non-default rates provided for in the First Lien Notes Agreements and all other accrued and

unpaid fees and disbursements owing to the First Lien Notes Secured Parties under the First Lien Notes Agreements and incurred prior to the Petition Date and (ii) on the first business day of each month, cash payment in an amount equal to interest and other fees at the non-default contract rate applicable on the Petition Date under the First Lien Notes Documents; *provided* that the First Lien Notes Secured Parties, solely to the extent consistent with the Restructuring Support Agreement, reserve the right to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the First Lien Notes Agreements; *provided, further*, that if, in accordance with applicable law, the Court allows any claim by the First Lien Notes Secured Parties for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the First Lien Notes Agreements, such claim shall constitute an administrative expense and shall be paid in full in cash upon the effective date of any confirmed chapter 11 plan with respect to any Debtor.  If and only if the Bankruptcy Court determines, by final non-appealable order, that the First Lien Noteholders were undersecured as of the Petition Date under section 506(b) of the Bankruptcy Code then the Debtors (or the Creditors' Committee, if one is appointed) may assert that any payments of interest made pursuant to this Interim Order or the Final Order in respect of the First Lien Notes Agreements constitute and may be recharacterized as principal repayments on account of the First Lien Notes Agreements or seek to have such payments disgorged solely to the extent such payments exceed the allowed principal amount of such secured claim.  All defenses to any effort to recharacterize or disgorge such payments are expressly reserved.

(g)     Protection of Collateral Interests in Cash and Non-Cash Collateral.  The Debtors shall comply with the covenants contained the First Lien Notes Agreements regarding

the maintenance and insurance of the Prepetition Collateral. Further, the First Lien Notes Secured Parties are entitled to performance of those certain covenants set forth in sections 8.02 and 8.11 of the DIP Credit Agreement; *provided* that the Loan Parties' obligations to the First Lien Notes Secured Parties under such sections shall continue in effect, irrespective of whether the DIP Credit Agreement is in effect, until the discharge in full of all First Lien Notes Debt and the Prepetition First Priority Adequate Protection Obligations.

      (h)    <u>Reporting Obligations to First Lien Notes Secured Parties</u>. The First Lien Notes Secured Parties are entitled to receive all financial reporting and other reports and notice delivered by the Loan Parties to the DIP Agent or any DIP Lender in connection with the DIP Facilities; *provided* that the Loan Parties' reporting obligations to the First Lien Notes Secured Parties shall continue in effect, irrespective of whether the DIP Credit Agreement is in effect, until the discharge in full of all First Lien Notes Debt and the Prepetition First Priority Adequate Protection Obligations; and

      (i)    <u>Approved Budget</u>. The Approved Budget shall not be amended or modified in any material respect without the consent of the First Lien Notes Secured Parties. The Debtors shall promptly provide copies of any Approved Budget, if amended or modified, to the U.S. Trustee, counsel for the Creditors' Committee (if one is appointed), and other interested parties upon reasonable request, in each case on a professional eyes' only basis.

      14.    *Adequate Protection of Second Lien Notes Secured Parties.* The Second Lien Notes Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, including Cash Collateral, for and equal in amount to the aggregate diminution in the value of the Second Lien Notes Secured Parties' interests in the Prepetition Collateral, including, without

limitation, any such diminution resulting from the depreciation, sale, lease or use by the Loan

Parties (or other decline in value) of the Prepetition Collateral, the priming of the Second Lien

Notes Secured Parties' security interests and liens in the Second Lien Notes Collateral by the

DIP Agent and the DIP Lenders pursuant to the DIP Documents and this Interim Order, and the

imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code

(the "**Prepetition Second Priority Adequate Protection Claim**" and, together with the

Prepetition First Priority Adequate Protection Claim, the "**Adequate Protection Claims**").  As

adequate protection of the Prepetition Second Priority Adequate Protection Claim, the Second

Lien Notes Secured Parties are hereby granted the following (collectively, the "**Prepetition**

**Second Priority Adequate Protection Obligations**") (it being understood that, subject to and

effective upon entry of the Final Order, the Prepetition Second Priority Adequate Protection

Liens shall attach to Avoidance Proceeds):

> (a)    Prepetition Second Lien Notes Secured Parties Adequate Protection Liens.

