## Exhibit C

**New Warrant Agreements**

**SERIES A WARRANT AGREEMENT**

**dated as of [●], 2016**

**between**

**VENOCO, LLC**

**and**

**the HOLDERS**
**from time to time parties hereto**

#5204861.2

TABLE OF CONTENTS

Page

Article 1     Definitions ..............................................................................................2
    Section 1.01   Certain Definitions ...........................................................2

Article 2     Issuance, Registration and Transfer of Series A Warrants.................7
    Section 2.01   Issuance of Series A Warrants ..........................................7
    Section 2.02   Book-Entry Form; Registration........................................7
    Section 2.03   Transfers of Series A Warrants ........................................8

Article 3     Exercise and Settlement of Series A Warrants..................................9
    Section 3.01   Exercise of Series A Warrants ..........................................9
    Section 3.02   Procedure for Exercise...................................................10
    Section 3.03   Settlement of Warrants ...................................................10
    Section 3.04   Delivery of Units ...........................................................11
    Section 3.05   No Fractional Units to Be Issued ...................................11
    Section 3.06   Validity of Exercise; Calculations.................................11
    Section 3.07   Automatic Exercise or Cancelation of Series A Warrants in Connection with Drag Transaction; Sale of Units in Drag Transaction...................................................................12
    Section 3.08   Acquisition of Warrants by Company .............................12

Article 4     Adjustments .....................................................................................12
    Section 4.01   Adjustments to Exercise Price .......................................12
    Section 4.02   Adjustments to Number of Series A Warrants................16
    Section 4.03   Certain Distributions of Rights and Warrants................16
    Section 4.04   Stockholder Rights Plans ...............................................17
    Section 4.05   Restrictions on Adjustments .........................................17
    Section 4.06   Successor upon Consolidation, Merger and Sale of Assets.....................18
    Section 4.07   Adjustment upon Reorganization Event .........................19
    Section 4.08   Calculations...................................................................20
    Section 4.09   Notice of Adjustments ...................................................20

Article 5     Other Provisions Relating to Rights of Holders ..............................20
    Section 5.01   No Rights as Unitholders................................................20
    Section 5.02   No Impairment; Units Reserved for Issuance .................21
    Section 5.03   Modification, Amendments and Waivers ........................21
    Section 5.04   Notice of Certain Events.................................................22
    Section 5.05   Reports to Holders..........................................................22
    Section 5.06   Payment of Certain Taxes...............................................23

Article 6     Miscellaneous ..................................................................................23
    Section 6.01   Notices ...........................................................................23
    Section 6.02   GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL ...............................................24

i

ii

Section 6.03    Benefit of this Warrant Agreement ........................................................25
Section 6.04    Headings ......................................................................................25
Section 6.05    Counterparts ................................................................................25
Section 6.06    Entire Agreement .........................................................................25
Section 6.07    Severability .................................................................................25
Section 6.08    Termination .................................................................................25
Section 6.09    Publicity; Confidentiality..............................................................25
Section 6.10    Force Majeure ..............................................................................26

SCHEDULE I – INITIAL HOLDERS

EXHIBIT A – FORM OF EXERCISE NOTICE

EXHIBIT B – FORM OF TRANSFER INSTRUCTION

#5204861.2

THE SERIES A WARRANTS ISSUED PURSUANT TO THIS WARRANT AGREEMENT AND THE UNITS ISSUABLE UPON EXERCISE OF SUCH SERIES A WARRANTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SECURITIES LAWS OF ANY STATE OR FOREIGN JURISDICTION AND MAY NOT BE TRANSFERRED OR OTHERWISE DISPOSED OF WITHOUT COMPLIANCE WITH APPLICABLE FEDERAL, STATE AND FOREIGN SECURITIES LAWS.  IN ADDITION, THE TRANSFER OR OTHER DISPOSITION OF SUCH SERIES A WARRANTS IS RESTRICTED AS PROVIDED IN THIS WARRANT AGREEMENT, AND THE TRANSFER OR OTHER DISPOSITION OF THE UNITS ISSUABLE UPON EXERCISE OF SUCH SERIES A WARRANTS IS RESTRICTED AS PROVIDED IN THE AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF VENOCO, LLC.

## SERIES A WARRANT AGREEMENT

THIS SERIES A WARRANT AGREEMENT (as it may be amended from time to time, this "**Warrant Agreement**"), dated as of [●], 2016, is made by and between Venoco, LLC, a Delaware limited liability company (the "**Company**"), and the Holders from time to time parties hereto.  Capitalized terms used and not otherwise defined in this Warrant Agreement have the meanings given to such terms in Section 1.01.

## RECITALS

WHEREAS, the Company is the successor in interest to Venoco, Inc. as the result of the conversion of Venoco, Inc. from a Delaware corporation to a Delaware limited liability company pursuant to the provisions of Section 266 of the General Corporation Law of the State of Delaware and Section 18-214 of the Act; and

WHEREAS, pursuant to the terms and conditions of the prearranged chapter 11 plan of reorganization (as amended, the "**Plan**") filed in the voluntary chapter 11 cases commenced by Venoco, Inc. and certain of its affiliates, the holders of Second Lien Notes Claims (as defined in the Plan) are to be issued Series A Warrants, exercisable until the Expiration Date, to purchase up to an aggregate of [●][1] Units at an exercise price of $[●][2] per Unit (as such exercise price may be adjusted pursuant to Article 4 hereof (the "**Exercise Price**"); and

WHEREAS, the Series A Warrants and the underlying Units are being offered and sold in reliance on the exemption from the registration requirements of the Securities Act and any applicable state securities laws afforded by Section 1145(a) of the Bankruptcy Code.

NOW THEREFORE in consideration of the mutual agreements herein contained, the Company and the Holders agree as follows:

---

[1] To be 10% of the fully diluted number of Units outstanding at the effective date of the Plan, taking into account the Units issuable upon exercise of warrants issued pursuant to the Plan and Units issued or reserved for issuance under the Management Incentive Plan.

[2] To be equal to $195,183,000 divided by the number of Units actually issued on the effective date of the Plan.

#5204861.2

**Article 1**
**Definitions**

Section 1.01    Certain Definitions. As used in this Warrant Agreement, the following terms shall have their respective meanings set forth below:

"**Act**" means the Delaware Limited Liability Company Act, as amended from time to time.

"**Action**" means any controversy, claim, action, litigation, arbitration, mediation or any other proceeding by or before any Governmental Authority, arbitrator, mediator or other Person acting in a dispute resolution capacity, or any investigation, subpoena or demand preliminary to any of the foregoing.

"**Asset Sale**" has the meaning set forth in Section 4.06(c).

"**Bankruptcy Code**" means chapter 11 of title 11 of the United States Code, as amended from time to time.

"**Board**" means the board of directors of the Company or any committee of such board duly authorized to exercise the power of the board of directors with respect to the matters provided for in this Warrant Agreement as to which the board of directors is authorized or required to act.

"**Business Day**" means any day other than (a) a Saturday or Sunday or (b) any day on which banking institutions in the State of New York or the State of Colorado are authorized or obligated by Law, regulation or executive order to close.

"**Buyer**" has the meaning set forth in Section 4.06(c).

"**Cash**" means such coin or currency of the United States as at any time of payment is legal tender for the payment of public and private debts.

"**Close of Business**" means 5:00 p.m., New York City time.

"**Closing Date**" means the effective date of the Plan.

"**Company**" has the meaning set forth in the introductory paragraph of this Warrant Agreement.

"**Convertible Securities**" means options, rights, warrants or other securities convertible into or exchangeable or exercisable for Units (including the Series A Warrants).

"**Drag Transaction**" has the meaning set forth in the LLC Agreement.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

"**Exchange Act**" means the Securities Exchange Act of 1934, as amended from time to

2

#5204861.2

time, and the related rules and regulations promulgated thereunder.

"**Exercise Date**" has the meaning set forth in Section 3.02(b).

"**Ex-Date**" means with respect to a dividend or distribution to holders of Units, the first date on which the Units can be traded without the right to receive such dividend or distribution.

"**Exercise Notice**" means, for any Series A Warrant, an exercise notice substantially in the form set forth as Exhibit A hereto.

"**Exercise Price**" has the meaning set forth in the Recitals of this Warrant Agreement.

"**Expiration Date**" means the Close of Business on [●], 2021.[3]

"**Fair Value**," as of a specified date, means the price per Unit, other Securities or other distributed property determined as follows (except as provided in Section 3.07):

(a)    in the case of Units or other Securities listed on the New York Stock Exchange or the NASDAQ Stock Market, the VWAP of a Unit or a single unit of such other Security for the 20 Trading Days ending on, but excluding, the specified date (or if the Units or other Securities have been listed for less than 20 Trading Days, the VWAP for such lesser period of time);

(b)    in the case of Units or other Securities not listed on the New York Stock Exchange or the NASDAQ Stock Market, the VWAP of a Unit or a single unit of such other Security in composite trading for the principal U.S. national or regional securities exchange on which such Securities are then listed for the 20 Trading Days ending on, but excluding, the specified date (or if the Units or other Securities have been listed for less than 20 Trading Days, the VWAP for such lesser period of time); or

(c)    in all other cases, the fair value per Unit, single unit of other Securities or other distributed property as of a date not earlier than 10 Business Days preceding the specified date as determined in good faith by the Board and, if the Board elects to engage the same, upon the advice of an independent investment banking, financial advisory or valuation firm or appraiser selected by the Board (a "**Representative**");

*provided, however*, that notwithstanding the foregoing, if the Board determines in good faith that the application of clause (a) or (b) of this definition would result in a VWAP based on the trading prices of a thinly-traded Security such that the price resulting therefrom may not represent an accurate measurement of the fair value of such Security, the Board at its election may apply the provisions of clause (c) of this definition in lieu of the applicable clause (a) or (b) with respect to the determination of the fair value of such Security.

"**Full Physical Settlement**" means the settlement method pursuant to which an exercising Holder shall be entitled to receive from the Company, for each Series A Warrant exercised, a number of Units equal to the Full Physical Share Amount in exchange for payment

_____
[3] To be the fifth anniversary of the Closing Date.

in Cash by the exercising Holder of the Exercise Price.

"**Full Physical Share Amount**" means, for each Series A Warrant exercised as to which Full Physical Settlement is applicable, one Unit.

"**Fundamental Equity Change**" has the meaning set forth in Section 4.06(a).

"**Governmental Authority**" means the government of any nation, state, city, locality or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government (including any self regulatory organization) and any corporation or other entity owned or controlled, through stock or capital ownership or otherwise, by any of the foregoing.

"**Holder**" means, at any time, each Person in whose name Series A Warrants are registered in the Series A Warrant Register and who has become a party to this Warrant Agreement in accordance with Section 2.01(a) or Section 2.03(c), in each case as of such time.

"**Internal Revenue Code**" means the U.S. Internal Revenue Code of 1986, as amended, or any successor statute thereto.

"**Law**" means any federal, state, local, foreign or provincial law, statute, ordinance, rule, regulation, judgment, order, injunction, decree or agency requirement having the force of law or any undertaking to or agreement with any Governmental Authority, including common law.

"**LLC Agreement**" means the Amended and Restated Limited Liability Company Agreement of the Company dated as of the Closing Date, as amended or restated from time to time.

"**Management Incentive Plan**" has the meaning set forth in the Plan.

"**Member**" has the meaning set forth in the LLC Agreement.

"**Net Share Amount**" means for each Series A Warrant exercised as to which Net Share Settlement is applicable, a fraction of a Unit equal to (a) the Fair Value (as of the Exercise Date for such Series A Warrant) of one Unit minus the Exercise Price divided by (b) such Fair Value. The number of Units issuable upon exercise by a Holder, on the same Exercise Date, of Series A Warrants as to which Net Share Settlement is applicable shall be aggregated, with Cash paid in respect of any fractional Unit as provided in Section 3.05.

"**Net Share Settlement**" means the settlement method pursuant to which an exercising Holder shall be entitled to receive from the Company, for each Series A Warrant exercised, a number of Units equal to the Net Share Amount without any payment of Cash therefor.

"**Number of Series A Warrants**" means, as to each Holder at any time, the number of Series A Warrants outstanding and registered in the name of such Holder at such time, subject to adjustment pursuant to Article 4.

"**Offer Expiration Date**" has the meaning set forth in Section 4.01(c).

4

"**Open of Business**" means 9:00 a.m., New York City time.

"**Person**" means an individual, partnership, firm, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"**Plan**" has the meaning set forth in the Recitals of this Warrant Agreement.

"**Record Date**" means, with respect to any dividend, distribution or other transaction or event in which the holders of Units have the right to receive, or in which Units are exchanged for or converted into, any Cash, Securities or other property or any combination of Cash, Securities or other property, the date fixed for determination of holders of Units entitled to receive such Cash, Securities or other property or participate in such exchange or conversion (whether such date is fixed by the Board, by statute, by contract or otherwise).

"**Reference Property**" has the meaning set forth in Section 4.07(a).

"**Reorganization Event**" has the meaning set forth in Section 4.07(a).

"**Representative**" has the meaning set forth in clause (c) of the definition of Fair Value.

"**Sale Transaction**" has the meaning set forth in the LLC Agreement.

"**SEC**" means the U.S. Securities and Exchange Commission, or any other federal agency at the time administering the Securities Act or the Exchange Act, whichever is the relevant statute for the particular purpose.

"**Securities**" means (a) any capital stock (whether common or preferred stock, voting or non-voting), partnership, membership or limited liability company interest or other equity or voting interest, (b) any right, option, warrant or other security or evidence of indebtedness convertible into, or exercisable or exchangeable for, directly or indirectly, any interest described in clause (a), (c) any notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and (d) any other "securities," as such term is defined or determined under the Securities Act.

"**Securities Act**" means the Securities Act of 1933, as amended from time to time, and the related rules and regulations promulgated thereunder.

"**Series A Warrant**" means a warrant of the Company exercisable for a single Unit as provided herein and issued pursuant to this Warrant Agreement with the terms, conditions and rights set forth herein.

"**Series A Warrant Register**" has the meaning set forth in Section 2.02(b).

"**Subsidiary**" means, as to any Person, any corporation, partnership, limited liability company or other organization, whether incorporated or unincorporated, of which at least a majority of the securities or other interests having by their terms voting power to elect a majority of the board of directors or others performing similar functions with respect to such corporation

5

or other organization is directly or indirectly beneficially owned or controlled by such party or by any one or more of its Subsidiaries, or by such party and one or more of its Subsidiaries.

"**Trading Day**" means each day other than a Saturday, a Sunday or any other day on which Securities are not traded on the applicable securities exchange.

"**Transfer**" means, with respect to any Series A Warrant, (a) when used as a verb, to directly or indirectly (whether by act, omission or operation of law), sell, exchange, transfer, hypothecate, negotiate, gift, convey in trust, pledge, assign, encumber, or otherwise dispose of, or by adjudication of a Person as bankrupt, by assignment for the benefit of creditors, by attachment, levy or other seizure by any creditor (whether or not pursuant to judicial process), or by passage or distribution of Series A Warrants under judicial order or legal process, carry out or permit the transfer or other disposition of, all or any portion of such Series A Warrant, or (b) when used as a noun, the act of Transferring such Series A Warrant as provided in clause (a) of this definition.

"**Transferee**" means a Person to whom any Series A Warrant is Transferred in accordance with the terms of this Warrant Agreement.

"**Transfer Instruction**" means, for any Series A Warrant, a transfer instruction substantially in the form set forth as Exhibit B hereto.

"**Trigger Event**" has the meaning set forth in Section 4.03(a).

"**Unit of Reference Property**" has the meaning set forth in Section 4.07(a).

"**Units**" has the meaning set forth in the LLC Agreement and, as used herein, means such Units of the same class and series as the Units issued on the Closing Date pursuant to the Plan.

"**VWAP**" means, for any Trading Day, the price for Securities (including Units) determined by the daily volume weighted average price per unit of such Securities for such Trading Day on the trading market on which such Securities are then listed or quoted, in each case, for the regular trading session (including any extensions thereof, without regard to pre-open or after hours trading outside of such regular trading session) as reported on the New York Stock Exchange or NASDAQ Stock Market, or if such Securities are not listed or quoted on the New York Stock Exchange or NASDAQ Stock Market, as reported by the principal U.S. national or regional securities exchange on which such Securities are then listed or quoted, whichever is applicable, as published by Bloomberg at 4:15 P.M., New York City time (or 15 minutes following the end of any extension of the regular trading session), on such Trading Day, or if such volume weighted average price is unavailable or in manifest error, the price per unit of such Securities using a volume weighted average price method selected by an independent nationally recognized investment bank or other qualified financial institution selected by the Board.

"**Warrant Agreement**" has the meaning set forth in the introductory paragraph of this Warrant Agreement.

6

**Article 2**
**Issuance, Registration and Transfer of Series A Warrants**

Section 2.01   Issuance of Series A Warrants.