The Second Lien Notes Trustee (for itself and for the benefit of the Second Lien Noteholders) is

hereby granted (effective and perfected upon the date of this Interim Order and without the

necessity of the execution of any mortgages, security agreements, pledge agreements, financing

statements or other agreements), in the amount of the Prepetition Second Priority Adequate

Protection Claim, a valid, perfected replacement security interest in and lien upon all of the

Collateral (including, without limitation, subject to entry of the Final Order, Avoidance

Proceeds), subject and subordinate only to (i) the DIP Liens and any liens to which the DIP Liens

are junior and (ii) the Carve-Out (the "**Prepetition Second Priority Adequate Protection**

**Liens**" and, together with the Prepetition First Priority Adequate Protection Liens, the

"**Adequate Protection Liens**") (it being understood that, subject to and effective upon entry of

the Final Order, Prepetition First Priority Adequate Protection Liens and the Prepetition Second Priority Adequate Protection Liens shall attach to Avoidance Proceeds in accordance with the Intercreditor Agreement);

(b)    Second Lien Notes Secured Parties Section 507(b) Claim.  The Second Lien Notes Secured Parties are hereby granted, subject to the Carve-Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Agent and the DIP Lenders (the "**Prepetition Second Priority 507(b) Claim**" and, together with the Prepetition First Priority 507(b) Claim, the "**507(b) Claims**"), which Prepetition Second Priority 507(b) Claim shall have recourse to and be payable from all of the Collateral including, without limitation, subject to entry of the Final Order, the Avoidance Proceeds; *provided, however*, that the Second Lien Notes Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition Second Priority 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all Commitments (as defined in the DIP Credit Agreement) have been terminated and the Prepetition First Priority 507(b) Claim have indefeasibly been paid in cash in full;

(c)    Second Lien Notes Secured Parties Fees and Expenses.

(i)    The Second Lien Notes Trustee shall receive from the Loan Parties current cash payments of the reasonable and documented prepetition and postpetition fees and disbursements of one counsel and one local counsel for the Second Lien Notes Trustee promptly

upon receipt of invoices therefor, which payments shall be made in the manner provided for in paragraph 13(d) above; and

        (ii)     The Consenting Second Lien Noteholders shall receive from the Loan Parties current cash payments of the reasonable and documented prepetition and postpetition fees and disbursements of their counsel, financial and other advisors promptly upon receipt of invoices therefor, which payments shall be made in the manner provided for in paragraph 13(d) above, including without limitation the fees and disbursements of (x) Davis Polk & Wardwell LLP as counsel, Landis Rath & Cobb LLP as Delaware counsel and FTI Consulting, as financial advisor to the Consenting Second Lien Noteholders and (y) if any Consenting Second Lien Noteholder ceases to engage Davis Polk & Wardwell LLP and/or Landis Rath & Cobb LLP as counsel and Delaware counsel, respectively, one separate counsel and/or Delaware counsel for such Consenting Second Lien Noteholder; *provided* that the fees, expenses and disbursements set forth in this Paragraph 14(c) shall not be duplicative of any fees, expenses and disbursements payable to such counsel and financial advisors acting in such capacities for the Consenting First Lien Noteholders;

        (d)     <u>Access to Records</u>. In addition to, and without limiting, whatever rights to access the Second Lien Notes Secured Parties have under the respective Second Lien Notes Agreements, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Second Lien Notes Secured Parties (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and financial advisors;

(e)    <u>Protection of Collateral Interests in Cash and Non-Cash Collateral</u>.  The Debtors shall comply with the covenants contained the Second Lien Notes Agreements regarding the maintenance and insurance of the Prepetition Collateral.  Further, the Second Lien Notes Secured Parties are entitled to performance of those certain covenants set forth in sections 8.02 and 8.11 of the DIP Credit Agreement; *provided* that the Loan Parties' obligations to the Second Lien Notes Secured Parties under such sections shall continue in effect, irrespective of whether the DIP Credit Agreement is in effect, until the discharge in full of all Second Lien Notes Debt and the Prepetition Second Priority Adequate Protection Obligations;