(a)      Pursuant to, and by virtue of the effectiveness of, the Plan, on the Closing Date each Person identified as an Initial Holder on Schedule I hereto is deemed (i) to have been issued the Number of Series A Warrants set forth for such Person on Schedule I hereto and (ii) to be a party to this Warrant Agreement in its entirety as the Holder of such Number of Series A Warrants and to be subject to all of the applicable terms and conditions set forth herein, in each case, without any further action by such Person or the Company and whether or not such Person executes this Warrant Agreement.  If any Series A Warrants issuable pursuant to the Plan are undeliverable as contemplated by Section 8.05(a) of the Plan, the Company may choose (x) not to issue such Series A Warrants until such Series A Warrants become deliverable in accordance with Section 8.05(a) of the Plan or (y) if the Company issued such Series A Warrants, to repurchase such Series A Warrants for no consideration and reissue such Series A Warrants at such time as such Series A Warrants become deliverable in accordance with Section 8.05(a) of the Plan.  If such Series A Warrants subsequently become deliverable in accordance with Section 8.05(a) of the Plan, then, at the time such Series A Warrants become deliverable, (i) such unissued or repurchased Series A Warrants shall be deemed to have been issued or reissued (as applicable) to the Person entitled thereto in accordance with Section 8.05(a) of the Plan and (ii) such Person shall be deemed to be a party to this Warrant Agreement in its entirety as the Holder of such Number of Series A Warrants and be subject to all of the applicable terms and conditions set forth herein without any further action by such Person or the Company and whether or not such Person executes this Agreement.  If such Series A Warrants do not subsequently become deliverable in accordance with Section 8.05(a) of the Plan, such Series A Warrants shall not be issued or reissued and the provisions regarding failure to claim undeliverable distributions set forth in Section 8.05(b) of the Plan shall govern.  The Company shall register the Series A Warrants deemed to have been issued or reissued pursuant to this Section 2.01(a) in the name of the Person to whom such Series A Warrants were issued or reissued in the Series A Warrant Register as of the Closing Date or the date of such subsequent issuance or reissuance, as applicable.

(b)      All Series A Warrants issued under this Warrant Agreement shall in all respects be equally and ratably entitled to the benefits hereof, without preference, priority or distinction on account of the actual time of the issuance and registration thereof.  Each Series A Warrant shall be, and shall remain, subject to the provisions of this Warrant Agreement until such time as such Series A Warrant shall have been duly exercised or shall have expired or been canceled in accordance with the terms hereof.

(c)      Any Series A Warrant that is repurchased or otherwise acquired by the Company shall be deemed to be no longer outstanding for all purposes of this Warrant Agreement.

Section 2.02   Book-Entry Form; Registration.

(a)      Except as provided in the next succeeding sentence, Series A Warrants will be issued in book-entry form only.  Certificates representing Series A Warrants will not be issued

7

#5204861.2

unless required by Law or by the rules or procedures of any exchange, trading system, book-entry system or similar system or organization on or in which the Company may from time to time seek to have the Series A Warrants included. If certificates representing Series A Warrants are to be issued in the foregoing circumstances, the Company shall amend this Warrant Agreement in accordance with Section 5.03(a) to include terms and provisions determined by the Company to be necessary or desirable to provide therefor, including adoption of an appropriate form or forms for definitive or global certificates representing Series A Warrants.

(b)     The Company shall cause to be kept and shall maintain a register (the "**Series A Warrant Register**") in which the Company shall provide for the registration of Series A Warrants and Transfers of Series A Warrants in accordance with this Warrant Agreement. The Series A Warrant Register shall reflect the name and address of each registered Holder of Series A Warrants and the number of Series A Warrants held by such Holder. The Company may deem and treat the Person in whose name Series A Warrants are registered in the Series A Warrant Register as the absolute owner thereof for all purposes whatsoever, and the Company shall not be affected by any notice to the contrary (other than notice of Transfer in accordance with the terms hereof).

Section 2.03    Transfers of Series A Warrants.

(a)     Subject to Section 2.03(b), Section 2.03(c) and Section 2.03(d), any Series A Warrant may be Transferred, entitling the Transferee (to the extent of such Transfer) to the same rights and benefits as the Transferring Holder is entitled to in respect of such Series A Warrant. Any Holder desiring to Transfer any Series A Warrants shall deliver to the Company a Transfer Instruction and any other evidence of authority that reasonably may be required by the Company, duly completed and executed by the Transferring Holder or its duly appointed legal representative or duly authorized attorney. The Company may require that the Transfer Instruction include a signature guarantee from an eligible guarantor institution participating in a signature guarantee program approved by the Securities Transfer Association and may also require any other reasonable evidence of authority. Subject to Section 2.03(b), Section 2.03(c) and Section 2.03(d), no later than three Business Days after receipt by the Company of a duly completed and executed Transfer Instruction, including a signature guarantee if so required, and any such other evidence of authority, the Company shall record such Transfer in the Series A Warrant Register, whereupon the Transferee (to the extent of such Transfer) shall become the Holder of such Series A Warrants and shall become a party to, and be bound by and entitled to the benefits of, this Warrant Agreement as the Holder of such Series A Warrants. No service charge shall be made to a Holder for any registration of Transfer of Series A Warrants, but the Company may require payment of a sum sufficient to cover any transfer tax or governmental charge payable in connection therewith.

(b)     Each Holder acknowledges that the Series A Warrants and the Units issuable upon exercise thereof are being offered and sold pursuant to the exemption from the registration requirements of Section 5 of the Securities Act provided by Section 1145(a) of the Bankruptcy Code. Notwithstanding anything in this Warrant Agreement to the contrary, no Transfer of Series A Warrants shall be made or become effective, and no such Transfer shall be recorded in the Series A Warrant Register, if the Company determines in good faith after consultation with counsel (which determination shall be final and binding) that: (i) such Transfer does not comply

8

in all respects with the applicable provisions of this Warrant Agreement; (ii) such Transfer, or the subsequent exercise by the Transferee of such Series A Warrants, does not or would not comply in all respects with applicable federal and state Law, including, without limitation, the Securities Act and other securities Laws and any applicable antitrust Laws; (iii) such Transfer, or the subsequent exercise by the Transferee of such Series A Warrants, requires or would require the registration or qualification of any Series A Warrants or Units pursuant to any applicable federal or state securities Law; (iv) such Transfer, or the subsequent exercise by the Transferee of such Series A Warrants, would cause the Company to have more than 2,000 holders of any class of equity securities or 500 unaccredited holders of any class of equity securities (determined in accordance with Section 12(g) of the Exchange Act); (v) such Transfer, or the subsequent exercise by the Transferee of such Series A Warrants, would cause the Company to become a reporting company under the Exchange Act or any other applicable federal or state securities Law; (vi) such Transfer, or the subsequent exercise by the Transferee of such Series A Warrants, would subject the Company to regulation under the Investment Company Act of 1940, the Investment Advisors Act of 1940 or ERISA; (vii) such Transfer, or the subsequent exercise by the Transferee of such Series A Warrants, is or would be a non-exempt "prohibited transaction" under ERISA or the Internal Revenue Code or would cause all or any portion of the assets of the Company to constitute "plan assets" under ERISA or Section 4975 of the Internal Revenue Code; or (viii) the Transferee is a Person listed on Schedule II to the LLC Agreement or an Affiliate (as defined in the LLC Agreement) thereof.

(c)    In connection with any Transfer of Series A Warrants pursuant to this Section 2.03, the Transferee of such Series A Warrants shall execute and deliver to the Company a counterpart of this Warrant Agreement or other writing acceptable to the Company confirming such Transferee's agreement to become a party to, and be bound by the terms of, this Warrant Agreement (to the extent of such Transfer).  Notwithstanding anything in this Warrant Agreement to the contrary, no Transfer of Series A Warrants shall be made or become effective, and no such Transfer shall be recorded in the Series A Warrant Register, unless and until the Company has received such duly executed counterpart or other writing.

(d)    Any Transfer or purported or attempted Transfer of Series A Warrants in violation of or noncompliance with the provisions of this Section 2.03 shall be null and void *ab initio*.

**Article 3**
**Exercise and Settlement of Series A Warrants**

Section 3.01    Exercise of Series A Warrants.    Each Series A Warrant (a) may be exercised by the Holder thereof in accordance with this Article 3 at any time prior to the Expiration Date or the earlier cancelation thereof pursuant to Section 3.07 and (b) shall automatically be exercised as provided in Section 3.07.  Any Series A Warrants not exercised prior to the Expiration Date shall expire unexercised, and all rights thereunder and all rights in respect thereof under this Warrant Agreement shall cease as of the Expiration Date.  Only whole Series A Warrants may be exercised.

Section 3.02    Procedure for Exercise.

(a)    To exercise Series A Warrants, the Holder thereof must (i) deliver to the Company an Exercise Notice duly completed and executed by such Holder or by its duly appointed legal representative or duly authorized attorney, (ii) if Full Physical Settlement is elected, pay to the Company an amount equal to the Exercise Price for each Series A Warrant to be exercised, together with all applicable taxes and charges related thereto, and (iii) if the exercising Holder is not then a Member, deliver to the Company a duly executed counterpart of the LLC Agreement or other writing acceptable to the Company confirming such Transferee's agreement to become a party to, and be bound by the terms of, the LLC Agreement and otherwise evidencing compliance with the applicable terms of the LLC Agreement.

(b)    The first Business Day on which all the requirements for exercise set forth in this Section 3.02 in respect of a Series A Warrant are satisfied is the "**Exercise Date**" for such Series A Warrant.

(c)    Subject to Section 3.02(d), any exercise of a Series A Warrant pursuant to the terms of this Warrant Agreement shall be irrevocable and enforceable in accordance with its terms.

(d)    Notwithstanding any other provision of this Warrant Agreement, if the exercise of any Series A Warrant is to be made in connection with a registered public offering or a Sale Transaction, such exercise may, upon proper election in the Exercise Notice, be conditioned upon consummation of such transaction or event, in which case such exercise shall not be deemed effective until the consummation of such transaction or event.

(e)    Payment of the Exercise Price by a Holder upon exercise of Series A Warrants, in the case of Full Physical Settlement, shall be by federal wire or other transfer of immediately available funds to the account designated by the Company for such payment.  The Company shall provide an exercising Holder, upon request, with the appropriate payment instructions.

Section 3.03    Settlement of Warrants.

(a)    Full Physical Settlement shall apply to the exercise of each Series A Warrant unless (i) the exercising Holder elects for Net Share Settlement to apply upon exercise of such Series A Warrant, with such election to be made in the Exercise Notice for such Series A Warrant or (ii) such exercise is an automatic exercise pursuant to Section 3.07.

(b)    If Full Physical Settlement applies to the exercise of a Series A Warrant, upon the proper and valid exercise thereof by the Holder thereof, the Company shall cause to be delivered to the exercising Holder the Full Physical Settlement Amount.

(c)    If Net Share Settlement applies to the exercise of a Series A Warrant, upon the proper and valid exercise thereof by the Holder thereof, the Company shall cause to be delivered to the exercising Holder the Net Share Amount, together with Cash in lieu of any fractional Unit as provided in Section 3.05.

10

Section 3.04    <u>Delivery of Units</u>.

(a)    With respect to Series A Warrants properly exercised in accordance with this Warrant Agreement, the Company shall, as promptly as practicable but in any event within three Business Days after the applicable Exercise Date, issue or, if applicable, cause the transfer agent for the Units to issue, in book-entry form or such other form as may be specified by the LLC Agreement, the Units due in connection with such exercise in the name of the exercising Holder, whereupon such Holder shall be admitted as a Member in respect of such Units as of the applicable Exercise Date (to the extent such Holder was not already a Member on such Exercise Date) in accordance with the terms of the LLC Agreement, and the Holder in whose name such Units are registered shall for all purposes be deemed to have become the holder of record of such Units as of the Close of Business on the applicable Exercise Date.

(b)    Promptly after the delivery of Units pursuant to <u>Section 3.04(a)</u>, the Company shall reflect the exercise and cancelation of the exercised Series A Warrants in the Series A Warrant Register.

Section 3.05    <u>No Fractional Units to Be Issued</u>.

(a)    Notwithstanding anything to the contrary in this Warrant Agreement, the Company shall not be required to issue any fraction of a Unit upon exercise of any Series A Warrants.

(b)    If any fraction of a Unit would, except for the provisions of this <u>Section 3.05</u>, be issuable on the exercise of any Series A Warrants, the Company shall instead pay to the Holder exercising such Series A Warrants Cash in an amount equal to the quotient determined by multiplying the Fair Value of one Unit on the related Exercise Date by such fraction.  All Series A Warrants exercised by a Holder on the same Exercise Date shall be aggregated for purposes of determining the number of Units to be delivered pursuant to <u>Section 3.04(a)</u> and Cash in lieu of any fractional Unit pursuant to this <u>Section 3.05</u>.

(c)    Each Holder, by accepting Series A Warrants and becoming a party to this Warrant Agreement, expressly waives its right to any fraction of a Unit upon its exercise of such Series A Warrants in favor of the Cash payment contemplated by this <u>Section 3.05</u>.

Section 3.06    <u>Validity of Exercise; Calculations</u>.  All questions as to the validity, form and sufficiency (including time of receipt) of a Series A Warrant exercise shall be determined by the Company, which determination shall be final and binding on the Holder thereof.  The Company reserves the absolute right to waive any of the conditions to the exercise of Series A Warrants or defects in Exercise Notices with regard to any particular exercise of Series A Warrants.  The Company shall be responsible for performing all calculations required in connection with the exercise and settlement of Series A Warrants as described in this <u>Article 3</u>, and the Company's calculations shall be final and binding on the Holder thereof absent manifest error.

11

Section 3.07 <u>Automatic Exercise or Cancelation of Series A Warrants in Connection with Drag Transaction; Sale of Units in Drag Transaction</u>.

(a) If any Series A Warrants remain outstanding and unexercised immediately prior to the consummation of a Drag Transaction, then, immediately prior to (but subject to) the consummation of such Drag Transaction:

(i) if the Fair Value of a Unit (determined as provided in <u>Section 3.07(b)</u>) is greater than the Exercise Price then in effect, there shall be exercised automatically, without any action on the part of the Holder thereof and with Net Share Settlement applying to such exercise, a number of Series A Warrants held by each Holder of Series A Warrants that is equal to the number of Units that such Holder would be required to sell or otherwise dispose of in such Drag Transaction pursuant to the terms of LLC Agreement if such Holder had exercised all Series A Warrants held by such Holder on a Net Share Settlement basis immediately prior to the consummation of such Drag Transaction, and the Units issued upon such exercise shall be sold or otherwise disposed of on the same terms as the other Units subject to such Drag Transaction as provided in the LLC Agreement; or

(ii) if the Fair Value of a Unit (determined as provided in <u>Section 3.07(b)</u>) is less than the Exercise Price then in effect, there shall be canceled, and all rights thereunder and all rights in respect thereof under this Warrant Agreement shall cease, a number of Series A Warrants held by each Holder of Series A Warrants that is equal to the number of Units that such Holder would be required to sell or otherwise dispose of in such Drag Transaction pursuant to the terms of LLC Agreement if such Holder had exercised all Series A Warrants held by such Holder on a Full Physical Settlement basis immediately prior to the consummation of such Drag Transaction.

(b) Notwithstanding the definition of Fair Value set forth in <u>Section 1.01</u>, for purposes of this <u>Section 3.07</u>, the Fair Value of a Unit shall be equal to the amount of Cash consideration and/or the Fair Value of consideration in the form of Securities or other property payable in respect of one Unit pursuant to the applicable Drag Transaction.

(c) For the avoidance of doubt, in the event that the provisions of this <u>Section 3.07</u> result in the exercise or cancelation of all outstanding Series A Warrants in connection with a Drag Transaction, then no adjustments or other accommodations in respect of the Series A Warrants that would otherwise be required to be made pursuant to <u>Article 4</u> in connection with such Drag Transaction shall be made.

Section 3.08 <u>Acquisition of Warrants by Company</u>. The Company shall have the right, except as limited by Law, to purchase or otherwise to acquire one or more Series A Warrants at such times, in such manner and for such consideration as it may deem appropriate.

**Article 4**
**Adjustments**

Section 4.01 <u>Adjustments to Exercise Price</u>. After the date on which Series A Warrants are first issued and while any Series A Warrants remain outstanding and unexpired, the Exercise

12

Price shall be subject to adjustment (without duplication) upon the occurrence of any of the following events:

(a)   The issuance of Units as a dividend or distribution to all holders of Units, or a subdivision, combination, split, reverse split or reclassification of the outstanding Units into a greater or smaller number of Units, in which event the Exercise Price shall be adjusted based on the following formula:

$$E_1 = E_0 \times \frac{N_0}{N_1}$$

where:

$E_1$ = the Exercise Price in effect immediately after (i) the Open of Business on the Ex-Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification;

$E_0$ = the Exercise Price in effect immediately prior to (i) the Open of Business on the Ex-Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification;

$N_0$ = the number of Units outstanding immediately prior to (i) the Open of Business on the Record Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification; and

$N_1$ = the number of Units equal to (i) in the case of a dividend or distribution, the sum of the number of Units outstanding immediately prior to the Open of Business on the Record Date for such dividend or distribution plus the total number of Units issued pursuant to such dividend or distribution or (ii) in the case of a subdivision, combination, split, reverse split or reclassification, the number of Units outstanding immediately after such subdivision, combination, split, reverse split or reclassification.