(f)    <u>Reporting Obligations to Second Lien Notes Secured Parties</u>. The Second Lien Notes Secured Parties are entitled to receive all financial reporting and other reports and notice delivered by the Loan Parties to the DIP Agent or any DIP Lender in connection with the DIP Facilities; *provided* that the Loan Parties' reporting obligations to the Second Lien Notes Secured Parties shall continue in effect, irrespective of whether the DIP Credit Agreement is in effect, until the discharge in full of all Second Lien Notes Debt and the Prepetition Second Priority Adequate Protection Obligations; and

(g)    <u>Approved Budget</u>.  The Approved Budget shall not be amended or modified in any material respect without the consent of the Second Lien Notes Secured Parties. The Debtors shall promptly provide copies of any Approved Budget, if amended or modified, to the U.S. Trustee, counsel for the Creditors' Committee (if one is appointed), and other interested parties upon reasonable request, in each case on a professional eyes' only basis.

15.    *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the Prepetition Secured Parties have consented to the adequate protection provisions set forth in this Interim Order and that the above-described adequate protection is

consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties may request further or different adequate protection, and the Debtors or any other party may, consistent with the terms of the Intercreditor Agreement, contest any such request.

      16.    *Perfection of DIP Liens and Adequate Protection Liens.*

      (a)    The DIP Agent, the DIP Lenders and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder; *provided* that, absent the consent of the Debtors, the DIP Agent will not file mortgages or other recordings requiring documentary or stamp taxes, fees or charges. Whether or not the DIP Agent, on behalf of the DIP Lenders or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Interim Order.  Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of

the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens. All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)    A certified copy of this Interim Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of this Interim Order for filing and/or recording, as applicable. The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

17.    *Real Property Leases.*

(a)    DIP Lenders Rights with Respect to Proposed Rejections of Real Property Leases. Unless all DIP Obligations shall have indefeasibly been satisfied in full in cash, the Debtors shall not seek, and it shall constitute an Event of Default and terminate the right of the Debtors to use Cash Collateral if any of the Debtors seeks, pursuant to section 365 of the Bankruptcy Code, to reject or otherwise terminate (including, without limitation, as a result of the expiration of the assumption period provided for in section 365(d)(4) of the Bankruptcy Code to the extent applicable, the last day of such period being the "**Automatic Rejection Date**") a Real Property Lease (as defined in the DIP Credit Agreement) without first providing 30 days' prior written notice to the DIP Agent (unless such notice provision is waived by the DIP Agent (in its sole discretion)) during which time the DIP Agent shall be permitted to find an acceptable (in the DIP Agent's good faith and reasonable discretion) replacement lessee (which may include

the DIP Agent or its affiliates) to whom such lease may be assigned. If a prospective assignee is not found within such 30-day notice period, the Debtors may proceed to reject such lease. If such a prospective assignee is timely found, the Debtors shall (i) not seek to reject such lease, (ii) promptly withdraw any previously filed rejection motion, (iii) promptly file a motion seeking expedited relief and a hearing on the earliest court date available for purposes of assuming such lease and assigning it to such prospective assignee and (iv) cure any defaults that have occurred and are continuing under such lease unless the Borrower and the DIP Agent agree that any such cure obligation is overly burdensome on the cash position of the Debtors with such agreement not to be unreasonably withheld; *provided* that this Paragraph 17(a) shall not apply to Real Property Leases that are rejected on the effective date of an Acceptable Plan of Reorganization (as defined in the DIP Credit Agreement). For the avoidance of doubt, it is understood and agreed that on or prior to the 30th day prior to the Automatic Rejection Date (as defined in the DIP Credit Agreement), the Debtors shall have delivered (and hereby agree to deliver) written notice to the DIP Agent of each outstanding Real Property Lease that they intend to reject (including, without limitation, through automatic rejection on the Automatic Rejection Date (as defined in the DIP Credit Agreement), to the extent applicable) from and after the date of such notice (or, if applicable, notice that the Debtors will seek to extend the Automatic Rejection Date as provided in section 365(d)(4) of the Bankruptcy Code); *provided* that if the Debtors fail to deliver any such notice to the DIP Agent prior to such date with respect to any such Real Property Lease (or a notice indicating that no such Real Property Leases shall be rejected), the Debtors shall be deemed, for all purposes hereunder, to have delivered notice to the DIP Agent as of such date that they intend to reject all outstanding Real Property Leases.