Such adjustment shall become effective immediately after (i) the Open of Business on the Ex-Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification.  If any dividend or distribution or subdivision, combination, split, reverse split or reclassification of the type described in this Section 4.01(a) is declared or announced but not so paid or made, the Exercise Price shall again be adjusted to the Exercise Price that would then be in effect if such dividend or distribution or subdivision, combination, split, reverse split or reclassification had not been declared or announced, as the case may be.

(b)   The issuance as a dividend or distribution to all holders of Units of evidences of indebtedness, Securities of the Company or any other Person (other than Units), Cash or other property (excluding any dividend or distribution covered by Section 4.01(a) or any regularly

13

declared and paid Cash dividends), in which event the Exercise Price will be adjusted based on the following formula:

$$E_1 = E_0 \times \frac{P - FMV}{P}$$

where:

$E_1$ = the Exercise Price in effect immediately after the Open of Business on the Ex-Date for such dividend or distribution;

$E_0$ = the Exercise Price in effect immediately prior to the Open of Business on the Ex-Date for such dividend or distribution;

$P$ = the Fair Value of a Unit as of immediately prior to the Open of Business on the second Business Day preceding the Ex-Date for such dividend or distribution; and

$FMV$ = the Fair Value of the portion of such dividend or distribution applicable to one Unit as of the Open of Business on the date of such dividend or distribution.

Such adjustment shall become effective immediately after the Open of Business on the Ex-Date for such dividend or distribution.  In the event that such dividend or distribution is declared or announced but not so paid or made, the Exercise Price shall again be adjusted to be the Exercise Price that would then be in effect if such distribution had not been declared or announced.

(c)     The payment in respect of any tender offer or exchange offer by the Company or any of its Subsidiaries for Units, where the Cash and Fair Value of any other consideration included in the payment per Unit exceeds the Fair Value of a Unit as of the Open of Business on the second Business Day preceding the expiration date of the tender or exchange offer (the "**Offer Expiration Date**"), in which event the Exercise Price will be adjusted based on the following formula:

$$E_1 = E_0 \times \frac{(N_0 \times P) - A}{(P \times N_1)}$$

where:

$E_1$ = the Exercise Price in effect immediately after the Close of Business on the Offer Expiration Date;

$E_0$ = the Exercise Price in effect immediately prior to the Close of Business on the Offer Expiration Date;

$N_0$ = the number of Units outstanding immediately prior to the expiration of the tender or exchange offer (prior to giving effect to the purchase or exchange

14

#5204861.2

of Units);

$N_1$ = the number of Units outstanding immediately after the expiration of the tender or exchange offer (after giving effect to the purchase or exchange of Units);

A = the aggregate Cash and Fair Value of any other consideration payable for Units purchased in such tender offer or exchange offer; and

P = the Fair Value of a Unit as of the Open of Business on the second Business Day preceding the Offer Expiration Date.

An adjustment, if any, to the Exercise Price pursuant to this Section 4.01(c) shall become effective immediately after the Close of Business on the Offer Expiration Date. In the event that the Company or a Subsidiary of the Company is obligated to purchase Units pursuant to any such tender offer or exchange offer, but the Company or such Subsidiary is permanently prevented by applicable Law from effecting any such purchases, or all such purchases are rescinded, then the Exercise Price shall again be adjusted to be the Exercise Price that would then be in effect if such tender offer or exchange offer had not been made. Except as set forth in the preceding sentence, if the application of this Section 4.01(c) to any tender offer or exchange offer would result in an increase in an Exercise Price, no adjustment shall be made for such tender offer or exchange offer under this Section 4.01(c).

(d)     If any single action would require adjustment of the Exercise Price pursuant to more than one subsection of this Section 4.01, only one adjustment to the Exercise Price shall be made, and such adjustment shall be the amount of adjustment that has the highest, relative to the rights and interests of the Holders of the Series A Warrants then outstanding, absolute value.

(e)     For the purpose of calculations pursuant to this Article 4, the number of Units outstanding shall be equal to the sum of (i) the number of Units issued and outstanding (excluding any Units held, directly or indirectly, by the Company or any of its Subsidiaries) and (ii) the number of Units issuable pursuant to the conversion or exercise of Convertible Securities that are outstanding, in each case on the applicable date of determination.

(f)     The Company may from time to time, to the extent permitted by Law, decrease the Exercise Price and/or increase the Number of Series A Warrants by any amount for any period of at least twenty days. In that case, the Company shall give the Holders at least ten days' prior written notice of such increase or decrease, and such notice shall state the decreased Exercise Price and/or increased Number of Series A Warrants and the period during which the decrease and/or increase will be in effect. The Company may make such decreases in the Exercise Price and/or increases in the Number of Series A Warrants, in addition to those set forth in this Article 4, as the Board deems advisable, including to avoid or diminish any income tax to holders of Units resulting from any dividend or distribution of equity Securities (or rights to acquire equity Securities) or from any event treated as such for income tax purposes.

(g)     Notwithstanding this Section 4.01 or any other provision of this Warrant Agreement, if an Exercise Price adjustment becomes effective on any Ex-Date, and a Series A Warrant has been exercised on or after such Ex-Date and on or prior to the related Record Date

15

resulting in the Person issued Units being treated as the record holder of the Units on or prior to the Record Date, then, notwithstanding the Exercise Price adjustment provisions in this Section 4.01, the Exercise Price adjustment relating to such Ex-Date will not be made with respect to such Series A Warrant. Instead, such Person will be treated as if it were the record owner of Units on an un-adjusted basis and participate in the related dividend, distribution or other event giving rise to such adjustment.

Section 4.02    Adjustments to Number of Series A Warrants.  Concurrently with any adjustment to the Exercise Price under Section 4.01, except to the extent pursuant to Section 4.01(d), the Number of Series A Warrants will be adjusted such that the Number of Series A Warrants in effect immediately following the effectiveness of such adjustment will be equal to the Number of Series A Warrants in effect immediately prior to such adjustment, multiplied by a fraction, (i) the numerator of which is the Exercise Price in effect immediately prior to such adjustment and (ii) the denominator of which is the Exercise Price in effect immediately following such adjustment.  The Company shall reflect in the Series A Warrant Register any adjustments or readjustments to the Number of Series A Warrants made pursuant to the this Article 4.

Section 4.03    Certain Distributions of Rights and Warrants.

(a)    Rights or warrants distributed by the Company to all holders of Units entitling the holders thereof to subscribe for or purchase the Company's Securities (either initially or under certain circumstances), which rights or warrants, until the occurrence of a specified event or events (a "**Trigger Event**"):

(i)    are deemed to be transferred with such Units;

(ii)    are not exercisable; and

(iii)    are also issued in respect of future issuances of Units,

shall be deemed not to have been distributed for purposes of Article 4 (and no adjustment to the Exercise Price or the Number of Series A Warrants under this Article 4 will be made) until the occurrence of the earliest Trigger Event, whereupon such rights and warrants shall be deemed to have been distributed and an appropriate adjustment (if any is required) to the Exercise Price and the Number of Series A Warrants shall be made under this Article 4 (subject in all respects to Section 4.04).

(b)    If any such right or warrant is subject to events upon the occurrence of which such rights or warrants become exercisable to purchase different Securities, evidences of indebtedness or other assets, then the date of the occurrence of any and each such event shall be deemed to be the date of distribution and Record Date with respect to new rights or warrants with such rights (subject in all respects to Section 4.04).

(c)    In addition, except as set forth in Section 4.04, in the event of any distribution (or deemed distribution) of rights or warrants, or any Trigger Event or other event (of the type described in Section 4.03(b)) with respect thereto that was counted for purposes of calculating a

16

distribution amount for which an adjustment to the Exercise Price and the Number of Series A Warrants under Article 4 was made (including any adjustment contemplated in Section 4.04):

(i)    in the case of any such rights or warrants that shall all have been redeemed or repurchased without exercise by the holders thereof, the Exercise Price and the Number of Series A Warrants shall be readjusted upon such final redemption or repurchase to give effect to such distribution or Trigger Event, as the case may be, as though it were a distribution under Section 4.01(b), equal to the per share redemption or repurchase price received by a holder or holders of Units with respect to such rights or warrants (assuming such holder had retained such rights or warrants), made to all holders of Units as of the date of such redemption or repurchase; and

(ii)    in the case of such rights or warrants that shall have expired or been terminated without exercise by the holders thereof, the Exercise Price and the Number of Series A Warrants shall be readjusted as if such rights and warrants had not been issued or distributed.

Section 4.04    Stockholder Rights Plans.  If the Company has a stockholder or unitholder rights plan in effect with respect to the Units, upon exercise of a Series A Warrant the holder shall be entitled to receive, in addition to the Units, the rights under such rights plan, unless, prior to such exercise, such rights have separated from the Units, in which case the Exercise Price and the Number of Series A Warrants shall be adjusted at the time of separation as if the Company had made a distribution to all holders of Units as described in Section 4.01(b), subject to readjustment in the event of the expiration, termination or redemption of such rights.

Section 4.05    Restrictions on Adjustments.

(a)    Except in accordance with Section 4.01, the Exercise Price and the Number of Series A Warrants will not be adjusted for the issuance of Units or other Securities of the Company.

(b)    For the avoidance of doubt, neither the Exercise Price nor the Number of Series A Warrants will be adjusted:

(i)    upon the issuance of any Securities by the Company on or after the Closing Date pursuant to the Plan or upon the issuance of Units upon the exercise of such Securities;

(ii)    upon the issuance of any Units, Convertible Securities or other Securities or any payments pursuant to the Management Incentive Plan or any other equity incentive plan of the Company;

(iii)    upon the offer and sale of Units by the Company in a primary offering for Cash at a price that is less than Fair Value for Units at the time of such offer and sale; or

(iv)    upon the issuance of Units or other Securities of the Company in connection with a business acquisition transaction (except to the extent otherwise expressly required by this Warrant Agreement).

17

(c)     No adjustment shall be made to the Exercise Price or the Number of Series A Warrants for any of the transactions described in Section 4.01 if the Company makes provisions for participation in any such transaction with respect to Series A Warrants without exercise of such Series A Warrants on the same basis as with respect to Units, with notice to the Holders that the Board determines in good faith to be fair and appropriate.

(d)     No adjustment shall be made to the Exercise Price, nor will any corresponding adjustment be made to the Number of Series A Warrants, unless the adjustment would result in a change of at least 1% of the Exercise Price; *provided, however,* that any adjustment of less than 1% that was not made by reason of this Section 4.05(d) shall be carried forward and made as soon as such adjustment, together with any other adjustments not previously made by reason of this Section 4.05(d), would result in a change of at least 1% in the aggregate.  All calculations under this Article 4 shall be made to the nearest cent or to the nearest 1/100th of a Unit, as the case may be.

(e)     If the Company takes a record of the holders of Units for the purpose of entitling them to receive a dividend or other distribution, and thereafter (and before the dividend or distribution has been paid or delivered to holders of Units) legally abandons its plan to pay or deliver such dividend or distribution, then thereafter no adjustment to the Exercise Price or the Number of Series A Warrants then in effect shall be required by reason of the taking of such record.

Section 4.06     Successor upon Consolidation, Merger and Sale of Assets.

(a)     Subject to Section 3.07, the Company may consolidate or merge with another Person (a "**Fundamental Equity Change**") only if (i) the Company is the surviving Person or (ii) if the Company is not the surviving Person, then:

(1)     the successor to the Company assumes all of the Company's obligations under this Warrant Agreement and the Series A Warrants; and

(2)     the successor to the Company provides written notice of such assumption to each Holder promptly following the Fundamental Equity Change.

(b)     Subject to Section 3.07, in the case of a Fundamental Equity Change, the successor Person to the Company shall succeed to and be substituted for the Company with the same effect as if it had been named herein as the Company, and the Company shall thereupon be released from all obligations and covenants under this Warrant Agreement and the Series A Warrants.  Such successor Person shall provide to each Holder in writing appropriate identifying corporate or other entity information.  Such successor Person thereafter may issue any or all of the Series A Warrants issuable pursuant to this Warrant Agreement which theretofore shall not have been issued by the Company.

(c)     Subject to Section 3.07, if the Company desires to sell, lease, convey or otherwise Transfer in one transaction or a series of related transactions all or substantially all of the consolidated assets of the Company and its Subsidiaries (an "**Asset Sale**"), the Company may only consummate such Asset Sale if the Person to which such assets are sold, leased, conveyed or otherwise Transferred (the "**Buyer**") agrees (i) to enter into a warrant agreement in form and

18

substance substantially similar to this Warrant Agreement and (ii) to issue warrants for equity in such Buyer to the Holders on terms (including economic) and conditions substantially similar to the Series A Warrants (taking into account any Series A Warrants that are exercised prior to the consummation of such Asset Sale and taking into account the materiality of the transferred assets to the total assets and operations of the Buyer, taken as a whole).

Section 4.07 <u>Adjustment upon Reorganization Event</u>.

(a) Subject to <u>Section 3.07</u>, if there occurs any Fundamental Equity Change or any recapitalization, reorganization, consolidation, reclassification, change in the outstanding Units (other than changes resulting from a subdivision or combination to which <u>Section 4.01(a)</u> applies), statutory share exchange or other transaction (each such event a "**Reorganization Event**"), in each case as a result of which the Units would be converted into, changed into or exchanged for, other Securities, other property or assets (including Cash) or any combination thereof (the "**Reference Property**") while any Series A Warrants remain outstanding and unexpired, then following the effective time of the Reorganization Event, the right to receive Units upon exercise of a Series A Warrant shall be changed to a right to receive, upon exercise of such Series A Warrant, the kind and amount of Securities, other property or assets (including Cash) or combination thereof that a holder of one Unit would have owned or been entitled to receive in connection with such Reorganization Event (such kind and amount of Reference Property per Unit, a "**Unit of Reference Property**"). In the event holders of Units have the opportunity to elect the form of consideration to be received in a Reorganization Event, the type and amount of consideration into which the Series Warrants shall be exercisable from and after the effective time of such Reorganization Event shall be deemed to be the weighted average of the types and amounts of consideration received by the holders of Units in such Reorganization Event. Subject to <u>Section 3.07</u>, the Company hereby agrees not to become a party to any Reorganization Event unless its terms are consistent with this <u>Section 4.07</u>.

(b) Subject to <u>Section 3.07</u>, at any time from, and including, the effective time of a Reorganization Event:

(i) each Series A Warrant shall be exercisable for a single Unit of Reference Property instead of one Unit; and

(ii) the Fair Value shall be calculated with respect to a Unit of Reference Property.

(c) Subject to <u>Section 3.07</u>, on or prior to the effective time of any Reorganization Event, the Company or the successor or purchasing Person, as the case may be, shall execute an amendment to this Warrant Agreement providing that the Series A Warrants shall be exercisable for Units of Reference Property in accordance with the terms of this <u>Section 4.07</u>. If the Reference Property in connection with any Reorganization Event includes Securities or assets of a Person other than the successor or purchasing Person, as the case may be, in such Reorganization Event, then the Company shall cause such amendment to this Warrant Agreement to be executed by such other Person and such amendment shall contain such additional provisions to protect the interests of the Holders as the Board shall reasonably consider necessary by reason of the foregoing. Any such amendment to this Warrant Agreement

19

shall provide for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Article 4. In the event the Company shall execute an amendment to this Warrant Agreement pursuant to this Section 4.07, the Company shall, within 20 Business Days after execution thereof, deliver to each Holder written notice stating the reasons therefor, the kind or amount of Cash, securities or property or assets that will comprise a Unit of Reference Property after the relevant Reorganization Event, any adjustment to be made with respect thereto and that all conditions precedent set forth herein have been complied with.

(d)    The above provisions of this Section 4.07 shall similarly apply to successive Reorganization Events.

(e)    If this Section 4.07 applies to any event or occurrence, no other provision of this Article 4 shall apply to such event or occurrence (other than Section 4.06).

Section 4.08    Calculations.

(a)    Subject to Section 4.08(b), the Company shall be responsible for making all calculations called for under this Article 4 for purposes of determining any adjustments to the Exercise Price and the Number of Series A Warrants, including determinations as to Fair Value and the composition of Units of Reference Property. Such calculations and determinations shall be final and binding on the Holders absent manifest error.

(b)    In the event the Board engages a Representative to advise it with respect to the determination of Fair Value, the Board shall be entitled to rely upon the determination of such Representative. The Company shall pay the fees and expenses of any Representative.

Section 4.09    Notice of Adjustments.    The Company shall deliver, or cause to be delivered, to each Holder written notice of any adjustment or readjustment to the Exercise Price or the Number of Series A Warrants no less than three Business Days prior to the effective date of such adjustment or readjustment, which notice shall set forth such adjustment or readjustment and the kind and amount of securities, Cash or other property for which a Series A Warrant shall thereafter be exercisable, the Exercise Price and the Number of Series A Warrants, showing in reasonable detail the facts upon which such adjustment or readjustment is based. Such notice shall be conclusive evidence that the adjustment or readjustment is correct absent manifest error.