(b)    Consenting First Lien Noteholders Rights with Respect to Proposed

Rejections of Real Property Leases. Following the indefeasible satisfaction and discharge in full

of all DIP Obligations and the termination of the Commitments under the DIP Documents, and

unless all Obligations (as defined in the First Lien Notes Agreements) shall have indefeasibly

been satisfied in full in cash, the Debtors shall not seek, and it shall constitute an Event of

Default and terminate the right of the Debtors to use Cash Collateral if any of the Debtors seeks,

pursuant to section 365 of the Bankruptcy Code, to reject or otherwise terminate (including,

without limitation, as a result of the expiration of the assumption period provided for in section

365(d)(4) of the Bankruptcy Code to the extent applicable, the last day of such period being the

"**Automatic Rejection Date**") a Real Property Lease without first providing 30 days' prior

written notice to the Consenting First Lien Noteholders (unless such notice provision is waived

by the Requisite Majority Consenting First Lien Noteholders (in their sole discretion)), during

which time the Requisite Majority Consenting First Lien Noteholders shall be permitted to find

an acceptable (in the Requisite Majority Consenting First Lien Noteholders' good faith and

reasonable discretion) replacement lessee (which may include the Consenting First Lien

Noteholders or any of their affiliates) to whom such lease may be assigned. If a prospective

assignee is not found within such 30-day notice period, the Debtors may proceed to reject such

lease. If such a prospective assignee is timely found, the Debtors shall (i) not seek to reject such

lease, (ii) promptly withdraw any previously filed rejection motion, (iii) promptly file a motion

seeking expedited relief and a hearing on the earliest court date available for purposes of

assuming such lease and assigning it to such prospective assignee and (iv) cure any defaults that

have occurred and are continuing under such lease unless the Borrower and the Requisite

Majority First Lien Noteholders agree that any such cure obligation is overly burdensome on the

cash position of the Debtors with such agreement not to be unreasonably withheld; *provided* that this Paragraph 17(b) shall not apply to Real Property Leases that are rejected on the effective date of a Plan (as defined in the Restructuring Support Agreement).  For the avoidance of doubt, it is understood and agreed that on or prior to the 30th day prior to the Automatic Rejection Date (as defined in the DIP Credit Agreement), the Debtors shall have delivered (and hereby agree to deliver) written notice to the Consenting First Lien Noteholders of each outstanding Real Property Lease that they intend to reject (including, without limitation, through automatic rejection on the Automatic Rejection Date (as defined in the DIP Credit Agreement), to the extent applicable) from and after the date of such notice (or, if applicable, notice that the Debtors will seek to extend the Automatic Rejection Date as provided in section 365(d)(4) of the Bankruptcy Code); *provided* that if the Debtors fail to deliver any such notice to the Consenting First Lien Noteholders prior to such date with respect to any such Real Property Lease (or a notice indicating that no such Real Property Leases shall be rejected), the Debtors shall be deemed, for all purposes hereunder, to have delivered notice to the Consenting First Lien Noteholders as of such date that they intend to reject all outstanding Real Property Leases; *provided, further*, that if the Debtors previously delivered any  notice described in this Paragraph 17(b) to the DIP Agent pursuant to Paragraph 17(a) hereof, the Debtors shall be deemed, for all purposes hereunder, to have delivered such notice to the Consenting First Lien Noteholders as of the date such notice was delivered to the DIP Agent.

(c)    Assumption Orders.  Any order of this Court approving the assumption of any Real Property Lease shall specifically provide that the applicable Debtor shall be authorized to assign such Real Property Lease pursuant to, and to enjoy the protections of, section 365(f) of the Bankruptcy Code subsequent to the date of such assumption.