**Article 5**
**Other Provisions Relating to Rights of Holders**

Section 5.01    No Rights as Unitholders.    Nothing contained in this Warrant Agreement shall be construed as conferring upon any Person, by virtue of holding Series A Warrant, the right to vote, to consent, to receive any dividends or distributions of Cash, Securities or other property, allotments or rights paid, allotted or distributed or distributable to the holders of Units, or to exercise any rights whatsoever as a holder of Units or Member unless, until and only to the extent such Person becomes a holder of record of Units issued upon exercise and settlement of Series A Warrants.

20

#5204861.2

Section 5.02    <u>No Impairment; Units Reserved for Issuance</u>.

(a)    The Company shall not by any action, including, without limitation, amending its certificate of formation, LLC Agreement or other organizational documents or through any reorganization, transfer of assets, consolidation, merger, dissolution, issuance or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant Agreement or any Series A Warrants.  Without limiting the generality of the foregoing, the Company will not at any time, except upon dissolution, liquidation or winding up of the Company, close the Series A Warrant Register or its Unit transfer books so as to result in preventing or delaying the exercise or Transfer of any Series A Warrant.

(b)    The Company represents and warrants to each Holder that there have been authorized and reserved for issuance, by all necessary action by or on behalf of the Company under the LLC Agreement and the Act, such number of Units as will be issuable upon the exercise of all outstanding Series A Warrants.  The Company agrees to take such further action as may be necessary from time to time to authorize and reserve for issuance, and to direct any transfer agent for the Units to reserve for issuance, such number of Units as will be issuable upon the exercise of all outstanding Series A Warrants and shall take all action required to increase the authorized number of Units if at any time there shall be insufficient authorized but unissued Units to permit such reservation or to permit the exercise of all Series A Warrants.  The Company covenants that all Units that shall be so issuable shall be duly and validly issued, fully paid and non-assessable (except as such non-assessability may be affected by Sections 18-303, 18-607 and 18-804 of the Act).

Section 5.03    <u>Modification, Amendments and Waivers</u>.

(a)    This Warrant Agreement may be modified or amended by the Company, without the consent of the Holders:

(i)    to cure any ambiguity or correct or supplement any defective provision contained in this Warrant Agreement;

(ii)    to provide for Series A Warrants to be represented by definitive or global certificates as contemplated by <u>Section 2.02(a)</u>;

(iii)    to provide for the appointment by the Company of another Person as transfer agent or registrar for the Series A Warrants, *provided* that if such other Person is not a Subsidiary of the Company, such Person shall be a transfer agent that is registered in accordance Section 17A(c) of the Exchange Act; and

(iv)    to make any other provisions in regard to matters or questions arising in this Warrant Agreement that the Company may deem necessary or desirable; *provided* that such modification or amendment does not adversely affect the interests of the Holders in any material respect.

(b)    Modifications and amendments to this Warrant Agreement or to the terms and conditions of Series A Warrants not contemplated by <u>Section 5.03(a)</u> also may be made by the Company with, and noncompliance with any provision of the Warrant Agreement may be

21

waived by, the written consent of the Holders of a majority of the Series A Warrants at the time outstanding.

(c)    Notwithstanding the foregoing provisions of this Section 5.03, no modification, amendment or waiver may, without the written consent of each Holder:

(i)    change the Expiration Date;

(ii)    increase the Exercise Price or decrease the Number of Series A Warrants (except as set forth in Article 4);

(iii)    impair the right of the Holders to institute suit for the enforcement of any payment or delivery with respect to the exercise and settlement of any Series A Warrant;

(iv)    except as otherwise expressly permitted by provisions of this Warrant Agreement concerning specified reclassifications or corporate reorganizations, impair or adversely affect the exercise rights with respect to Series A Warrants, including any change to the calculation or payment of the number of Units deliverable upon exercise of each Series A Warrant; or

(v)    reduce the percentage of Series A Warrants outstanding necessary to modify or amend this Warrant Agreement or to waive any noncompliance with the terms of this Warrant Agreement.

Section 5.04    Notice of Certain Events.    In the event of any Drag Transaction, Sale Transaction, Asset Sale, Fundamental Equity Change or other Reorganization Event, then, and in each such case, the Company will deliver or cause to be delivered to each Holder, at least 15 days prior to the date of consummation of such transaction or event, a notice specifying the date on which the consummation of such transaction or event is or is expected to take place, and the time, if any is to be fixed, as of which the holders of record of Units shall be entitled to exchange their Units for Cash, Securities or other property deliverable in respect thereof upon consummation of such transaction or event.

Section 5.05    Reports to Holders.    The Company shall deliver to each Holder:

(a)    as soon as available, but in any event not later than 120 days after the end of each fiscal year of the Company, a copy of the audited consolidated balance sheet of the Company and its Subsidiaries as of the end of such fiscal year and the related statements of operations and cash flows for such fiscal year, prepared in accordance with GAAP and accompanied by the opinion of a nationally recognized independent certified public accounting firm; and

(b)    as soon as available, but in any event not later than 60 days after the end of each of the first three fiscal quarters of each fiscal year of the Company, the unaudited consolidated balance sheet of the Company and its Subsidiaries, and the related statements of operations and cash flows for such quarter and for the period commencing on the first day of the fiscal year and ending on the last day of such quarter, all certified by an appropriate officer of the Company as presenting fairly the consolidated financial condition as of such date and results of operations

22

and cash flows for the periods indicated in conformity with GAAP applied on a consistent basis, subject to normal year-end adjustments and the absence of footnotes required by GAAP.

Section 5.06   Payment of Certain Taxes.

(a)   The Company shall pay any and all documentary, stamp or similar issue or transfer taxes that may be payable upon the initial issuance of Series A Warrants.

(b)   The applicable Holder shall pay any and all documentary, stamp or similar issue or transfer taxes that may be payable upon the exercise or Transfer of Series A Warrants.

**Article 6**
**Miscellaneous**

Section 6.01   Notices.  Any notice, request, demand or other communication (including any Exercise Notice or Transfer Instruction) required or permitted by this Warrant Agreement to be given or made hereunder by any party hereto shall be in writing and shall be deemed to have been duly given or made if (i) delivered personally, (ii) transmitted by first class registered or certified mail, postage prepaid, return receipt requested, (iii) sent by prepaid overnight courier service, (iv) sent by facsimile transmission, or (v) sent by email (provided that no electronic notice of non-delivery is received by the sender) to the applicable party as follows (or as otherwise communicated to the parties by like notice):

If to the Company, to:

Venoco, LLC
370 17th Street, Suite 3900
Denver, Colorado 80202-1370
Attention: Brian E. Donovan, General Counsel
Facsimile: (303) 626-8315
Email: be.donovan@venocoinc.com

If to any Holder, to such Holder at the last address, facsimile number or email address of such Holder as it shall appear on the Series A Warrant Register.

Any such notice, request, demand or other communication shall be deemed to have been given or made (i) if delivered personally or sent by courier service, upon actual receipt by the intended recipient, (ii) if mailed, on the earlier of five Business Days after deposit in the mail or the date of delivery as shown by the return receipt therefor, or (iii) if sent by facsimile transmission or email, on the day on which the facsimile is transmitted or the email is sent or, if such day is not a Business Day or if such facsimile is transmitted or email is sent after the Close of Business on a Business Day, on the next succeeding Business Day.

23

Section 6.02    GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THIS WARRANT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW THEREOF.

(b)    Each of the Company and each Holder irrevocably agrees that any Action with respect to this Warrant Agreement, any provision hereof, the breach, performance, validity or invalidity hereof or for recognition and enforcement of any judgment in respect hereof brought by another party hereto or its successors or permitted assigns shall be brought and determined in the Court of Chancery or other courts of the State of Delaware located in the State of Delaware, and each Member and the Company hereby irrevocably submits and consents with regard to any such Action for itself and in respect to its property, generally and unconditionally, to the exclusive jurisdiction of the aforesaid courts.  Each of the Company and each Holder hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any Action with respect to this Warrant Agreement, any provision hereof or the breach, performance, enforcement, validity or invalidity hereof, (i) any claim that it is not personally subject to the jurisdiction of the above named courts for any reason, (ii) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise), and (iii) to the fullest extent permitted by applicable Laws, that (A) Action in any such court is brought in an inconvenient forum, (B) the venue of such Action is improper and (C) this Warrant Agreement, or the subject matter hereof, may not be enforced in or by such courts.

(c)    Each party hereto hereby agrees that, to the fullest extent permitted by Law, service of any process, summons, notice or document by U.S. registered mail to the respective addresses specified in Section 6.01 shall be effective service of process for any Action in connection with this Warrant Agreement or the transactions contemplated hereby.

(d)    EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS WARRANT AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS WARRANT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.  EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE SUCH WAIVER, (II) IT UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF SUCH WAIVER, (III) IT MAKES SUCH WAIVER VOLUNTARILY, AND (IV) IT HAS BEEN INDUCED TO ENTER THIS WARRANT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVER AND CERTIFICATIONS CONTAINED IN THIS SECTION 6.02.

24

#5204861.2

Section 6.03   <u>Benefit of this Warrant Agreement</u>.  Nothing in this Warrant Agreement expressed and nothing that may be implied from any of the provisions hereof is intended, or shall be construed, to confer upon, or give to, any Person other than the parties hereto and their successors any right, remedy or claim under or by reason of this Warrant Agreement or of any covenant, condition, stipulation, promise or agreement hereof, and all covenants, conditions, stipulations, promises and agreements in this Warrant Agreement contained shall be for the sole and exclusive benefit of the parties hereto and their successors.

Section 6.04   <u>Headings</u>.  The Article and Section headings herein are for convenience only and are not a part of this Warrant Agreement and shall not affect the interpretation thereof. All references in this Warrant Agreement to Articles, Sections, Schedules or Exhibits are to the specified Article or Section of or Schedule or Exhibit to this Warrant Agreement unless otherwise specified or the context otherwise requires.

Section 6.05   <u>Counterparts</u>.  This Warrant Agreement may be executed in any number of counterparts on separate counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

Section 6.06   <u>Entire Agreement</u>.  This Warrant Agreement constitutes the entire agreement of the Company and the Holders with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, among the Company and the Holders with respect to the subject matter hereof.

Section 6.07   <u>Severability</u>.  Wherever possible, each provision of this Warrant Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Warrant Agreement shall be prohibited by or invalid under applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Warrant Agreement.

Section 6.08   <u>Termination</u>.  This Warrant Agreement shall terminate at the Expiration Date (or at the Close of Business on the settlement date of any exercise of Series A Warrants with respect to any Exercise Notice delivered prior to the Expiration Date that has not settled prior to the Expiration Date).  Notwithstanding the foregoing, this Warrant Agreement will terminate on such earlier date on which all outstanding Series A Warrants have been exercised or canceled in accordance with the terms hereof.

Section 6.09   <u>Publicity; Confidentiality</u>.  Except as may be required by applicable Law, neither the Company nor any Holder shall issue a press release or public announcement or otherwise make any public disclosure concerning this Warrant Agreement without prior approval by the Board; *provided, however,* that nothing in this Warrant Agreement shall restrict any Holder from disclosing information (a) that is already publicly available, (b) that may be required or appropriate in response to any summons or subpoena or in disclosures made in connection with any request, requirement or form of any Governmental Authority or any litigation or proposed transaction, *provided* that such Holder will use reasonable efforts to notify the Company in advance of such disclosure so as to permit the Company to seek a protective order or otherwise contest such disclosure, and such Holder will use reasonable efforts to

25

cooperate, at the expense of the Company, with the Company in pursuing any such protective order, (c) to the extent that such Holder reasonably believes it appropriate in order to protect its investment in its Series A Warrants or in order to comply with any Law, (d) to such Holder's or the Company's representatives or agents, or (e) to any potential Transferee of any or all of such Holder's Series A Warrants or Units in a *bona fide* Transfer that would comply with the terms of Section 2.03 and/or the LLC Agreement, as applicable; *provided* that, prior to such disclosure, such Holder and such potential Transferee enter into a confidentiality agreement on terms no less restrictive than those contained in this Section 6.09 and which names the Company as an intended third party beneficiary thereof and is otherwise in a form and scope reasonably satisfactory to the Company.

Section 6.10 Force Majeure. Notwithstanding anything to the contrary contained herein, the Company will not be liable for any delays or failures in performance resulting from acts beyond its control including, without limitation, acts of God, terrorist acts, shortage of supply, breakdowns or malfunctions, interruptions or malfunction of computer facilities, or loss of data due to power failures or mechanical difficulties with information storage or retrieval systems, labor difficulties, war or civil unrest.

[*signature pages follow*]

26

#5204861.2

IN WITNESS WHEREOF, this Warrant Agreement has been duly executed by the parties hereto as of the date first above written.

**COMPANY:**

VENOCO, LLC

By: _____

Name: _____

Title: _____

SIGNATURE PAGE TO WARRANT AGREEMENT

#5204861.2

**HOLDERS:**

[●]


By:
Name:
Title:

SIGNATURE PAGE TO WARRANT AGREEMENT

#5204861.2

I-1

## SCHEDULE I

## INITIAL HOLDERS

| Name of Initial Holder | Address | Number of Series A Warrants |
|---|---|---|
| | | |

I-1

#5204861.2

**EXHIBIT A**

**Form of Exercise Notice**

Venoco, LLC
370 17th Street, Suite 3900
Denver, Colorado 80202-1370
Attention: Brian E. Donovan, General Counsel

Re: Series A Warrant Agreement dated as of [●], 2016 between Venoco, LLC (the "**Company**") and the Holders party thereto (as it may be supplemented or amended, the "**Warrant Agreement**")

The undersigned Holder hereby irrevocably (except to the extent specified below) elects to exercise the number of Series A Warrants set forth below registered in the name of the undersigned Holder:

Number of Series A Warrants exercised: _____

The undersigned Holder elects to receive the consideration deliverable upon such exercise of Series A Warrants pursuant to the following settlement method (check one):

[  ]  Full Physical Settlement

[  ]  Net Sale Settlement

If Full Physical Settlement is elected, the undersigned shall tender payment of the aggregate Exercise Price for all such Series A Warrants so exercised in accordance with instructions received from the Company.

Please check below if this exercise is contingent upon a registered public offering or a Sale Transaction in accordance with Section 3.02(d) of the Warrant Agreement.

[  ]  This exercise is being made in connection with a registered public offering or a Sale Transaction. In the event such transaction shall not be consummated, this exercise shall be deemed revoked.

TO BE EFFECTIVE THIS EXERCISE NOTICE MUST BE DELIVERED TO THE COMPANY PRIOR TO THE EXPIRATION DATE OR, TO THE EXTENT APPLICABLE, THE EARLIER DATE OF CANCELATION OF SUCH SERIES A WARRANTS PURSUANT TO SECTION 3.07 OF THE WARRANT AGREEMENT.

All capitalized terms used and not otherwise defined herein have the meanings given to such terms in the Warrant Agreement.

A-2

Executed by the undersigned Holder as of the date set forth below.

Name of Holder:_____

By (Signature):_____
Name:_____
Title:_____
Address:_____

_____

_____

Telephone Number:_____
Email Address:_____
Date:_____

A-2

#5204861.2

EXHIBIT B

**Form of Transfer Instruction**

Venoco, LLC
370 17th Street, Suite 3900
Denver, Colorado 80202-1370
Attention: Brian E. Donovan, General Counsel

Re: Series A Warrant Agreement dated as of [●], 2016 between Venoco, LLC (the "**Company**") and the Holders party thereto (as it may be supplemented or amended, the "**Warrant Agreement**")

The undersigned Holder hereby Transfers, upon effectiveness of such Transfer in accordance with the terms of the Warrant Agreement, to the Transferee named below the number of Series A Warrants set forth below registered in the name of the undersigned Holder and instructs the Company to register such Series A Warrants in the name of the Transferee on the Series A Warrant Register.

Number of Series A Warrants Transferred:_____

Transferee:

Name:_____
Address:_____
_____
_____

Contact Name and Title:_____
Telephone Number:_____
Facsimile Number:_____
Email Address:_____

All capitalized terms used and not otherwise defined herein have the meanings given to such terms in the Warrant Agreement.

Executed by the undersigned Holder as of the date set forth below.