18.     *Preservation of Rights Granted Under This Interim Order.*

(a)     Other than the Carve-Out and other claims and liens expressly granted by this Interim Order, no claim or lien having a priority superior to or *pari passu* with those granted by this Interim Order to the DIP Agent and the DIP Lenders or the Prepetition Secured Parties, respectively, shall be granted or allowed while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in paragraphs 8, 13(a) or 14(a) of this Interim Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Loan Parties' estates under section 551 of the Bankruptcy Code; (ii) subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties; and (iv) subject or junior to any intercompany or affiliate liens or security interests of the Loan Parties.

(b)     It shall constitute an "**Event of Default**" if:

(i)     any of the Loan Parties, without the prior written consent of the Required Lenders (as defined in the DIP Credit Agreement), the Required Consenting First Lien Noteholders (as defined in the Restructuring Support Agreement) and the Required Consenting Second Lien Noteholders (as defined in the Restructuring Support Agreement) seeks, proposes or supports, or if there is entered or confirmed (in each case, as applicable): (A) any modifications, amendments or extensions of this Interim Order, and no such consent shall be

implied by any other action, inaction or acquiescence by any party; (B) an order converting or dismissing any of the Cases; (C) an order appointing a chapter 11 trustee in the Cases; (D) an order appointing an examiner with enlarged powers in the Cases (beyond those set forth in sections 1106(a)(3) and (4) of the Bankruptcy Code; (E) a plan of reorganization other than an Acceptable Plan of Reorganization (as defined in the Restructuring Support Agreement); (F) the sale of all or substantially all of the assets of the Loan Parties; (G) an order granting relief from the automatic stay to the holder or holders of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any of the Debtors' assets which have an aggregate value in excess of $1,000,000; or (H) an order creating any postpetition liens or security interests other that those granted or permitted pursuant hereto or the DIP Documents;

(ii)     the Restructuring Support Agreement terminates in accordance with its terms;

(iii)     the Debtors have failed to comply with the Approved Budget (including any variances) or any other material terms hereof and the Debtors have received notice of such failure from the DIP Agent, the DIP Lenders, the Consenting First Lien Noteholders  or the Consenting Second Lien Noteholders (which notice the Debtors shall promptly provide to the U.S. Trustee and counsel for the Creditors' Committee (if one is appointed));

(iv)     the Debtors lose the exclusive right to file and solicit acceptances of a plan of reorganization; or

(v)     the Debtors shall withdraw or revoke the Acceptable Plan of Reorganization, or file, propound or otherwise support any plan of reorganization other than an

Acceptable Plan of Reorganization (as it may be amended in accordance with the Restructuring Support Agreement).

(c)     Notwithstanding any order that may be entered dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered: (i) the DIP Superpriority Claims, the 507(b) Claims, the DIP Liens and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full in cash (and that such DIP Superpriority Claims, 507(b) Claims, DIP Liens, and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Interim Order shall not be affected; and (iii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Interim Order.

(d)     If any or all of the provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacation or stay shall not affect: (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agent, the First Lien Notes Trustee or the Second Lien Notes Trustee, as applicable, of the effective date of such reversal, modification, vacation or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacation or stay of any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Loan Parties to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, as the case may be, prior to the actual receipt of written notice by the DIP Agent, the

First Lien Notes Trustee or the Second Lien Notes Trustee, as applicable, of the effective date of such reversal, modification, vacation or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Interim Order and the DIP Documents.

(e)    Except as expressly provided in this Interim Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Interim Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties granted by the provisions of this Interim Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are

indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

(f)     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the Consenting First Lien Noteholders and Consenting Second Lien Noteholders to send any notices required or permitted to be sent under this Interim Order or the Restructuring Support Agreement.