Name of Holder:_____

By (Signature):_____
Name:_____
Title:_____
Address:_____
_____
_____

Telephone Number:_____
Email Address:_____
Date:_____

B-1

#5204861.2

**SERIES B WARRANT AGREEMENT**

**dated as of [●], 2016**

**between**

**VENOCO, LLC**

**and**

**the HOLDERS**
**from time to time parties hereto**

#5234859.1

TABLE OF CONTENTS

Page

Article 1      Definitions ....................................................................................................2
     Section 1.01   Certain Definitions ...............................................................................2

Article 2      Issuance, Registration and Transfer of Series B Warrants...................................7
     Section 2.01   Issuance of Series B Warrants..............................................................7
     Section 2.02   Book-Entry Form; Registration...........................................................7
     Section 2.03   Transfers of Series B Warrants ............................................................8

Article 3      Exercise and Settlement of Series B Warrants ....................................................9
     Section 3.01   Exercise of Series B Warrants..............................................................9
     Section 3.02   Procedure for Exercise........................................................................10
     Section 3.03   Settlement of Warrants .......................................................................10
     Section 3.04   Delivery of Units ................................................................................11
     Section 3.05   No Fractional Units to Be Issued .......................................................11
     Section 3.06   Validity of Exercise; Calculations......................................................11
     Section 3.07   Automatic Exercise or Cancelation of Series B Warrants in
                    Connection with Drag Transaction; Sale of Units in Drag
                    Transaction........................................................................................12
     Section 3.08   Acquisition of Warrants by Company .................................................12

Article 4      Adjustments ......................................................................................................12
     Section 4.01   Adjustments to Exercise Price ...........................................................12
     Section 4.02   Adjustments to Number of Series B Warrants.....................................16
     Section 4.03   Certain Distributions of Rights and Warrants......................................16
     Section 4.04   Stockholder Rights Plans ...................................................................17
     Section 4.05   Restrictions on Adjustments ..............................................................17
     Section 4.06   Successor upon Consolidation, Merger and Sale of Assets...................18
     Section 4.07   Adjustment upon Reorganization Event ..............................................19
     Section 4.08   Calculations.......................................................................................20
     Section 4.09   Notice of Adjustments .......................................................................20

Article 5      Other Provisions Relating to Rights of Holders .................................................20
     Section 5.01   No Rights as Unitholders....................................................................20
     Section 5.02   No Impairment; Units Reserved for Issuance ......................................21
     Section 5.03   Modification, Amendments and Waivers ............................................21
     Section 5.04   Notice of Certain Events.....................................................................22
     Section 5.05   Reports to Holders ..............................................................................22
     Section 5.06   Payment of Certain Taxes...................................................................23

Article 6      Miscellaneous ..................................................................................................23
     Section 6.01   Notices ...............................................................................................23
     Section 6.02   GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER
                    OF JURY TRIAL ................................................................................24

i

Section 6.03    Benefit of this Warrant Agreement ..........................................................25
Section 6.04    Headings ...............................................................................................25
Section 6.05    Counterparts .........................................................................................25
Section 6.06    Entire Agreement ..................................................................................25
Section 6.07    Severability ...........................................................................................25
Section 6.08    Termination ...........................................................................................25
Section 6.09    Publicity; Confidentiality......................................................................25
Section 6.10    Force Majeure .......................................................................................26

SCHEDULE I – INITIAL HOLDERS

EXHIBIT A – FORM OF EXERCISE NOTICE

EXHIBIT B – FORM OF TRANSFER INSTRUCTION

#5234859.1

THE SERIES B WARRANTS ISSUED PURSUANT TO THIS WARRANT AGREEMENT AND THE UNITS ISSUABLE UPON EXERCISE OF SUCH SERIES B WARRANTS HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER THE SECURITIES LAWS OF ANY STATE OR FOREIGN JURISDICTION AND MAY NOT BE TRANSFERRED OR OTHERWISE DISPOSED OF WITHOUT COMPLIANCE WITH APPLICABLE FEDERAL, STATE AND FOREIGN SECURITIES LAWS.  IN ADDITION, THE TRANSFER OR OTHER DISPOSITION OF SUCH SERIES B WARRANTS IS RESTRICTED AS PROVIDED IN THIS WARRANT AGREEMENT, AND THE TRANSFER OR OTHER DISPOSITION OF THE UNITS ISSUABLE UPON EXERCISE OF SUCH SERIES B WARRANTS IS RESTRICTED AS PROVIDED IN THE AMENDED AND RESTATED LIMITED LIABILITY COMPANY AGREEMENT OF VENOCO, LLC.

## SERIES B WARRANT AGREEMENT

THIS SERIES B WARRANT AGREEMENT (as it may be amended from time to time, this "**Warrant Agreement**"), dated as of [●], 2016, is made by and between Venoco, LLC, a Delaware limited liability company (the "**Company**"), and the Holders from time to time parties hereto.  Capitalized terms used and not otherwise defined in this Warrant Agreement have the meanings given to such terms in Section 1.01.

## RECITALS

WHEREAS, the Company is the successor in interest to Venoco, Inc. as the result of the conversion of Venoco, Inc. from a Delaware corporation to a Delaware limited liability company pursuant to the provisions of Section 266 of the General Corporation Law of the State of Delaware and Section 18-214 of the Act; and

WHEREAS, pursuant to the terms and conditions of the prearranged chapter 11 plan of reorganization (as amended, the "**Plan**") filed in the voluntary chapter 11 cases commenced by Venoco, Inc. and certain of its affiliates, the holders of Senior PIK Toggle Notes Claims (as defined in the Plan) are to be issued Series B Warrants, exercisable until the Expiration Date, to purchase up to an aggregate of [●][1] Units at an exercise price of $[●][2] per Unit (as such exercise price may be adjusted pursuant to Article 4 hereof (the "**Exercise Price**"); and

WHEREAS, the Series B Warrants and the underlying Units are being offered and sold in reliance on the exemption from the registration requirements of the Securities Act and any applicable state securities laws afforded by Section 1145(a) of the Bankruptcy Code.

NOW THEREFORE in consideration of the mutual agreements herein contained, the Company and the Holders agree as follows:

---

[1] To be 2% of the fully diluted number of Units outstanding at the effective date of the Plan, taking into account the Units issuable upon exercise of warrants issued pursuant to the Plan and Units issued or reserved for issuance under the Management Incentive Plan.

[2] To be equal to $691,411,000 divided by the number of Units actually issued on the effective date of the Plan.

**Article 1**
**Definitions**

Section 1.01   Certain Definitions. As used in this Warrant Agreement, the following terms shall have their respective meanings set forth below:

"**Act**" means the Delaware Limited Liability Company Act, as amended from time to time.

"**Action**" means any controversy, claim, action, litigation, arbitration, mediation or any other proceeding by or before any Governmental Authority, arbitrator, mediator or other Person acting in a dispute resolution capacity, or any investigation, subpoena or demand preliminary to any of the foregoing.

"**Asset Sale**" has the meaning set forth in Section 4.06(c).

"**Bankruptcy Code**" means chapter 11 of title 11 of the United States Code, as amended from time to time.

"**Board**" means the board of directors of the Company or any committee of such board duly authorized to exercise the power of the board of directors with respect to the matters provided for in this Warrant Agreement as to which the board of directors is authorized or required to act.

"**Business Day**" means any day other than (a) a Saturday or Sunday or (b) any day on which banking institutions in the State of New York or the State of Colorado are authorized or obligated by Law, regulation or executive order to close.

"**Buyer**" has the meaning set forth in Section 4.06(c).

"**Cash**" means such coin or currency of the United States as at any time of payment is legal tender for the payment of public and private debts.

"**Close of Business**" means 5:00 p.m., New York City time.

"**Closing Date**" means the effective date of the Plan.

"**Company**" has the meaning set forth in the introductory paragraph of this Warrant Agreement.

"**Convertible Securities**" means options, rights, warrants or other securities convertible into or exchangeable or exercisable for Units (including the Series B Warrants).

"**Drag Transaction**" has the meaning set forth in the LLC Agreement.

"**ERISA**" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

"**Exchange Act**" means the Securities Exchange Act of 1934, as amended from time to

2

time, and the related rules and regulations promulgated thereunder.

"**Exercise Date**" has the meaning set forth in Section 3.02(b).

"**Ex-Date**" means with respect to a dividend or distribution to holders of Units, the first date on which the Units can be traded without the right to receive such dividend or distribution.

"**Exercise Notice**" means, for any Series B Warrant, an exercise notice substantially in the form set forth as Exhibit A hereto.

"**Exercise Price**" has the meaning set forth in the Recitals of this Warrant Agreement.

"**Expiration Date**" means the Close of Business on [●], 2021.[3]

"**Fair Value**," as of a specified date, means the price per Unit, other Securities or other distributed property determined as follows (except as provided in Section 3.07):

(a)     in the case of Units or other Securities listed on the New York Stock Exchange or the NASDAQ Stock Market, the VWAP of a Unit or a single unit of such other Security for the 20 Trading Days ending on, but excluding, the specified date (or if the Units or other Securities have been listed for less than 20 Trading Days, the VWAP for such lesser period of time);

(b)     in the case of Units or other Securities not listed on the New York Stock Exchange or the NASDAQ Stock Market, the VWAP of a Unit or a single unit of such other Security in composite trading for the principal U.S. national or regional securities exchange on which such Securities are then listed for the 20 Trading Days ending on, but excluding, the specified date (or if the Units or other Securities have been listed for less than 20 Trading Days, the VWAP for such lesser period of time); or

(c)     in all other cases, the fair value per Unit, single unit of other Securities or other distributed property as of a date not earlier than 10 Business Days preceding the specified date as determined in good faith by the Board and, if the Board elects to engage the same, upon the advice of an independent investment banking, financial advisory or valuation firm or appraiser selected by the Board (a "**Representative**");

*provided, however*, that notwithstanding the foregoing, if the Board determines in good faith that the application of clause (a) or (b) of this definition would result in a VWAP based on the trading prices of a thinly-traded Security such that the price resulting therefrom may not represent an accurate measurement of the fair value of such Security, the Board at its election may apply the provisions of clause (c) of this definition in lieu of the applicable clause (a) or (b) with respect to the determination of the fair value of such Security.

"**Full Physical Settlement**" means the settlement method pursuant to which an exercising Holder shall be entitled to receive from the Company, for each Series B Warrant exercised, a number of Units equal to the Full Physical Share Amount in exchange for payment

---

[3] To be the fifth anniversary of the Closing Date.

3

in Cash by the exercising Holder of the Exercise Price.

"**Full Physical Share Amount**" means, for each Series B Warrant exercised as to which Full Physical Settlement is applicable, one Unit.

"**Fundamental Equity Change**" has the meaning set forth in Section 4.06(a).

"**Governmental Authority**" means the government of any nation, state, city, locality or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government (including any self regulatory organization) and any corporation or other entity owned or controlled, through stock or capital ownership or otherwise, by any of the foregoing.

"**Holder**" means, at any time, each Person in whose name Series B Warrants are registered in the Series B Warrant Register and who has become a party to this Warrant Agreement in accordance with Section 2.01(a) or Section 2.03(c), in each case as of such time.

"**Internal Revenue Code**" means the U.S. Internal Revenue Code of 1986, as amended, or any successor statute thereto.

"**Law**" means any federal, state, local, foreign or provincial law, statute, ordinance, rule, regulation, judgment, order, injunction, decree or agency requirement having the force of law or any undertaking to or agreement with any Governmental Authority, including common law.

"**LLC Agreement**" means the Amended and Restated Limited Liability Company Agreement of the Company dated as of the Closing Date, as amended or restated from time to time.

"**Management Incentive Plan**" has the meaning set forth in the Plan.

"**Member**" has the meaning set forth in the LLC Agreement.

"**Net Share Amount**" means for each Series B Warrant exercised as to which Net Share Settlement is applicable, a fraction of a Unit equal to (a) the Fair Value (as of the Exercise Date for such Series B Warrant) of one Unit minus the Exercise Price divided by (b) such Fair Value. The number of Units issuable upon exercise by a Holder, on the same Exercise Date, of Series B Warrants as to which Net Share Settlement is applicable shall be aggregated, with Cash paid in respect of any fractional Unit as provided in Section 3.05.

"**Net Share Settlement**" means the settlement method pursuant to which an exercising Holder shall be entitled to receive from the Company, for each Series B Warrant exercised, a number of Units equal to the Net Share Amount without any payment of Cash therefor.

"**Number of Series B Warrants**" means, as to each Holder at any time, the number of Series B Warrants outstanding and registered in the name of such Holder at such time, subject to adjustment pursuant to Article 4.

"**Offer Expiration Date**" has the meaning set forth in Section 4.01(c).

4

"**Open of Business**" means 9:00 a.m., New York City time.

"**Person**" means an individual, partnership, firm, corporation, limited liability company, business trust, joint stock company, trust, unincorporated association, joint venture, Governmental Authority or other entity of whatever nature.

"**Plan**" has the meaning set forth in the Recitals of this Warrant Agreement.

"**Record Date**" means, with respect to any dividend, distribution or other transaction or event in which the holders of Units have the right to receive, or in which Units are exchanged for or converted into, any Cash, Securities or other property or any combination of Cash, Securities or other property, the date fixed for determination of holders of Units entitled to receive such Cash, Securities or other property or participate in such exchange or conversion (whether such date is fixed by the Board, by statute, by contract or otherwise).

"**Reference Property**" has the meaning set forth in Section 4.07(a).

"**Reorganization Event**" has the meaning set forth in Section 4.07(a).

"**Representative**" has the meaning set forth in clause (c) of the definition of Fair Value.

"**Sale Transaction**" has the meaning set forth in the LLC Agreement.

"**SEC**" means the U.S. Securities and Exchange Commission, or any other federal agency at the time administering the Securities Act or the Exchange Act, whichever is the relevant statute for the particular purpose.

"**Securities**" means (a) any capital stock (whether common or preferred stock, voting or non-voting), partnership, membership or limited liability company interest or other equity or voting interest, (b) any right, option, warrant or other security or evidence of indebtedness convertible into, or exercisable or exchangeable for, directly or indirectly, any interest described in clause (a), (c) any notes, bonds, debentures, trust receipts and other obligations, instruments or evidences of indebtedness, and (d) any other "securities," as such term is defined or determined under the Securities Act.

"**Securities Act**" means the Securities Act of 1933, as amended from time to time, and the related rules and regulations promulgated thereunder.

"**Series B Warrant**" means a warrant of the Company exercisable for a single Unit as provided herein and issued pursuant to this Warrant Agreement with the terms, conditions and rights set forth herein.

"**Series B Warrant Register**" has the meaning set forth in Section 2.02(b).

"**Subsidiary**" means, as to any Person, any corporation, partnership, limited liability company or other organization, whether incorporated or unincorporated, of which at least a majority of the securities or other interests having by their terms voting power to elect a majority of the board of directors or others performing similar functions with respect to such corporation

5

or other organization is directly or indirectly beneficially owned or controlled by such party or by any one or more of its Subsidiaries, or by such party and one or more of its Subsidiaries.

"**Trading Day**" means each day other than a Saturday, a Sunday or any other day on which Securities are not traded on the applicable securities exchange.

"**Transfer**" means, with respect to any Series B Warrant, (a) when used as a verb, to directly or indirectly (whether by act, omission or operation of law), sell, exchange, transfer, hypothecate, negotiate, gift, convey in trust, pledge, assign, encumber, or otherwise dispose of, or by adjudication of a Person as bankrupt, by assignment for the benefit of creditors, by attachment, levy or other seizure by any creditor (whether or not pursuant to judicial process), or by passage or distribution of Series B Warrants under judicial order or legal process, carry out or permit the transfer or other disposition of, all or any portion of such Series B Warrant, or (b) when used as a noun, the act of Transferring such Series B Warrant as provided in clause (a) of this definition.

"**Transferee**" means a Person to whom any Series B Warrant is Transferred in accordance with the terms of this Warrant Agreement.

"**Transfer Instruction**" means, for any Series B Warrant, a transfer instruction substantially in the form set forth as Exhibit B hereto.

"**Trigger Event**" has the meaning set forth in Section 4.03(a).

"**Unit of Reference Property**" has the meaning set forth in Section 4.07(a).

"**Units**" has the meaning set forth in the LLC Agreement and, as used herein, means such Units of the same class and series as the Units issued on the Closing Date pursuant to the Plan.

"**VWAP**" means, for any Trading Day, the price for Securities (including Units) determined by the daily volume weighted average price per unit of such Securities for such Trading Day on the trading market on which such Securities are then listed or quoted, in each case, for the regular trading session (including any extensions thereof, without regard to pre-open or after hours trading outside of such regular trading session) as reported on the New York Stock Exchange or NASDAQ Stock Market, or if such Securities are not listed or quoted on the New York Stock Exchange or NASDAQ Stock Market, as reported by the principal U.S. national or regional securities exchange on which such Securities are then listed or quoted, whichever is applicable, as published by Bloomberg at 4:15 P.M., New York City time (or 15 minutes following the end of any extension of the regular trading session), on such Trading Day, or if such volume weighted average price is unavailable or in manifest error, the price per unit of such Securities using a volume weighted average price method selected by an independent nationally recognized investment bank or other qualified financial institution selected by the Board.

"**Warrant Agreement**" has the meaning set forth in the introductory paragraph of this Warrant Agreement.

6

#5234859.1

**Article 2**
**Issuance, Registration and Transfer of Series B Warrants**

Section 2.01    Issuance of Series B Warrants.