19.     *Effect of Stipulations on Third Parties*.  The stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon the Debtors and any successor thereto (including, without limitation, any chapter 7 (except as set forth below), chapter 11 trustee or examiner appointed or elected for any of the Debtors) in all circumstances.  The stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, in paragraph 4 of this Interim Order, shall be binding upon all other parties in interest, including, without limitation, any Creditors' Committee and any other person or entity acting or seeking to act on behalf of the Debtors' estates, in all circumstances for all purposes, unless (A) such party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court , has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 19) by the earlier of (i) the date that is the later of (x) 75 days after entry of this Interim Order, (y) 60 days after the appointment of the Creditors' Committee, if any, and (z) 20 days after the appointment of a chapter 7 or chapter 11 trustee, if any is appointed before the expiration of the time periods set forth in clauses (x) and (y) and (ii) such later date (x) as has been agreed to, in writing, by the applicable Prepetition Secured Party that would be a

defendant in its sole discretion or (y) as has been ordered by the Court upon a motion filed and served within any applicable period of time set forth in this paragraph (the "**Challenge Period**"), (i) challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Secured Parties' liens on the Prepetition Collateral or (ii) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, "**Challenge Proceedings**") against any of the Prepetition Secured Parties or (x) their respective predecessors, successors and assigns, affiliates, subsidiaries, funds, portfolio companies, management companies, and (y) with respect to each of the foregoing entities in clause (x), each of their respective current and former directors, officers, members, employees, partners, managers, independent contractors, agents, representatives, principals, Professionals, consultants, financial advisors, attorneys, accountants, investment bankers, and other professional advisors (with respect to clause (y), each solely in their capacity as such) (each entity listed in clauses (x) and (y) a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Existing Agreements, the Prepetition Secured Debt, and the Prepetition Collateral, and (B) there is a final non-appealable order in favor of the plaintiff in any such Challenge Proceeding; *provided* that any pleadings filed in any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court  does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those

contained in paragraph 4 of this Interim Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee; (b) the obligations of the Loan Parties under the Existing Agreements, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in these Cases, and any subsequent chapter 7 case(s); (c) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to recharacterization, subordination, avoidance or other defense; and (d) the Prepetition Secured Debt and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in these Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in these Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to the Existing Agreements shall be deemed forever waived, released and barred.  If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in this Interim Order, including, without limitation, those contained in paragraph 4 of this Interim Order, shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in this Interim Order vests or confers on any Person (as defined in the

Bankruptcy Code), including the Creditors' Committee or any non-statutory committees appointed or formed in these Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Existing Agreements, the Prepetition Debt or the Prepetition Liens.  For the avoidance of doubt and notwithstanding anything to the contrary in this Paragraph 19, if any of the Debtors' cases is converted to chapter 7 prior to expiration of the Challenge Period described in this Paragraph 19, the Challenge Period shall not expire (solely with respect to the chapter 7 trustee) until the latest to occur of (a) 20 days after the trustee's appointment or election, (b) 75 days after entry of this Interim Order, and (c) 60 days after the appointment of the Creditors' Committee.  If the Creditors' Committee or any other party in interest has commenced any Challenge Proceedings prior to the conversion to chapter 7, the chapter 7 trustee shall be entitled to assume the prosecution of any such pending Challenge Proceedings (subject in all cases to the limitations in paragraphs 19 and 20 applicable to other parties in interest).

20.    *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding anything herein or in any other order by this Court to the contrary, no DIP Loans, Cash Collateral, Collateral, Prepetition Collateral, proceeds of any of the foregoing or the Carve-Out may be used: (a) for professional fees and expenses incurred for (i) any litigation or threatened litigation (whether by contested matter, adversary proceeding or otherwise, including any investigation in connection with litigation or threatened litigation) against any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties or for the purpose of objecting to or challenging the validity, perfection, enforceability, extent or priority of any claim, lien or security interest held or asserted by any of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties or (ii) asserting any defense, claim, cause of action, counterclaim, or offset with

respect to the DIP Obligations, the Prepetition Secured Debt (including, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise), the DIP Liens or the Prepetition Liens against any of the Prepetition Secured Parties or their respective Representatives; (b) to prevent, hinder or otherwise delay any of the DIP Agent's, the DIP Lenders' or the Prepetition Secured Parties' assertion, enforcement or realization on the Prepetition Collateral or the Collateral in accordance with the DIP Documents, the Existing Agreements or this Interim Order other than to seek a determination that an Event of Default has not occurred or is not continuing; (c) to seek to modify any of the rights granted to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties under this Interim Order or under the DIP Documents or the Prepetition Loan Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion, subject to any applicable terms of the Intercreditor Agreement, if any; or (d) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including, without limitation, hereunder) and (ii) permitted under the DIP Documents; *provided* that notwithstanding anything to the contrary herein, no more than an aggregate of $50,000 of the DIP Loans under the DIP Credit Agreement, Collateral, Prepetition Collateral (including Cash Collateral) may be used by the Creditors' Committee during the Challenge Period to investigate the claims and liens of the Prepetition Secured Parties (the "**Committee Investigation Budget**").