(a)    Pursuant to, and by virtue of the effectiveness of, the Plan, on the Closing Date each Person identified as an Initial Holder on Schedule I hereto is deemed (i) to have been issued the Number of Series B Warrants set forth for such Person on Schedule I hereto and (ii) to be a party to this Warrant Agreement in its entirety as the Holder of such Number of Series B Warrants and to be subject to all of the applicable terms and conditions set forth herein, in each case, without any further action by such Person or the Company and whether or not such Person executes this Warrant Agreement.  If any Series B Warrants issuable pursuant to the Plan are undeliverable as contemplated by Section 8.05(a) of the Plan, the Company may choose (x) not to issue such Series B Warrants until such Series B Warrants become deliverable in accordance with Section 8.05(a) of the Plan or (y) if the Company issued such Series B Warrants, to repurchase such Series B Warrants for no consideration and reissue such Series B Warrants at such time as such Series B Warrants become deliverable in accordance with Section 8.05(a) of the Plan.  If such Series B Warrants subsequently become deliverable in accordance with Section 8.05(a) of the Plan, then, at the time such Series B Warrants become deliverable, (i) such unissued or repurchased Series B Warrants shall be deemed to have been issued or reissued (as applicable) to the Person entitled thereto in accordance with Section 8.05(a) of the Plan and (ii) such Person shall be deemed to be a party to this Warrant Agreement in its entirety as the Holder of such Number of Series B Warrants and be subject to all of the applicable terms and conditions set forth herein without any further action by such Person or the Company and whether or not such Person executes this Agreement.  If such Series B Warrants do not subsequently become deliverable in accordance with Section 8.05(a) of the Plan, such Series B Warrants shall not be issued or reissued and the provisions regarding failure to claim undeliverable distributions set forth in Section 8.05(b) of the Plan shall govern.  The Company shall register the Series B Warrants deemed to have been issued or reissued pursuant to this Section 2.01(a) in the name of the Person to whom such Series B Warrants were issued or reissued in the Series B Warrant Register as of the Closing Date or the date of such subsequent issuance or reissuance, as applicable.

(b)    All Series B Warrants issued under this Warrant Agreement shall in all respects be equally and ratably entitled to the benefits hereof, without preference, priority or distinction on account of the actual time of the issuance and registration thereof.  Each Series B Warrant shall be, and shall remain, subject to the provisions of this Warrant Agreement until such time as such Series B Warrant shall have been duly exercised or shall have expired or been canceled in accordance with the terms hereof.

(c)    Any Series B Warrant that is repurchased or otherwise acquired by the Company shall be deemed to be no longer outstanding for all purposes of this Warrant Agreement.

Section 2.02    Book-Entry Form; Registration.

(a)    Except as provided in the next succeeding sentence, Series B Warrants will be issued in book-entry form only.  Certificates representing Series B Warrants will not be issued

7

unless required by Law or by the rules or procedures of any exchange, trading system, book-entry system or similar system or organization on or in which the Company may from time to time seek to have the Series B Warrants included.  If certificates representing Series B Warrants are to be issued in the foregoing circumstances, the Company shall amend this Warrant Agreement in accordance with Section 5.03(a) to include terms and provisions determined by the Company to be necessary or desirable to provide therefor, including adoption of an appropriate form or forms for definitive or global certificates representing Series B Warrants.

(b)     The Company shall cause to be kept and shall maintain a register (the "**Series B Warrant Register**") in which the Company shall provide for the registration of Series B Warrants and Transfers of Series B Warrants in accordance with this Warrant Agreement.  The Series B Warrant Register shall reflect the name and address of each registered Holder of Series B Warrants and the number of Series B Warrants held by such Holder.  The Company may deem and treat the Person in whose name Series B Warrants are registered in the Series B Warrant Register as the absolute owner thereof for all purposes whatsoever, and the Company shall not be affected by any notice to the contrary (other than notice of Transfer in accordance with the terms hereof).

Section 2.03     Transfers of Series B Warrants.

(a)     Subject to Section 2.03(b), Section 2.03(c) and Section 2.03(d), any Series B Warrant may be Transferred, entitling the Transferee (to the extent of such Transfer) to the same rights and benefits as the Transferring Holder is entitled to in respect of such Series B Warrant. Any Holder desiring to Transfer any Series B Warrants shall deliver to the Company a Transfer Instruction and any other evidence of authority that reasonably may be required by the Company, duly completed and executed by the Transferring Holder or its duly appointed legal representative or duly authorized attorney.  The Company may require that the Transfer Instruction include a signature guarantee from an eligible guarantor institution participating in a signature guarantee program approved by the Securities Transfer Association and may also require any other reasonable evidence of authority.  Subject to Section 2.03(b), Section 2.03(c) and Section 2.03(d), no later than three Business Days after receipt by the Company of a duly completed and executed Transfer Instruction, including a signature guarantee if so required, and any such other evidence of authority, the Company shall record such Transfer in the Series B Warrant Register, whereupon the Transferee (to the extent of such Transfer) shall become the Holder of such Series B Warrants and shall become a party to, and be bound by and entitled to the benefits of, this Warrant Agreement as the Holder of such Series B Warrants.  No service charge shall be made to a Holder for any registration of Transfer of Series B Warrants, but the Company may require payment of a sum sufficient to cover any transfer tax or governmental charge payable in connection therewith.

(b)     Each Holder acknowledges that the Series B Warrants and the Units issuable upon exercise thereof are being offered and sold pursuant to the exemption from the registration requirements of Section 5 of the Securities Act provided by Section 1145(a) of the Bankruptcy Code.  Notwithstanding anything in this Warrant Agreement to the contrary, no Transfer of Series B Warrants shall be made or become effective, and no such Transfer shall be recorded in the Series B Warrant Register, if the Company determines in good faith after consultation with counsel (which determination shall be final and binding) that: (i) such Transfer does not comply

8

in all respects with the applicable provisions of this Warrant Agreement; (ii) such Transfer, or the subsequent exercise by the Transferee of such Series B Warrants, does not or would not comply in all respects with applicable federal and state Law, including, without limitation, the Securities Act and other securities Laws and any applicable antitrust Laws; (iii) such Transfer, or the subsequent exercise by the Transferee of such Series B Warrants, requires or would require the registration or qualification of any Series B Warrants or Units pursuant to any applicable federal or state securities Law; (iv) such Transfer, or the subsequent exercise by the Transferee of such Series B Warrants, would cause the Company to have more than 2,000 holders of any class of equity securities or 500 unaccredited holders of any class of equity securities (determined in accordance with Section 12(g) of the Exchange Act); (v) such Transfer, or the subsequent exercise by the Transferee of such Series B Warrants, would cause the Company to become a reporting company under the Exchange Act or any other applicable federal or state securities Law; (vi) such Transfer, or the subsequent exercise by the Transferee of such Series B Warrants, would subject the Company to regulation under the Investment Company Act of 1940, the Investment Advisors Act of 1940 or ERISA; (vii) such Transfer, or the subsequent exercise by the Transferee of such Series B Warrants, is or would be a non-exempt "prohibited transaction" under ERISA or the Internal Revenue Code or would cause all or any portion of the assets of the Company to constitute "plan assets" under ERISA or Section 4975 of the Internal Revenue Code; or (viii) the Transferee is a Person listed on Schedule II to the LLC Agreement or an Affiliate (as defined in the LLC Agreement) thereof.

(c)     In connection with any Transfer of Series B Warrants pursuant to this Section 2.03, the Transferee of such Series B Warrants shall execute and deliver to the Company a counterpart of this Warrant Agreement or other writing acceptable to the Company confirming such Transferee's agreement to become a party to, and be bound by the terms of, this Warrant Agreement (to the extent of such Transfer).   Notwithstanding anything in this Warrant Agreement to the contrary, no Transfer of Series B Warrants shall be made or become effective, and no such Transfer shall be recorded in the Series B Warrant Register, unless and until the Company has received such duly executed counterpart or other writing.

(d)     Any Transfer or purported or attempted Transfer of Series B Warrants in violation of or noncompliance with the provisions of this Section 2.03 shall be null and void *ab initio*.

**Article 3**
**Exercise and Settlement of Series B Warrants**

Section 3.01   Exercise of Series B Warrants.   Each Series B Warrant (a) may be exercised by the Holder thereof in accordance with this Article 3 at any time prior to the Expiration Date or the earlier cancelation thereof pursuant to Section 3.07 and (b) shall automatically be exercised as provided in Section 3.07.   Any Series B Warrants not exercised prior to the Expiration Date shall expire unexercised, and all rights thereunder and all rights in respect thereof under this Warrant Agreement shall cease as of the Expiration Date.   Only whole Series B Warrants may be exercised.

9

Section 3.02    Procedure for Exercise.

(a)    To exercise Series B Warrants, the Holder thereof must (i) deliver to the Company an Exercise Notice duly completed and executed by such Holder or by its duly appointed legal representative or duly authorized attorney, (ii) if Full Physical Settlement is elected, pay to the Company an amount equal to the Exercise Price for each Series B Warrant to be exercised, together with all applicable taxes and charges related thereto, and (iii) if the exercising Holder is not then a Member, deliver to the Company a duly executed counterpart of the LLC Agreement or other writing acceptable to the Company confirming such Transferee's agreement to become a party to, and be bound by the terms of, the LLC Agreement and otherwise evidencing compliance with the applicable terms of the LLC Agreement.

(b)    The first Business Day on which all the requirements for exercise set forth in this Section 3.02 in respect of a Series B Warrant are satisfied is the "**Exercise Date**" for such Series B Warrant.

(c)    Subject to Section 3.02(d), any exercise of a Series B Warrant pursuant to the terms of this Warrant Agreement shall be irrevocable and enforceable in accordance with its terms.

(d)    Notwithstanding any other provision of this Warrant Agreement, if the exercise of any Series B Warrant is to be made in connection with a registered public offering or a Sale Transaction, such exercise may, upon proper election in the Exercise Notice, be conditioned upon consummation of such transaction or event, in which case such exercise shall not be deemed effective until the consummation of such transaction or event.

(e)    Payment of the Exercise Price by a Holder upon exercise of Series B Warrants, in the case of Full Physical Settlement, shall be by federal wire or other transfer of immediately available funds to the account designated by the Company for such payment.  The Company shall provide an exercising Holder, upon request, with the appropriate payment instructions.

Section 3.03    Settlement of Warrants.

(a)    Full Physical Settlement shall apply to the exercise of each Series B Warrant unless (i) the exercising Holder elects for Net Share Settlement to apply upon exercise of such Series B Warrant, with such election to be made in the Exercise Notice for such Series B Warrant or (ii) such exercise is an automatic exercise pursuant to Section 3.07.

(b)    If Full Physical Settlement applies to the exercise of a Series B Warrant, upon the proper and valid exercise thereof by the Holder thereof, the Company shall cause to be delivered to the exercising Holder the Full Physical Settlement Amount.

(c)    If Net Share Settlement applies to the exercise of a Series B Warrant, upon the proper and valid exercise thereof by the Holder thereof, the Company shall cause to be delivered to the exercising Holder the Net Share Amount, together with Cash in lieu of any fractional Unit as provided in Section 3.05.

10

#5234859.1

Section 3.04   Delivery of Units.

(a)   With respect to Series B Warrants properly exercised in accordance with this Warrant Agreement, the Company shall, as promptly as practicable but in any event within three Business Days after the applicable Exercise Date, issue or, if applicable, cause the transfer agent for the Units to issue, in book-entry form or such other form as may be specified by the LLC Agreement, the Units due in connection with such exercise in the name of the exercising Holder, whereupon such Holder shall be admitted as a Member in respect of such Units as of the applicable Exercise Date (to the extent such Holder was not already a Member on such Exercise Date) in accordance with the terms of the LLC Agreement, and the Holder in whose name such Units are registered shall for all purposes be deemed to have become the holder of record of such Units as of the Close of Business on the applicable Exercise Date.

(b)   Promptly after the delivery of Units pursuant to Section 3.04(a), the Company shall reflect the exercise and cancelation of the exercised Series B Warrants in the Series B Warrant Register.

Section 3.05   No Fractional Units to Be Issued.

(a)   Notwithstanding anything to the contrary in this Warrant Agreement, the Company shall not be required to issue any fraction of a Unit upon exercise of any Series B Warrants.

(b)   If any fraction of a Unit would, except for the provisions of this Section 3.05, be issuable on the exercise of any Series B Warrants, the Company shall instead pay to the Holder exercising such Series B Warrants Cash in an amount equal to the quotient determined by multiplying the Fair Value of one Unit on the related Exercise Date by such fraction.  All Series B Warrants exercised by a Holder on the same Exercise Date shall be aggregated for purposes of determining the number of Units to be delivered pursuant to Section 3.04(a) and Cash in lieu of any fractional Unit pursuant to this Section 3.05.

(c)   Each Holder, by accepting Series B Warrants and becoming a party to this Warrant Agreement, expressly waives its right to any fraction of a Unit upon its exercise of such Series B Warrants in favor of the Cash payment contemplated by this Section 3.05.

Section 3.06   Validity of Exercise; Calculations.  All questions as to the validity, form and sufficiency (including time of receipt) of a Series B Warrant exercise shall be determined by the Company, which determination shall be final and binding on the Holder thereof.  The Company reserves the absolute right to waive any of the conditions to the exercise of Series B Warrants or defects in Exercise Notices with regard to any particular exercise of Series B Warrants.  The Company shall be responsible for performing all calculations required in connection with the exercise and settlement of Series B Warrants as described in this Article 3, and the Company's calculations shall be final and binding on the Holder thereof absent manifest error.

#5234859.1

Section 3.07    <u>Automatic Exercise or Cancelation of Series B Warrants in Connection with Drag Transaction; Sale of Units in Drag Transaction</u>.

(a)    If any Series B Warrants remain outstanding and unexercised immediately prior to the consummation of a Drag Transaction, then, immediately prior to (but subject to) the consummation of such Drag Transaction:

(i)    if the Fair Value of a Unit (determined as provided in <u>Section 3.07(b)</u>) is greater than the Exercise Price then in effect, there shall be exercised automatically, without any action on the part of the Holder thereof and with Net Share Settlement applying to such exercise, a number of Series B Warrants held by each Holder of Series B Warrants that is equal to the number of Units that such Holder would be required to sell or otherwise dispose of in such Drag Transaction pursuant to the terms of LLC Agreement if such Holder had exercised all Series B Warrants held by such Holder on a Net Share Settlement basis immediately prior to the consummation of such Drag Transaction, and the Units issued upon such exercise shall be sold or otherwise disposed of on the same terms as the other Units subject to such Drag Transaction as provided in the LLC Agreement; or

(ii)    if the Fair Value of a Unit (determined as provided in <u>Section 3.07(b)</u>) is less than the Exercise Price then in effect, there shall be canceled, and all rights thereunder and all rights in respect thereof under this Warrant Agreement shall cease, a number of Series B Warrants held by each Holder of Series B Warrants that is equal to the number of Units that such Holder would be required to sell or otherwise dispose of in such Drag Transaction pursuant to the terms of LLC Agreement if such Holder had exercised all Series B Warrants held by such Holder on a Full Physical Settlement basis immediately prior to the consummation of such Drag Transaction.

(b)    Notwithstanding the definition of Fair Value set forth in <u>Section 1.01</u>, for purposes of this <u>Section 3.07</u>, the Fair Value of a Unit shall be equal to the amount of Cash consideration and/or the Fair Value of consideration in the form of Securities or other property payable in respect of one Unit pursuant to the applicable Drag Transaction.

(c)    For the avoidance of doubt, in the event that the provisions of this <u>Section 3.07</u> result in the exercise or cancelation of all outstanding Series B Warrants in connection with a Drag Transaction, then no adjustments or other accommodations in respect of the Series B Warrants that would otherwise be required to be made pursuant to <u>Article 4</u> in connection with such Drag Transaction shall be made.

Section 3.08    <u>Acquisition of Warrants by Company</u>.  The Company shall have the right, except as limited by Law, to purchase or otherwise to acquire one or more Series B Warrants at such times, in such manner and for such consideration as it may deem appropriate.

**Article 4**
**Adjustments**

Section 4.01    <u>Adjustments to Exercise Price</u>.  After the date on which Series B Warrants are first issued and while any Series B Warrants remain outstanding and unexpired, the Exercise

Price shall be subject to adjustment (without duplication) upon the occurrence of any of the following events:

(a)   The issuance of Units as a dividend or distribution to all holders of Units, or a subdivision, combination, split, reverse split or reclassification of the outstanding Units into a greater or smaller number of Units, in which event the Exercise Price shall be adjusted based on the following formula:

$$E_1 = E_0 \times \frac{N_0}{N_1}$$

where:

$E_1$ = the Exercise Price in effect immediately after (i) the Open of Business on the Ex-Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification;

$E_0$ = the Exercise Price in effect immediately prior to (i) the Open of Business on the Ex-Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification;

$N_0$ = the number of Units outstanding immediately prior to (i) the Open of Business on the Record Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification; and

$N_1$ = the number of Units equal to (i) in the case of a dividend or distribution, the sum of the number of Units outstanding immediately prior to the Open of Business on the Record Date for such dividend or distribution plus the total number of Units issued pursuant to such dividend or distribution or (ii) in the case of a subdivision, combination, split, reverse split or reclassification, the number of Units outstanding immediately after such subdivision, combination, split, reverse split or reclassification.

Such adjustment shall become effective immediately after (i) the Open of Business on the Ex-Date in the case of a dividend or distribution or (ii) the consummation of the transaction in the case of a subdivision, combination, split, reverse split or reclassification.  If any dividend or distribution or subdivision, combination, split, reverse split or reclassification of the type described in this Section 4.01(a) is declared or announced but not so paid or made, the Exercise Price shall again be adjusted to the Exercise Price that would then be in effect if such dividend or distribution or subdivision, combination, split, reverse split or reclassification had not been declared or announced, as the case may be.