21. *Exculpation.* Nothing in this Interim Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent or any DIP Lender of any liability for any claims

arising from the prepetition or postpetition activities of the Debtors in the operation of their business, or in connection with their restructuring efforts. So long as the DIP Agent and the DIP Lenders comply with their obligations under the DIP Documents and their obligations, if any, under applicable law (including the Bankruptcy Code), (a) the DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the Loan Parties.

22. *Order Governs.* In the event of any inconsistency between the provisions of this Interim Order and the DIP Documents, the provisions of this Interim Order shall govern.

23. *Binding Effect; Successors and Assigns.* The DIP Documents and the provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee, any non-statutory committees appointed or formed in these Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that, other than the Carve Out, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash

Collateral) or to extend any financing to any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors).

24.    *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Interim Order or the DIP Documents, the DIP Agent and the DIP Lenders shall not by reason thereof (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

25.    *Master Proof of Claim.*  In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce an unnecessary expense to the Debtors' estates, each of the First Lien Notes Trustee and the Second Lien Notes Trustee, respectively, is authorized to file in the Debtors' lead chapter 11 case *In re Venoco, Inc., et al.,* Case No. 16-10655 (KG), a single, master proof of claim on behalf of the First Lien Notes Secured Parties and the Second Lien Notes Secured Parties, as applicable, on account of any and all of their respective claims arising under the applicable Existing Agreements and hereunder (each, a **"Master Proof of Claim"**) against each of the Debtors.  Upon the filing of a Master Proof of Claim against each of the Debtors, the (i)  First Lien Notes Trustee and First Lien Notes Secured Parties and (ii) Second Lien Notes Trustee and Second Lien Notes Secured Parties, as applicable, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount

set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever with respect to the applicable Existing Agreements, and the claim of each Prepetition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of these Cases. The Master Proofs of Claim shall not be required to identify whether any Prepetition Secured Party acquired its claim from another party and the identity of any such party or be amended to reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from the transfer of all or any portion of such claims; *provided, however*, that distributions to Prepetition Secured Parties may be subject to applicable distribution bar dates or other procedures approved by the Court in the Cases. The provisions of this paragraph 25 and each Master Proof of Claim are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan proposed in these Cases. The Master Proofs of Claim shall not be required to attach any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to the First Lien Notes Trustee and the Second Lien Notes Trustee.

26.    *Insurance*. To the extent that any of the First Lien Notes Trustee or Second Lien Notes Trustee is listed as loss payee under the Borrower's or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, first, to the payment in full of the DIP Obligations (other than contingent

indemnification obligations as to which no claim has been asserted), and second, to the payment of the Prepetition Secured Debt.

27.     *Effectiveness*.  This Interim Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable nunc pro tunc to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Interim Order.

28.     *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Interim Order.

29.     *Payments Held in Trust*.  Except as expressly permitted in this Interim Order or the DIP Documents, in the event that any person or entity receives any payment on account of a security interest in Collateral, receives any Collateral or any proceeds of Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Interim Order.

30.     *Credit Bidding*.

(a)    The DIP Agent shall, acting at the direction of the DIP Lenders (as defined in the DIP Credit Agreement), have the right to credit bid up to the full amount of the DIP Obligations in any sale of the Collateral as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(b)    Subject to entry of the Final Order and (i) the prior indefeasible satisfaction and discharge in full of all DIP Obligations and the termination of the Commitments thereunder (including upon consummation of the applicable sale) or (ii) the consent of the DIP Lenders, the full amount of the First Lien Notes Debt then outstanding may be used to "credit bid" for the assets and property of the Debtors (to the extent such assets are First Lien Notes Collateral or secured by First Priority Adequate Protection Liens (but with respect thereto, solely to the extent of the value of the First Priority Adequate Protection Liens)) as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