(b)   The issuance as a dividend or distribution to all holders of Units of evidences of indebtedness, Securities of the Company or any other Person (other than Units), Cash or other property (excluding any dividend or distribution covered by Section 4.01(a) or any regularly

13

declared and paid Cash dividends), in which event the Exercise Price will be adjusted based on the following formula:

$$E_1 = E_0 \times \frac{P - FMV}{P}$$

where:

| | | |
|---|---|---|
| $E_1$ | = | the Exercise Price in effect immediately after the Open of Business on the Ex-Date for such dividend or distribution; |
| $E_0$ | = | the Exercise Price in effect immediately prior to the Open of Business on the Ex-Date for such dividend or distribution; |
| $P$ | = | the Fair Value of a Unit as of immediately prior to the Open of Business on the second Business Day preceding the Ex-Date for such dividend or distribution; and |
| $FMV$ | = | the Fair Value of the portion of such dividend or distribution applicable to one Unit as of the Open of Business on the date of such dividend or distribution. |

Such adjustment shall become effective immediately after the Open of Business on the Ex-Date for such dividend or distribution. In the event that such dividend or distribution is declared or announced but not so paid or made, the Exercise Price shall again be adjusted to be the Exercise Price that would then be in effect if such distribution had not been declared or announced.

(c)     The payment in respect of any tender offer or exchange offer by the Company or any of its Subsidiaries for Units, where the Cash and Fair Value of any other consideration included in the payment per Unit exceeds the Fair Value of a Unit as of the Open of Business on the second Business Day preceding the expiration date of the tender or exchange offer (the "**Offer Expiration Date**"), in which event the Exercise Price will be adjusted based on the following formula:

$$E_1 = E_0 \times \frac{(N_0 \times P) - A}{(P \times N_1)}$$

where:

| | | |
|---|---|---|
| $E_1$ | = | the Exercise Price in effect immediately after the Close of Business on the Offer Expiration Date; |
| $E_0$ | = | the Exercise Price in effect immediately prior to the Close of Business on the Offer Expiration Date; |
| $N_0$ | = | the number of Units outstanding immediately prior to the expiration of the tender or exchange offer (prior to giving effect to the purchase or exchange |

14

of Units);

$N_1$    =    the number of Units outstanding immediately after the expiration of the tender or exchange offer (after giving effect to the purchase or exchange of Units);

A    =    the aggregate Cash and Fair Value of any other consideration payable for Units purchased in such tender offer or exchange offer; and

P    =    the Fair Value of a Unit as of the Open of Business on the second Business Day preceding the Offer Expiration Date.

An adjustment, if any, to the Exercise Price pursuant to this Section 4.01(c) shall become effective immediately after the Close of Business on the Offer Expiration Date.  In the event that the Company or a Subsidiary of the Company is obligated to purchase Units pursuant to any such tender offer or exchange offer, but the Company or such Subsidiary is permanently prevented by applicable Law from effecting any such purchases, or all such purchases are rescinded, then the Exercise Price shall again be adjusted to be the Exercise Price that would then be in effect if such tender offer or exchange offer had not been made.  Except as set forth in the preceding sentence, if the application of this Section 4.01(c) to any tender offer or exchange offer would result in an increase in an Exercise Price, no adjustment shall be made for such tender offer or exchange offer under this Section 4.01(c).

(d)    If any single action would require adjustment of the Exercise Price pursuant to more than one subsection of this Section 4.01, only one adjustment to the Exercise Price shall be made, and such adjustment shall be the amount of adjustment that has the highest, relative to the rights and interests of the Holders of the Series B Warrants then outstanding, absolute value.

(e)    For the purpose of calculations pursuant to this Article 4, the number of Units outstanding shall be equal to the sum of (i) the number of Units issued and outstanding (excluding any Units held, directly or indirectly, by the Company or any of its Subsidiaries) and (ii) the number of Units issuable pursuant to the conversion or exercise of Convertible Securities that are outstanding, in each case on the applicable date of determination.

(f)    The Company may from time to time, to the extent permitted by Law, decrease the Exercise Price and/or increase the Number of Series B Warrants by any amount for any period of at least twenty days.  In that case, the Company shall give the Holders at least ten days' prior written notice of such increase or decrease, and such notice shall state the decreased Exercise Price and/or increased Number of Series B Warrants and the period during which the decrease and/or increase will be in effect.  The Company may make such decreases in the Exercise Price and/or increases in the Number of Series B Warrants, in addition to those set forth in this Article 4, as the Board deems advisable, including to avoid or diminish any income tax to holders of Units resulting from any dividend or distribution of equity Securities (or rights to acquire equity Securities) or from any event treated as such for income tax purposes.

(g)    Notwithstanding this Section 4.01 or any other provision of this Warrant Agreement, if an Exercise Price adjustment becomes effective on any Ex-Date, and a Series B Warrant has been exercised on or after such Ex-Date and on or prior to the related Record Date

15

#5234859.1

resulting in the Person issued Units being treated as the record holder of the Units on or prior to the Record Date, then, notwithstanding the Exercise Price adjustment provisions in this Section 4.01, the Exercise Price adjustment relating to such Ex-Date will not be made with respect to such Series B Warrant.  Instead, such Person will be treated as if it were the record owner of Units on an un-adjusted basis and participate in the related dividend, distribution or other event giving rise to such adjustment.

Section 4.02   Adjustments to Number of Series B Warrants.  Concurrently with any adjustment to the Exercise Price under Section 4.01, except to the extent pursuant to Section 4.01(d), the Number of Series B Warrants will be adjusted such that the Number of Series B Warrants in effect immediately following the effectiveness of such adjustment will be equal to the Number of Series B Warrants in effect immediately prior to such adjustment, multiplied by a fraction, (i) the numerator of which is the Exercise Price in effect immediately prior to such adjustment and (ii) the denominator of which is the Exercise Price in effect immediately following such adjustment.  The Company shall reflect in the Series B Warrant Register any adjustments or readjustments to the Number of Series B Warrants made pursuant to the this Article 4.

Section 4.03   Certain Distributions of Rights and Warrants.

(a)   Rights or warrants distributed by the Company to all holders of Units entitling the holders thereof to subscribe for or purchase the Company's Securities (either initially or under certain circumstances), which rights or warrants, until the occurrence of a specified event or events (a "**Trigger Event**"):

(i)   are deemed to be transferred with such Units;

(ii)   are not exercisable; and

(iii)   are also issued in respect of future issuances of Units,

shall be deemed not to have been distributed for purposes of Article 4 (and no adjustment to the Exercise Price or the Number of Series B Warrants under this Article 4 will be made) until the occurrence of the earliest Trigger Event, whereupon such rights and warrants shall be deemed to have been distributed and an appropriate adjustment (if any is required) to the Exercise Price and the Number of Series B Warrants shall be made under this Article 4 (subject in all respects to Section 4.04).

(b)   If any such right or warrant is subject to events upon the occurrence of which such rights or warrants become exercisable to purchase different Securities, evidences of indebtedness or other assets, then the date of the occurrence of any and each such event shall be deemed to be the date of distribution and Record Date with respect to new rights or warrants with such rights (subject in all respects to Section 4.04).

(c)   In addition, except as set forth in Section 4.04, in the event of any distribution (or deemed distribution) of rights or warrants, or any Trigger Event or other event (of the type described in Section 4.03(b)) with respect thereto that was counted for purposes of calculating a

16

distribution amount for which an adjustment to the Exercise Price and the Number of Series B Warrants under Article 4 was made (including any adjustment contemplated in Section 4.04):

(i)        in the case of any such rights or warrants that shall all have been redeemed or repurchased without exercise by the holders thereof, the Exercise Price and the Number of Series B Warrants shall be readjusted upon such final redemption or repurchase to give effect to such distribution or Trigger Event, as the case may be, as though it were a distribution under Section 4.01(b), equal to the per share redemption or repurchase price received by a holder or holders of Units with respect to such rights or warrants (assuming such holder had retained such rights or warrants), made to all holders of Units as of the date of such redemption or repurchase; and

(ii)        in the case of such rights or warrants that shall have expired or been terminated without exercise by the holders thereof, the Exercise Price and the Number of Series B Warrants shall be readjusted as if such rights and warrants had not been issued or distributed.

Section 4.04    Stockholder Rights Plans.  If the Company has a stockholder or unitholder rights plan in effect with respect to the Units, upon exercise of a Series B Warrant the holder shall be entitled to receive, in addition to the Units, the rights under such rights plan, unless, prior to such exercise, such rights have separated from the Units, in which case the Exercise Price and the Number of Series B Warrants shall be adjusted at the time of separation as if the Company had made a distribution to all holders of Units as described in Section 4.01(b), subject to readjustment in the event of the expiration, termination or redemption of such rights.

Section 4.05    Restrictions on Adjustments.

(a)        Except in accordance with Section 4.01, the Exercise Price and the Number of Series B Warrants will not be adjusted for the issuance of Units or other Securities of the Company.

(b)        For the avoidance of doubt, neither the Exercise Price nor the Number of Series B Warrants will be adjusted:

(i)        upon the issuance of any Securities by the Company on or after the Closing Date pursuant to the Plan or upon the issuance of Units upon the exercise of such Securities;

(ii)        upon the issuance of any Units, Convertible Securities or other Securities or any payments pursuant to the Management Incentive Plan or any other equity incentive plan of the Company;

(iii)        upon the offer and sale of Units by the Company in a primary offering for Cash at a price that is less than Fair Value for Units at the time of such offer and sale; or

(iv)        upon the issuance of Units or other Securities of the Company in connection with a business acquisition transaction (except to the extent otherwise expressly required by this Warrant Agreement).

17

(c)      No adjustment shall be made to the Exercise Price or the Number of Series B Warrants for any of the transactions described in Section 4.01 if the Company makes provisions for participation in any such transaction with respect to Series B Warrants without exercise of such Series B Warrants on the same basis as with respect to Units, with notice to the Holders that the Board determines in good faith to be fair and appropriate.

(d)      No adjustment shall be made to the Exercise Price, nor will any corresponding adjustment be made to the Number of Series B Warrants, unless the adjustment would result in a change of at least 1% of the Exercise Price; *provided, however*, that any adjustment of less than 1% that was not made by reason of this Section 4.05(d) shall be carried forward and made as soon as such adjustment, together with any other adjustments not previously made by reason of this Section 4.05(d), would result in a change of at least 1% in the aggregate.  All calculations under this Article 4 shall be made to the nearest cent or to the nearest 1/100th of a Unit, as the case may be.

(e)      If the Company takes a record of the holders of Units for the purpose of entitling them to receive a dividend or other distribution, and thereafter (and before the dividend or distribution has been paid or delivered to holders of Units) legally abandons its plan to pay or deliver such dividend or distribution, then thereafter no adjustment to the Exercise Price or the Number of Series B Warrants then in effect shall be required by reason of the taking of such record.

Section 4.06      Successor upon Consolidation, Merger and Sale of Assets.

(a)      Subject to Section 3.07, the Company may consolidate or merge with another Person (a "**Fundamental Equity Change**") only if (i) the Company is the surviving Person or (ii) if the Company is not the surviving Person, then:

(1)      the successor to the Company assumes all of the Company's obligations under this Warrant Agreement and the Series B Warrants; and

(2)      the successor to the Company provides written notice of such assumption to each Holder promptly following the Fundamental Equity Change.

(b)      Subject to Section 3.07, in the case of a Fundamental Equity Change, the successor Person to the Company shall succeed to and be substituted for the Company with the same effect as if it had been named herein as the Company, and the Company shall thereupon be released from all obligations and covenants under this Warrant Agreement and the Series B Warrants.  Such successor Person shall provide to each Holder in writing appropriate identifying corporate or other entity information.  Such successor Person thereafter may issue any or all of the Series B Warrants issuable pursuant to this Warrant Agreement which theretofore shall not have been issued by the Company.

(c)      Subject to Section 3.07, if the Company desires to sell, lease, convey or otherwise Transfer in one transaction or a series of related transactions all or substantially all of the consolidated assets of the Company and its Subsidiaries (an "**Asset Sale**"), the Company may only consummate such Asset Sale if the Person to which such assets are sold, leased, conveyed or otherwise Transferred (the "**Buyer**") agrees (i) to enter into a warrant agreement in form and

18

substance substantially similar to this Warrant Agreement and (ii) to issue warrants for equity in such Buyer to the Holders on terms (including economic) and conditions substantially similar to the Series B Warrants (taking into account any Series B Warrants that are exercised prior to the consummation of such Asset Sale and taking into account the materiality of the transferred assets to the total assets and operations of the Buyer, taken as a whole).

Section 4.07    Adjustment upon Reorganization Event.

(a)    Subject to Section 3.07, if there occurs any Fundamental Equity Change or any recapitalization, reorganization, consolidation, reclassification, change in the outstanding Units (other than changes resulting from a subdivision or combination to which Section 4.01(a) applies), statutory share exchange or other transaction (each such event a "**Reorganization Event**"), in each case as a result of which the Units would be converted into, changed into or exchanged for, other Securities, other property or assets (including Cash) or any combination thereof (the "**Reference Property**") while any Series B Warrants remain outstanding and unexpired, then following the effective time of the Reorganization Event, the right to receive Units upon exercise of a Series B Warrant shall be changed to a right to receive, upon exercise of such Series B Warrant, the kind and amount of Securities, other property or assets (including Cash) or combination thereof that a holder of one Unit would have owned or been entitled to receive in connection with such Reorganization Event (such kind and amount of Reference Property per Unit, a "**Unit of Reference Property**").  In the event holders of Units have the opportunity to elect the form of consideration to be received in a Reorganization Event, the type and amount of consideration into which the Series Warrants shall be exercisable from and after the effective time of such Reorganization Event shall be deemed to be the weighted average of the types and amounts of consideration received by the holders of Units in such Reorganization Event.  Subject to Section 3.07, the Company hereby agrees not to become a party to any Reorganization Event unless its terms are consistent with this Section 4.07.

(b)    Subject to Section 3.07, at any time from, and including, the effective time of a Reorganization Event:

(i)    each Series B Warrant shall be exercisable for a single Unit of Reference Property instead of one Unit; and

(ii)    the Fair Value shall be calculated with respect to a Unit of Reference Property.

(c)    Subject to Section 3.07, on or prior to the effective time of any Reorganization Event, the Company or the successor or purchasing Person, as the case may be, shall execute an amendment to this Warrant Agreement providing that the Series B Warrants shall be exercisable for Units of Reference Property in accordance with the terms of this Section 4.07.  If the Reference Property in connection with any Reorganization Event includes Securities or assets of a Person other than the successor or purchasing Person, as the case may be, in such Reorganization Event, then the Company shall cause such amendment to this Warrant Agreement to be executed by such other Person and such amendment shall contain such additional provisions to protect the interests of the Holders as the Board shall reasonably consider necessary by reason of the foregoing.  Any such amendment to this Warrant Agreement

19

shall provide for adjustments which shall be as nearly equivalent as may be practicable to the adjustments provided for in this Article 4. In the event the Company shall execute an amendment to this Warrant Agreement pursuant to this Section 4.07, the Company shall, within 20 Business Days after execution thereof, deliver to each Holder written notice stating the reasons therefor, the kind or amount of Cash, securities or property or assets that will comprise a Unit of Reference Property after the relevant Reorganization Event, any adjustment to be made with respect thereto and that all conditions precedent set forth herein have been complied with.

(d) The above provisions of this Section 4.07 shall similarly apply to successive Reorganization Events.

(e) If this Section 4.07 applies to any event or occurrence, no other provision of this Article 4 shall apply to such event or occurrence (other than Section 4.06).

Section 4.08 Calculations.

(a) Subject to Section 4.08(b), the Company shall be responsible for making all calculations called for under this Article 4 for purposes of determining any adjustments to the Exercise Price and the Number of Series B Warrants, including determinations as to Fair Value and the composition of Units of Reference Property. Such calculations and determinations shall be final and binding on the Holders absent manifest error.

(b) In the event the Board engages a Representative to advise it with respect to the determination of Fair Value, the Board shall be entitled to rely upon the determination of such Representative. The Company shall pay the fees and expenses of any Representative.

Section 4.09 Notice of Adjustments. The Company shall deliver, or cause to be delivered, to each Holder written notice of any adjustment or readjustment to the Exercise Price or the Number of Series B Warrants no less than three Business Days prior to the effective date of such adjustment or readjustment, which notice shall set forth such adjustment or readjustment and the kind and amount of securities, Cash or other property for which a Series B Warrant shall thereafter be exercisable, the Exercise Price and the Number of Series B Warrants, showing in reasonable detail the facts upon which such adjustment or readjustment is based. Such notice shall be conclusive evidence that the adjustment or readjustment is correct absent manifest error.

**Article 5**
**Other Provisions Relating to Rights of Holders**

Section 5.01 No Rights as Unitholders. Nothing contained in this Warrant Agreement shall be construed as conferring upon any Person, by virtue of holding Series B Warrant, the right to vote, to consent, to receive any dividends or distributions of Cash, Securities or other property, allotments or rights paid, allotted or distributed or distributable to the holders of Units, or to exercise any rights whatsoever as a holder of Units or Member unless, until and only to the extent such Person becomes a holder of record of Units issued upon exercise and settlement of Series B Warrants.

20

Section 5.02   <u>No Impairment; Units Reserved for Issuance</u>.

(a)   The Company shall not by any action, including, without limitation, amending its certificate of formation, LLC Agreement or other organizational documents or through any reorganization, transfer of assets, consolidation, merger, dissolution, issuance or sale of securities or any other voluntary action, avoid or seek to avoid the observance or performance of any of the terms of this Warrant Agreement or any Series B Warrants.  Without limiting the generality of the foregoing, the Company will not at any time, except upon dissolution, liquidation or winding up of the Company, close the Series B Warrant Register or its Unit transfer books so as to result in preventing or delaying the exercise or Transfer of any Series B Warrant.

(b)   The Company represents and warrants to each Holder that there have been authorized and reserved for issuance, by all necessary action by or on behalf of the Company under the LLC Agreement and the Act, such number of Units as will be issuable upon the exercise of all outstanding Series B Warrants.  The Company agrees to take such further action as may be necessary from time to time to authorize and reserve for issuance, and to direct any transfer agent for the Units to reserve for issuance, such number of Units as will be issuable upon the exercise of all outstanding Series B Warrants and shall take all action required to increase the authorized number of Units if at any time there shall be insufficient authorized but unissued Units to permit such reservation or to permit the exercise of all Series B Warrants.  The Company covenants that all Units that shall be so issuable shall be duly and validly issued, fully paid and non-assessable (except as such non-assessability may be affected by Sections 18-303, 18-607 and 18-804 of the Act).

Section 5.03   <u>Modification, Amendments and Waivers</u>.

(a)   This Warrant Agreement may be modified or amended by the Company, without the consent of the Holders:

(i)   to cure any ambiguity or correct or supplement any defective provision contained in this Warrant Agreement;

(ii)   to provide for Series B Warrants to be represented by definitive or global certificates as contemplated by <u>Section 2.02(a)</u>;

(iii)   to provide for the appointment by the Company of another Person as transfer agent or registrar for the Series B Warrants, *provided* that if such other Person is not a Subsidiary of the Company, such Person shall be a transfer agent that is registered in accordance Section 17A(c) of the Exchange Act; and

(iv)   to make any other provisions in regard to matters or questions arising in this Warrant Agreement that the Company may deem necessary or desirable; *provided* that such modification or amendment does not adversely affect the interests of the Holders in any material respect.

(b)   Modifications and amendments to this Warrant Agreement or to the terms and conditions of Series B Warrants not contemplated by <u>Section 5.03(a)</u> also may be made by the Company with, and noncompliance with any provision of the Warrant Agreement may be

#5234859.1

waived by, the written consent of the Holders of a majority of the Series B Warrants at the time outstanding.

(c)      Notwithstanding the foregoing provisions of this Section 5.03, no modification, amendment or waiver may, without the written consent of each Holder:

(i)      change the Expiration Date;

(ii)      increase the Exercise Price or decrease the Number of Series B Warrants (except as set forth in Article 4);

(iii)      impair the right of the Holders to institute suit for the enforcement of any payment or delivery with respect to the exercise and settlement of any Series B Warrant;

(iv)      except as otherwise expressly permitted by provisions of this Warrant Agreement concerning specified reclassifications or corporate reorganizations, impair or adversely affect the exercise rights with respect to Series B Warrants, including any change to the calculation or payment of the number of Units deliverable upon exercise of each Series B Warrant; or

(v)      reduce the percentage of Series B Warrants outstanding necessary to modify or amend this Warrant Agreement or to waive any noncompliance with the terms of this Warrant Agreement.

Section 5.04      Notice of Certain Events.   In the event of any Drag Transaction, Sale Transaction, Asset Sale, Fundamental Equity Change or other Reorganization Event, then, and in each such case, the Company will deliver or cause to be delivered to each Holder, at least 15 days prior to the date of consummation of such transaction or event, a notice specifying the date on which the consummation of such transaction or event is or is expected to take place, and the time, if any is to be fixed, as of which the holders of record of Units shall be entitled to exchange their Units for Cash, Securities or other property deliverable in respect thereof upon consummation of such transaction or event.

Section 5.05      Reports to Holders.   The Company shall deliver to each Holder:

(a)      as soon as available, but in any event not later than 120 days after the end of each fiscal year of the Company, a copy of the audited consolidated balance sheet of the Company and its Subsidiaries as of the end of such fiscal year and the related statements of operations and cash flows for such fiscal year, prepared in accordance with GAAP and accompanied by the opinion of a nationally recognized independent certified public accounting firm; and

(b)      as soon as available, but in any event not later than 60 days after the end of each of the first three fiscal quarters of each fiscal year of the Company, the unaudited consolidated balance sheet of the Company and its Subsidiaries, and the related statements of operations and cash flows for such quarter and for the period commencing on the first day of the fiscal year and ending on the last day of such quarter, all certified by an appropriate officer of the Company as presenting fairly the consolidated financial condition as of such date and results of operations

22

and cash flows for the periods indicated in conformity with GAAP applied on a consistent basis, subject to normal year-end adjustments and the absence of footnotes required by GAAP.

Section 5.06    Payment of Certain Taxes.

(a)    The Company shall pay any and all documentary, stamp or similar issue or transfer taxes that may be payable upon the initial issuance of Series B Warrants.

(b)    The applicable Holder shall pay any and all documentary, stamp or similar issue or transfer taxes that may be payable upon the exercise or Transfer of Series B Warrants.

**Article 6**
**Miscellaneous**

Section 6.01    Notices.  Any notice, request, demand or other communication (including any Exercise Notice or Transfer Instruction) required or permitted by this Warrant Agreement to be given or made hereunder by any party hereto shall be in writing and shall be deemed to have been duly given or made if (i) delivered personally, (ii) transmitted by first class registered or certified mail, postage prepaid, return receipt requested, (iii) sent by prepaid overnight courier service, (iv) sent by facsimile transmission, or (v) sent by email (provided that no electronic notice of non-delivery is received by the sender) to the applicable party as follows (or as otherwise communicated to the parties by like notice):

If to the Company, to:

Venoco, LLC
370 17th Street, Suite 3900
Denver, Colorado 80202-1370
Attention: Brian E. Donovan, General Counsel
Facsimile: (303) 626-8315
Email: be.donovan@venocoinc.com

If to any Holder, to such Holder at the last address, facsimile number or email address of such Holder as it shall appear on the Series B Warrant Register.

Any such notice, request, demand or other communication shall be deemed to have been given or made (i) if delivered personally or sent by courier service, upon actual receipt by the intended recipient, (ii) if mailed, on the earlier of five Business Days after deposit in the mail or the date of delivery as shown by the return receipt therefor, or (iii) if sent by facsimile transmission or email, on the day on which the facsimile is transmitted or the email is sent or, if such day is not a Business Day or if such facsimile is transmitted or email is sent after the Close of Business on a Business Day, on the next succeeding Business Day.

23

#5234859.1

Section 6.02    GOVERNING LAW; CONSENT TO JURISDICTION; WAIVER OF JURY TRIAL.

(a)    THIS WARRANT AGREEMENT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REGARD TO THE PRINCIPLES OF CONFLICTS OF LAW THEREOF.

(b)    Each of the Company and each Holder irrevocably agrees that any Action with respect to this Warrant Agreement, any provision hereof, the breach, performance, validity or invalidity hereof or for recognition and enforcement of any judgment in respect hereof brought by another party hereto or its successors or permitted assigns shall be brought and determined in the Court of Chancery or other courts of the State of Delaware located in the State of Delaware, and each Member and the Company hereby irrevocably submits and consents with regard to any such Action for itself and in respect to its property, generally and unconditionally, to the exclusive jurisdiction of the aforesaid courts.    Each of the Company and each Holder hereby irrevocably waives, and agrees not to assert, by way of motion, as a defense, counterclaim or otherwise, in any Action with respect to this Warrant Agreement, any provision hereof or the breach, performance, enforcement, validity or invalidity hereof, (i) any claim that it is not personally subject to the jurisdiction of the above named courts for any reason, (ii) that it or its property is exempt or immune from jurisdiction of any such court or from any legal process commenced in such courts (whether through service of notice, attachment prior to judgment, attachment in aid of execution of judgment, execution of judgment or otherwise), and (iii) to the fullest extent permitted by applicable Laws, that (A) Action in any such court is brought in an inconvenient forum, (B) the venue of such Action is improper and (C) this Warrant Agreement, or the subject matter hereof, may not be enforced in or by such courts.

(c)    Each party hereto hereby agrees that, to the fullest extent permitted by Law, service of any process, summons, notice or document by U.S. registered mail to the respective addresses specified in Section 6.01 shall be effective service of process for any Action in connection with this Warrant Agreement or the transactions contemplated hereby.

(d)    EACH PARTY ACKNOWLEDGES AND AGREES THAT ANY CONTROVERSY THAT MAY ARISE UNDER THIS WARRANT AGREEMENT IS LIKELY TO INVOLVE COMPLICATED AND DIFFICULT ISSUES, AND THEREFORE IT HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS WARRANT AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY.    EACH PARTY CERTIFIES AND ACKNOWLEDGES THAT (I) NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE SUCH WAIVER, (II) IT UNDERSTANDS AND HAS CONSIDERED THE IMPLICATIONS OF SUCH WAIVER, (III) IT MAKES SUCH WAIVER VOLUNTARILY, AND (IV) IT HAS BEEN INDUCED TO ENTER THIS WARRANT AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVER AND CERTIFICATIONS CONTAINED IN THIS SECTION 6.02.

#5234859.1

Section 6.03    Benefit of this Warrant Agreement.   Nothing in this Warrant Agreement expressed and nothing that may be implied from any of the provisions hereof is intended, or shall be construed, to confer upon, or give to, any Person other than the parties hereto and their successors any right, remedy or claim under or by reason of this Warrant Agreement or of any covenant, condition, stipulation, promise or agreement hereof, and all covenants, conditions, stipulations, promises and agreements in this Warrant Agreement contained shall be for the sole and exclusive benefit of the parties hereto and their successors.

Section 6.04    Headings.   The Article and Section headings herein are for convenience only and are not a part of this Warrant Agreement and shall not affect the interpretation thereof. All references in this Warrant Agreement to Articles, Sections, Schedules or Exhibits are to the specified Article or Section of or Schedule or Exhibit to this Warrant Agreement unless otherwise specified or the context otherwise requires.

Section 6.05    Counterparts.   This Warrant Agreement may be executed in any number of counterparts on separate counterparts, each of which so executed shall be deemed to be an original, but all such counterparts shall together constitute one and the same instrument.

Section 6.06    Entire Agreement.   This Warrant Agreement constitutes the entire agreement of the Company and the Holders with respect to the subject matter hereof and supersedes all prior agreements and undertakings, both written and oral, among the Company and the Holders with respect to the subject matter hereof.

Section 6.07    Severability.   Wherever possible, each provision of this Warrant Agreement shall be interpreted in such manner as to be effective and valid under applicable Law, but if any provision of this Warrant Agreement shall be prohibited by or invalid under applicable Law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Warrant Agreement.

Section 6.08    Termination.   This Warrant Agreement shall terminate at the Expiration Date (or at the Close of Business on the settlement date of any exercise of Series B Warrants with respect to any Exercise Notice delivered prior to the Expiration Date that has not settled prior to the Expiration Date).   Notwithstanding the foregoing, this Warrant Agreement will terminate on such earlier date on which all outstanding Series B Warrants have been exercised or canceled in accordance with the terms hereof.

Section 6.09    Publicity; Confidentiality.   Except as may be required by applicable Law, neither the Company nor any Holder shall issue a press release or public announcement or otherwise make any public disclosure concerning this Warrant Agreement without prior approval by the Board; *provided, however,* that nothing in this Warrant Agreement shall restrict any Holder from disclosing information (a) that is already publicly available, (b) that may be required or appropriate in response to any summons or subpoena or in disclosures made in connection with any request, requirement or form of any Governmental Authority or any litigation or proposed transaction, *provided* that such Holder will use reasonable efforts to notify the Company in advance of such disclosure so as to permit the Company to seek a protective order or otherwise contest such disclosure, and such Holder will use reasonable efforts to

25

#5234859.1

cooperate, at the expense of the Company, with the Company in pursuing any such protective order, (c) to the extent that such Holder reasonably believes it appropriate in order to protect its investment in its Series B Warrants or in order to comply with any Law, (d) to such Holder's or the Company's representatives or agents, or (e) to any potential Transferee of any or all of such Holder's Series B Warrants or Units in a *bona fide* Transfer that would comply with the terms of Section 2.03 and/or the LLC Agreement, as applicable; *provided* that, prior to such disclosure, such Holder and such potential Transferee enter into a confidentiality agreement on terms no less restrictive than those contained in this Section 6.09 and which names the Company as an intended third party beneficiary thereof and is otherwise in a form and scope reasonably satisfactory to the Company.

Section 6.10   Force Majeure.   Notwithstanding anything to the contrary contained herein, the Company will not be liable for any delays or failures in performance resulting from acts beyond its control including, without limitation, acts of God, terrorist acts, shortage of supply, breakdowns or malfunctions, interruptions or malfunction of computer facilities, or loss of data due to power failures or mechanical difficulties with information storage or retrieval systems, labor difficulties, war or civil unrest.

[*signature pages follow*]

#5234859.1

IN WITNESS WHEREOF, this Warrant Agreement has been duly executed by the parties hereto as of the date first above written.

**COMPANY:**

VENOCO, LLC

By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO WARRANT AGREEMENT

#5234859.1

**HOLDERS:**

[●]

By: _____
Name: _____
Title: _____

SIGNATURE PAGE TO WARRANT AGREEMENT

#5234859.1

I-1

## SCHEDULE I

## INITIAL HOLDERS

| Name of Initial Holder | Address | Number of Series B Warrants |
|---|---|---|

#5234859.1

**EXHIBIT A**

**Form of Exercise Notice**

Venoco, LLC
370 17th Street, Suite 3900
Denver, Colorado 80202-1370
Attention: Brian E. Donovan, General Counsel

Re: Series B Warrant Agreement dated as of [●], 2016 between Venoco, LLC (the "**Company**") and the Holders party thereto (as it may be supplemented or amended, the "**Warrant Agreement**")

The undersigned Holder hereby irrevocably (except to the extent specified below) elects to exercise the number of Series B Warrants set forth below registered in the name of the undersigned Holder:

Number of Series B Warrants exercised:_____

The undersigned Holder elects to receive the consideration deliverable upon such exercise of Series B Warrants pursuant to the following settlement method (check one):

[  ]     Full Physical Settlement

[  ]     Net Sale Settlement

If Full Physical Settlement is elected, the undersigned shall tender payment of the aggregate Exercise Price for all such Series B Warrants so exercised in accordance with instructions received from the Company.

Please check below if this exercise is contingent upon a registered public offering or a Sale Transaction in accordance with Section 3.02(d) of the Warrant Agreement.

[  ]     This exercise is being made in connection with a registered public offering or a Sale Transaction.  In the event such transaction shall not be consummated, this exercise shall be deemed revoked.

TO BE EFFECTIVE THIS EXERCISE NOTICE MUST BE DELIVERED TO THE COMPANY PRIOR TO THE EXPIRATION DATE OR, TO THE EXTENT APPLICABLE, THE EARLIER DATE OF CANCELATION OF SUCH SERIES B WARRANTS PURSUANT TO SECTION 3.07 OF THE WARRANT AGREEMENT.

All capitalized terms used and not otherwise defined herein have the meanings given to such terms in the Warrant Agreement.

A-1

#5234859.1

A-2

Executed by the undersigned Holder as of the date set forth below.

Name of Holder:_____

By (Signature):_____
Name:_____
Title:_____
Address:_____

_____

_____

Telephone Number:_____
Email Address:_____
Date:_____

A-2

#5234859.1

EXHIBIT B

**Form of Transfer Instruction**

Venoco, LLC
370 17th Street, Suite 3900
Denver, Colorado 80202-1370
Attention: Brian E. Donovan, General Counsel

Re: Series B Warrant Agreement dated as of [●], 2016 between Venoco, LLC (the "**Company**") and the Holders party thereto (as it may be supplemented or amended, the "**Warrant Agreement**")

The undersigned Holder hereby Transfers, upon effectiveness of such Transfer in accordance with the terms of the Warrant Agreement, to the Transferee named below the number of Series B Warrants set forth below registered in the name of the undersigned Holder and instructs the Company to register such Series B Warrants in the name of the Transferee on the Series B Warrant Register.

Number of Series B Warrants Transferred:_____

Transferee:

Name:_____
Address:_____
_____
_____

Contact Name and Title:_____
Telephone Number:_____
Facsimile Number:_____
Email Address:_____

All capitalized terms used and not otherwise defined herein have the meanings given to such terms in the Warrant Agreement.

Executed by the undersigned Holder as of the date set forth below.

Name of Holder:_____

By (Signature):_____
Name:_____
Title:_____
Address:_____
_____

Telephone Number:_____
Email Address:_____
Date:_____

B-1