(c)    Subject to entry of the Final Order and (i) the prior indefeasible satisfaction and discharge in full of all DIP Obligations and the termination of the Commitments thereunder and subject to the terms of the Intercreditor Agreement and discharge in full of all First Lien Notes Debt and Prepetition First Priority Adequate Protection Obligations (including upon consummation of the applicable sale) or (ii) the consent of the DIP Lenders (to the extent that the DIP Obligations or the Commitments thereunder remain outstanding) and the consent of the Consenting First Lien Noteholders (to the extent that the First Lien Notes Debt or the

Prepetition First Priority Adequate Protection Obligations remain outstanding), the full amount of the Second Lien Notes Debt then outstanding may be used to "credit bid" for the assets and property of the Debtors (to the extent such assets are Second Lien Notes Collateral or secured by Second Priority Adequate Protection Liens (but with respect thereto, solely to the extent of the value of the Second Priority Adequate Protection Liens)) as provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same and whether such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise.

31.     *Bankruptcy Rules.*  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

32.     *Necessary Action.*  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Interim Order.

33.     *Retention of Jurisdiction.*  The Court shall retain jurisdiction to enforce the provisions of this Interim Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

34.     *Final Hearing.*  The Final Hearing is scheduled for *Apr 21* 2016 at *10:00* *a*.m. before this Court.

35.     *Objections.*  Any objections or responses to entry of the proposed Final Order shall be filed by **4:00 p.m. (ET) on the date that is seven days before** the Final Hearing and, shall be served on the following parties: (a) the Debtors, c/o Venoco, Inc., 370 17th Street, Suite 3900, Denver, CO 80202-1370; (b) proposed counsel for the Debtors, Bracewell LLP, 1251

Avenue of the Americas, 49th Floor, New York, NY 10020, Attn: Robert G. Burns, Robin J. Miles and Rebekah T. Scherr; and CityPlace I, 34th Floor, 185 Asylum Street, Hartford, Connecticut 06103, Attn: Mark E. Dendinger; (c) proposed co-counsel for the Debtors, Morris, Nichols, Arsht & Tunnel LLP, 1201 North Market Street, 16th Floor, P.O. Box 1347, Wilmington, DE 19899, Attn: Robert J. Dehney, Andrew R. Remming and Erin R. Fay; (d) counsel to any statutory committee appointed in these chapter 11 cases; (e) the office of the U.S. Trustee for the District of Delaware, Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Mark Kenney; (f) the Indenture Trustee for the First Lien Secured Notes and Second Lien Secured Notes, U.S. Bank National Association, 950 17th Street, 12th Floor Denver, CO 80202, Attn.: Global Corporate Trust Services, and counsel to the Indenture Trustee for the First Lien Secured Notes and Second Lien Secured Notes, Dorsey & Whitney LLP, 600 Anton Boulevard, Suite 2000 Costa Mesa, CA 92626-7655, Attn.: Dennis Wong; (g) the Indenture Trustee for the Venoco 8.875% Senior Notes, Wilmington Savings Fund Society, FSB, 500 Delaware Avenue Wilmington, DE 19801, Attn.: Patrick J. Healy; (h) the Indenture Trustee for the Senior PIK Toggle Notes, U.S. Bank National Association, 950 17th Street, 12th Floor Denver, CO 80202, Attn.: Global Corporate Trust Services; and (i) counsel to (1) the DIP Lenders and (2) the Consenting First Lien Noteholders and the Consenting Second Lien Noteholders, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, New York 10017, Attn: Damian S. Schaible and Darren S. Klein and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801, Attn: Adam Landis, and (j) any other party that has filed a request for notices with this Court.

36.    The Debtors shall promptly serve copies of this Interim Order (which shall constitute adequate notice of the Final Hearing, including, without limitation, notice that the

Debtors will seek approval at the Final Hearing of a waiver of rights under sections 506(c) and 552(b) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, to any party that has filed a request for notices with this Court and to the Creditors' Committee after the same has been appointed, or such Creditors' Committee's counsel, if the same shall have been appointed.

Dated:    March 21, 2016
           Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE